IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PULLEN SEEDS AND SOIL, on behalf of itself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 06-599-SLR |
| MONSANTO COMPANY, | ) ) ) | |
| Defendant. | ) | |
| WADE FARMS, WHITTINGTON & SUMNER FARMS, CLIFFORD F. DANCE, D/B/A CLIFFORD DANCE FARMS, and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 06-600-SLR |
| v. | ) ) ) | |
| MONSANTO COMPANY, | ) ) ) | |
| Defendant. | ) | |

MEMORANDUM IN SUPPORT OF DEFENDANT MONSANTO
COMPANY'S MOTIONS TO DISMISS

OF COUNSEL:

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
Anthony J. Franze
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800

Dated: November 20, 2006

Richard Horwitz (#2246)
David E. Moore (#3938)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Monsanto Company*

## **TABLE OF CONTENTS**

TABLE OF CITATIONS ............................................................................................ ii

NATURE AND STAGE OF THE PROCEEDINGS ............................................... 1

SUMMARY OF THE ARGUMENT ....................................................................... 1

STATEMENT OF FACTS ........................................................................................ 3

    A.  Plaintiffs' Complaints ................................................................................... 3

    B.  Plaintiffs Assert That Their Alleged Injuries Resulted In Part From Their
        Allegedly Anticompetitive Agreements With Monsanto .................................... 4

    C.  Plaintiffs' Technology Agreements With Monsanto Required These
        Actions to Be Filed in a St. Louis Court ............................................................ 6

STANDARD FOR MOTION TO DISMISS ........................................................... 7

ARGUMENT ............................................................................................................ 8

THIS COURT SHOULD DISMISS THE COMPLAINTS BECAUSE
PLAINTIFFS AGREED TO BRING THESE ACTIONS IN A ST. LOUIS
COURT ..................................................................................................................... 8

    A.  The Forum Selection Clause is Valid, Binding, and Enforceable .................... 8

    B.  Plaintiffs' Disputes With Monsanto Arise Out of and Are Connected
        With the Technology Agreement ...................................................................... 12

CONCLUSION ....................................................................................................... 14

# TABLE OF CITATIONS

## CASES

*American Seed Co. v. Monsanto Co.,*
  C.A. No. 05-535-SLR, Order (D. Del. Dec. 5, 2005) ..................................2, 11, 13

*Bbdova, LLC v. Auto. Techs., Inc.,*
  358 F. Supp. 2d 387 (D. Del. 2005) ..................................................................8, 11

*Blades v. Monsanto Co.,*
  No. 00-CV-4034-DHR, 2001 WL 775980 (S.D. Ill. Jan. 3, 2001) .................2, 8, 9

*Buck v. Hampton Twp. Sch. Dist.,*
  452 F.3d 256 (3d Cir. 2006) ...................................................................................7

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002) ...................................................................................7

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,*
  709 F.2d 190 (3d Cir. 1983) ...................................................................................8

*Crescent Int'l Inc. v. Avatar Cmtys., Inc.,*
  857 F.2d 943 (3d Cir. 1988) ..............................................................................7, 13

*Firmani v. Clarke,*
  325 F. Supp. 689 (D. Del. 1971) ...........................................................................10

*Green v. Warden, U.S. Penitentiary,*
  699 F.2d 364 (7th Cir. 1983) ..................................................................................7

*Hay Acquisition Co., I, Inc. v. Schneider,*
  No. 2:04-CV-1236, 2005 WL 1017804 (E.D. Pa. Apr. 27, 2005) ........................13

*John Wyeth & Brother Ltd. v. Cigna Int'l Corp.,*
  119 F.3d 1070 (3d Cir. 1997) ................................................................................12

*Jumara v. State Farm Ins. Co.,*
  55 F.3d 873 (3d Cir. 1995) ....................................................................................12

*Kahn v. Am. Heritage Life Ins.,*
  No. 06-01832, 2006 WL 1879192 (E.D. Pa. June 29, 2006) .................................12

*Lauro Lines S.R.L. v. Chasser,*
  490 U.S. 495 (1989) .................................................................................................8

*Massey v. Monsanto Co.*,
No. 299-CV-218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2000) .............2, 8

*McNair v. Monsanto Co.*,
279 F. Supp. 2d 1290 (M.D. Ga. 2003) ....................................................... 9

*Monsanto Co. v. Baumgardner*,
No. 4:04-CV-00708 ERW, Mem. and Order (E.D. Mo. Mar. 29, 2005).............6

*Monsanto Co. v. Dawson*,
No. 4:98-CV-02004TCM, 2000 WL 33952259 (E.D. Mo. Aug. 18, 2000)...........9

*Monsanto Co. v. Godfredson*,
No. 4:99-CV-1691 CDP, 2000 WL 33952257 (E.D. Mo. April 13, 2000) ...........9

*Monsanto Co. v. Nelson*,
No. 4:00-CV-1636 CEJ, 2001 WL 34079479 (E.D. Mo. Sept. 10, 2001)............9

*Monsanto Co. v. Swann*,
No. 4:00-CV-1481 CEJ, 2001 WL 34053250 (E.D. Mo. Sept. 25, 2001)............9

*Monsanto Co. v. White*,
No. 4:00-CV-1761 RWS, 2001 WL 34053249 (E.D. Mo. June 22, 2001)...........9

*Monsanto Co. v. McFarling*,
302 F.3d 1291 (Fed. Cir. 2002)...................................................................9

*M/S Bremen v. Zapata Off-Shore Co.*,
407 U.S. 1 (1972)......................................................................................8

*Oak Sys. v. Fracotyp-Postalia, Inc.*,
No. 01-2794, 2002 U.S. Dist. LEXIS 2213 (3d Cir. Feb. 5, 2002) ....................13

*Palcko v. Airborne Express, Inc.*,
372 F.3d 588 (3d Cir. 2004)........................................................................2

*Pryor v. Nat'l Collegiate Athletic Ass'n*,
288 F.3d 548 (3d Cir. 2002)........................................................................7

*Salovaara v. Jackson Nat'l Life Ins.*,
246 F.3d 289 (3d Cir. 2001)....................................................................2, 7

*Southmark Prime Puls, LP v. Falzone*,
776 F. Supp. 888 (D. Del. 1991)..................................................................7

*Stewart Org., Inc. v. Ricoh Corp.,*
    487 U.S. 22 (1988) ........................................................................................... 8

*United States Fid. & Guar. Co. v. Am. Home Assurance,*
    No. 98 CIV 3099 JGK, 2001 WL 300735 (S.D.N.Y. Mar. 27, 2001) ................... 10

## STATUTES AND RULES

Fed. R. Civ. P. 12(b)(6) .................................................................................... 1, 7

Fed. R. Civ. P. 12(h)(1) ....................................................................................... 2

## NATURE AND STAGE OF THE PROCEEDINGS

On September 26, 2006, Plaintiff Pullen Seeds and Soil filed a putative class

action (C.A. No. 06-599-SLR) against Defendant Monsanto Company. On the same day,

Plaintiffs Wade Farms, Whittington & Sumner Farms, and Clifford F. Dance Farms filed

a virtually identical action (C.A. No. 06-600-SLR) against Monsanto. Defendant

Monsanto moves to dismiss the Complaints in both cases pursuant to Fed. R. Civ. P.

12(b)(6). Because the Complaints in the two cases are nearly identical and are subject to

dismissal on the same ground, this Memorandum, for the convenience of the Court,

addresses the motions filed in both cases.

## SUMMARY OF THE ARGUMENT

1.      Plaintiffs brought these antitrust cases in the wrong forum. Plaintiffs are

"licensed growers" of genetically modified corn, soybean, and other seed containing

genetic traits patented by Monsanto. (Pullen Compl. ¶ 16; Wade Compl. ¶¶ 16-18).

Plaintiffs entered into license agreements with Monsanto to grow seed containing

Monsanto's seed trait technologies. The Complaints assert that Monsanto wielded its

purported control over its patented seed traits – and used the very patent licenses

executed by Plaintiffs – to restrain trade and monopolize the market for glyphosate, the

generic name of Monsanto's "Roundup" herbicide. Plaintiffs claim that the licenses

improperly required them and other putative class members to purchase Monsanto's

glyphosate herbicides in order to use Monsanto's seed traits. Plaintiffs characterize the

seed trait license agreements as "unlawful," "exclusionary," and "anticompetitive."

(Pullen Compl. ¶ 92; Wade Compl. ¶ 94). But those same agreements, which bind

Plaintiffs as licensees, designate courts in St. Louis as "the sole and exclusive jurisdiction

and venue" for "*all* claims and disputes *arising out of or connected in any way with this agreement* and the use of the seed or the Monsanto technologies." Unlike the forum selection clause in Monsanto's license agreements with some seed companies, which this Court found in *American Seed v. Monsanto,* C.A. No. 05-535-SLR to be permissive, this provision is mandatory. It says unequivocally that, "*Any* lawsuit *must* be filed in St. Louis., Mo." By contrast, the provision at issue in *American Seed* merely stated that disputes "*may* be heard and determined in" Missouri.

To be sure, Plaintiffs' implausible claims should not proceed in any forum, as it is a matter of public record that the price of glyphosate has plummeted, conclusively rebutting allegations of monopolization. But that issue is for a later day. The question of where the cases will be litigated should be resolved at the outset.[1]

2.    Federal courts in antitrust putative class actions repeatedly have enforced the forum selection clause contained in the patent license agreement at issue here. *See, e.g., Blades v. Monsanto Co.*, No. 00-CV-4034-DHR, 2001 WL 775980, at *3-4 (S.D. Ill. Jan. 3, 2001); *Massey v. Monsanto Co.*, No. 299-CV-218-P-B, 2000 WL 1146705, at *2 (N.D. Miss. June 13, 2000). In this Circuit, breach of a forum selection clause is grounds for dismissal. *Salovaara v. Jackson Nat'l Life Ins.*, 246 F.3d 289, 298 (3d Cir. 2001). The Court therefore should dismiss the Complaints, without prejudice to Plaintiffs re-filing them in St. Louis, Missouri, where over a dozen cases containing allegations similar to those here currently are pending.

---

[1]    *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597-98 (3d Cir. 2004) (defendant that moved to dismiss concerning threshold forum issues did not waive right to later bring motion to dismiss for failure to state a claim based on arbitration or other grounds that are not expressly waived under Fed. R. Civ. P. 12(h)(1)).

## STATEMENT OF FACTS

### A.    Plaintiffs' Complaints

In September 2006, Plaintiff Pullen Seeds and Soil, an Iowa company that grows genetically modified seed in Iowa (Pullen Compl. ¶ 16), filed its Complaint against Monsanto Company. On the same day, Plaintiffs Wade Farms, Whittington & Sumner Farms, and Clifford F. Dance Farms – all Mississippi businesses that grow genetically modified seed in Mississippi – filed a virtually identical Complaint against Monsanto. (Wade Compl. ¶¶ 16-18). Plaintiffs do not claim to have any relationship with this forum.

Monsanto is a Delaware corporation headquartered in St. Louis, Missouri. (Pullen Compl. ¶ 17; Wade Compl. ¶ 19). Monsanto manufactures Roundup brand herbicides. (Pullen Compl. ¶¶ 1, 37; Wade Compl. ¶¶ 1, 39). It also holds patents for genetic seed traits, and it licenses seed companies to include those traits in corn, soybean, and other seed. (Pullen Compl. ¶¶ 1, 43-46; Wade Compl. ¶ 1, 45-48).

Plaintiffs claim that Monsanto violated federal and state antitrust laws "by using its monopoly power in various biotechnology seed trait markets to unlawfully monopolize and restrain competition in the market for glyphosate herbicides." (Pullen Compl. ¶ 2; Wade Compl. ¶ 2). The Complaints focus on Monsanto's patented seed traits that make crops resistant to glyphosate-based herbicides, such as Roundup. Specifically, Plaintiffs allege that Monsanto improperly used the "seed trait monopolies" its patents conferred, to keep other companies from developing their own new seed traits providing resistance to non-glyphosate-based herbicides. (E.g., Pullen Compl. ¶¶ 6, 58-60, 80; Wade Compl. ¶¶ 6, 60-62, 82). Because other companies did not develop such new traits, Plaintiffs allegedly "paid non-competitive and artificially inflated prices" for

3

Roundup. (Pullen Compl. ¶¶ 1-2; Wade Compl. ¶¶ 1-2). In short, Plaintiffs allege that Monsanto's conduct regarding seed traits affected the price of herbicides.

Based on this theory, Plaintiffs seek only declaratory and injunctive relief under federal antitrust laws for nationwide classes of direct and indirect purchasers of Roundup herbicides. (Pullen Compl. ¶ 20; Wade Compl. ¶ 22). Disregarding a clear conflict of interest, Plaintiffs also seek *damages* under state laws for a small subset of these federal injunction putative classes, indirect purchasers of Roundup in Iowa (Pullen Compl. ¶ 27) and Mississippi (Wade Compl. ¶ 29).

**B.    Plaintiffs Assert That Their Alleged Injuries Resulted In Part From Their Allegedly Anticompetitive Agreements With Monsanto**

Plaintiffs' theory rests on the allegation that Monsanto suppressed competition in genetically modified traits. (Pullen Compl. ¶¶ 1-2; Wade Compl. ¶¶ 1-2). Monsanto has been litigating that issue for several years in more than a dozen cases now pending before a federal court in St. Louis. *See Schoenbaum et al. v. E.I. Dupont de Nemours and Co. et al.*, No. 4:05-CV-01108-ERW (E.D. Mo.) (13 cases filed in 2004, transferred to Missouri in 2005 and consolidated); *McIntosh v. Monsanto Co.*, No. 4:01-CV-0065 (E.D. Mo.) (consolidated cases filed 1999 and 2000, transferred to Missouri in 2001). Indeed, it appears that Plaintiffs drew on those complaints.[2]

As in the pending St. Louis federal actions, Plaintiffs allege that Monsanto used its patent license agreements with farmers ("Technology Agreements") to further the purported scheme to monopolize. (*See* Pullen Compl. ¶¶ 8, 82-92; Wade Compl. ¶¶ 8, 84-94). Specifically, according to Plaintiffs, "Monsanto has . . . imposed exclusionary

---

[2]    The chart attached as Ex. A highlights the striking parallels between the complaints in the Missouri cases and those filed here.

and restrictive conditions at the grower level that prevent growers from using generic glyphosate in connection with Monsanto's glyphosate tolerant seed traits." (Pullen Compl. ¶ 86; Wade Compl. ¶ 88). In particular, Plaintiffs allege, "Monsanto requires growers to sign a technology license . . . that effectively mandates that they use only Roundup herbicides" on seeds containing Monsanto's patented traits. (Pullen Compl. ¶ 86; Wade Compl. ¶ 88). Plaintiffs allege that Technology Agreements from 1998 to 2000 improperly "conditioned the grant of a license to use its Roundup Ready seed technology on the grower's agreement to purchase and use only Monsanto's Roundup herbicide." (Pullen Compl. ¶ 86; Wade Compl. ¶ 88).

Further, Plaintiffs claim, "[w]hile the language in Monsanto's more recent [Technology Agreements] appear[s] to permit a grower to use a non-Roundup glyphosate herbicide in connection with Monsanto's glyphosate-tolerant seed traits, other aspects of the Grower's Agreement demonstrate that this 'choice' is illusory and that a grower is still effectively locked into using Roundup virtually exclusively." (Pullen Compl. ¶ 87; Wade Compl. ¶ 89). Indeed, Plaintiffs attack the Agreement twice on this ground, alleging that "Monsanto has effectively maintained the same condition in its technology license that requires a grower using Monsanto's biotechnology seed traits to use Roundup virtually exclusively rather than a cheaper generic glyphosate herbicide." (Pullen Compl. ¶ 90; Wade Compl. ¶ 92). Plaintiffs assert in addition that an "inherent component of the Tech Fee" payable under the Agreement resulted in overcharges for Roundup. (Pullen Compl. ¶ 88; Wade Compl. ¶ 90). In sum, Plaintiffs claim that Monsanto's "anticompetitive conduct including its exclusionary licensing agreements with . . .

growers . . . has unlawfully restrained trade and maintained its monopoly in the market for glyphosate herbicides." (Pullen Compl. ¶ 92; Wade Compl. ¶ 94).

C.    **Plaintiffs' Technology Agreements With Monsanto
      <u>Required These Actions to Be Filed in a St. Louis Court</u>**

As licensees under the Technology Agreement, Plaintiffs were obligated to bring these claims in St. Louis. The applicable Agreements provide:

> THE PARTIES CONSENT TO THE SOLE AND
> EXCLUSIVE JURISDICTION AND VENUE OF THE U.S.
> DISTRICT COURT FOR THE EASTERN DISTRICT OF
> MISSOURI, EASTERN DIVISION, AND THE CIRCUIT
> COURT OF THE COUNTY OF ST. LOUIS, MISSOURI,
> (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR
> ALL CLAIMS AND DISPUTES ARISING OUT OF OR
> CONNECTED IN ANY WAY WITH THIS AGREEMENT
> AND THE USE OF THE SEED OR THE MONSANTO
> TECHNOLOGIES EXCEPT FOR COTTON-RELATED
> CLAIMS MADE BY THE GROWER.

(*See* Ex. B, 2006 Technology Agreement at 2; Ex. C (sample Technology Agreements used since 1998); Ex. D (signature page to agreements signed by Plaintiffs)).[3] Given that Plaintiffs expressly attack the Technology Agreement, these cases arise out of and are connected with the Agreements under attack, as well as with Plaintiffs' use of genetically modified seed and Monsanto's technologies. Plaintiffs thus were contractually bound to file these cases in St. Louis.

---

[3]    Monsanto uses a new Technology Agreement for each crop year and the forum clause language changed in non-material ways over time. The United States District Court for the Eastern District of Missouri held that, because the Agreements provide that they remain in effect until terminated and that continuing use of Monsanto's technologies after new terms are issued constitutes an agreement to be bound by the new terms, the forum clause in the most recent Technology Agreement applies. *Monsanto v. Baumgardner*, No. 4:04-CV-00708 ERW, Mem. and Order at 9 n.10 (E.D. Mo. Mar. 29, 2005) (Ex. E). Accordingly, the forum clause in the 2006 Technology Agreement is applicable here. In any event, the question of which version of the Agreement applies is of no consequence, because the Complaints must be dismissed under any iteration.

## STANDARD FOR MOTION TO DISMISS

The Court of Appeals for the Third Circuit has held that, "a 12(b)(6) dismissal is a permissible means of enforcing a forum selection clause." *Salovaara v. Jackson Nat'l Life Ins., Co.*, 246 F.3d 289, 298 (3d Cir. 2001) (affirming dismissal of action based on forum clause requiring a state or federal court in another forum); *Crescent Int'l Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944-45 (3d Cir. 1988) (similar).[4]

Although a court considering a motion under Fed. R. Civ. P. 12(b)(6) focuses on the pleadings, it can properly review contracts or other documents referenced in the complaint. *See Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A court also can take judicial notice and consider matters such as pleadings in other cases, *see Southmark Prime Puls, LP v. Falzone*, 776 F. Supp. 888, 892 (D. Del. 1991); *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 369 (7th Cir. 1983), and official government records. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

---

[4]    A court also has power, on its own motion, to transfer a case to another federal forum should it determine that transfer, rather than dismissal, is the appropriate course. *Salovaara*, 246 F.3d at 299.

7

## ARGUMENT

## THIS COURT SHOULD DISMISS THE COMPLAINTS BECAUSE PLAINTIFFS AGREED TO BRING THESE ACTIONS IN A ST. LOUIS COURT

### A.     The Forum Selection Clause is Valid, Binding, and Enforceable

Forum selection clauses are "presumptively valid" and enforceable unless enforcement would be unreasonable under the circumstances. *E.g.*, *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *abrogated on other grounds*, *Lauro Lines v. Chasser S R L.*, 490 U.S. 495 (1989); *accord M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988); *Bbdova, LLC v. Auto. Techs., Inc.*, 358 F. Supp. 2d 387, 390 (D. Del. 2005). To overcome the presumption, a party challenging enforcement of a forum clause must show "(1) that it is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel*, 709 F.2d at 202; *accord Bbdova*, 358 F. Supp. 2d at 390.

Plaintiffs can make none of these showings. *First*, nowhere do Plaintiffs allege that they entered into the Technology Agreements as the result of fraud, undue influence, or duress. Nor could Plaintiffs make such allegations. Courts repeatedly have found the Technology Agreement's forum selection clause, a standardized agreement, valid and enforceable.[5] For example, in *Blades v. Monsanto* (now docketed and pending in St.

---

[5]     *See, e.g.*, *Blades Co. v. Monsanto*, No. 00-CV-4034-DHR, 2001 WL 775980, at *3 (S.D. Ill. Jan. 3, 2001) (rejecting argument in antitrust case that Technology Agreement and forum clause were contracts of adhesion or the result of fraud); *Massey v. Monsanto Co.*, No. 299-CV-218-P-B, 2000 WL 1146705, at *2 (N.D. Miss. June 13, 2000) (rejecting argument in antitrust case that forum selection clause in Technology

Footnote continued on next page

8

Louis as *McIntosh v. Monsanto*), the complaint alleged "that Monsanto Company

committed antitrust violations and violations of other laws in the pricing, selling,

marketing and promotion of the GM corn and soybean seeds." 2001 WL 775980, at *1.

The complaint also alleged, as the Complaints here, that the Technology Agreements

improperly required "a farmer who buys Roundup Ready seeds [to] purchase Roundup

[herbicide] from Monsanto at whatever price Monsanto decides to charge." *See Blades v.*

*Monsanto Co.*, No. 00-CV-4034, Orig. Compl. ¶ 79 (S.D. Ill. Feb. 14, 2000) (Ex. F). The

court held that the forum clause was not an adhesion contract and found nothing to

"establish as a matter of law that the forum selection clause is unconscionable." 2001

WL 775980, at *3. The court therefore enforced the clause by transferring that case and a

related action to St. Louis federal court:

> Having found the forum selection clause in the Technology
> Agreements entered into by Peterson valid, the Court
> concludes that venue in this judicial district is not proper,
> but instead lies within the United States District Court for

---

Footnote continued from previous page
Agreement was the result of "fraud, undue influence, or an overwhelming bargaining
power."); *see also McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1302 (M.D. Ga.
2003) (no showing in tort and contract case of "a disparity in bargaining power such that
it would be unjust or unreasonable to enforce the forum selection clause."); *Monsanto
Co. v. McFarling*, 302 F.3d 1291 (Fed. Cir. 2002) (upholding finding in patent
infringement and breach of contract case that Technology Agreement was valid and
enforceable); *Monsanto Co. v. Swann*, No. 4:00-CV-1481 CEJ, 2001 WL 34053250 (E.D.
Mo. Sept. 25, 2001) ("The Court has been called upon to consider this clause on several
prior occasions, and has consistently found that it is both valid and enforceable.");
*Monsanto Co. v. Nelson*, No. 4:00-CV-1636 CEJ, 2001 WL 34079479, at *1 (E.D. Mo.
Sept. 10, 2001) (finding in patent infringement and breach of contract case that "forum
selection clause is neither unjust, unreasonable, nor invalid"); *Monsanto Co. v. White*,
No. 4:00-CV-1761 RWS, 2001 WL 34053249, at *4 (E.D. Mo. June 22, 2001)
(upholding forum selection clause in patent infringement and breach of contract case and
noting that commercial farmer "cannot now ignore the law or the parties' agreement");
*Monsanto Co. v. Dawson*, No. 4:98-CV-02004 TCM, 2000 WL 33952259, at *2 (E.D.
Mo. Aug. 18, 2000) (finding in patent infringement and breach of contract case that
forum clause "is neither unjust, unreasonable, nor invalid."); *Monsanto Co. v.
Godfredson*, No. 4:99-CV-1691 CDP, 2000 WL 33952257 (E.D. Mo. April 13, 2000)
(upholding forum selection clause in patent infringement and breach of contract case).

the Eastern District of Missouri. Specifically, the
Technology Agreement exclusively provides for both
venue and jurisdiction in the Eastern District of Missouri,
Eastern Division. In the case at bar, the parties freely
negotiated the contractually chosen forum. Plaintiffs have
not shown any fraud or overreaching by Monsanto in the
Technology Agreement between Peterson and Monsanto.
Therefore, Plaintiffs should not be allowed to bypass the
contractual agreement now by bringing suit in the wrong
court.

*Id.* at *4. Here, too, Plaintiffs cannot meet their heavy burden of showing the clause is

unreasonable and should not be allowed to shirk their contractual obligations by bringing

suit outside St. Louis.

*Second*, enforcement of the forum selection clause in this case violates no strong

public policy of Delaware. On the contrary, dismissing these cases provide Plaintiffs the

opportunity to refile in the United States District Court for the Eastern District of

Missouri, where the Court already is considering allegations by members of the putative

classes here that parallel, overlap, and potentially conflict with Plaintiffs' allegations.

Thus, dismissing the cases under the forum selection clause here would promote judicial

economy. *See Firmani v. Clarke,* 325 F. Supp. 689, 693 (D. Del. 1971) ("A strong public

policy favors bringing all such litigation together in one tribunal so that pretrial discovery

may be conducted more efficiently, witnesses' time may be conserved, public and

parties' litigation expenses may be reduced, and inconsistent results can be avoided.");

*United States Fid. & Guar. Co. v. Am. Home Assurance*, No. 98 CIV 3099 JGK, 2001

WL 300735, at *17 (S.D.N.Y. Mar. 27, 2001) ("In this case, given that the parties

involved in the cross-claims are, for the most part, Brazilian entities, litigation is already

being pursued by IVI and Sade in Brazil, and the will of the parties to the various

contracts is carried out to the greatest extent possible by having the IVI Group litigate

10

their claims against Petrobras in Brazil, the IVI Group has not overcome the presumptive validity of the forum selection clauses").

To be sure, as the Court is aware, *American Seed Co. v. Monsanto Co.*, C.A. No. 05-535-SLR, which is pending in this District, involves claims by direct purchaser-seed companies that Monsanto monopolized markets for genetically modified corn. The case also includes claims by intervenors who are growers of genetically modified corn in Minnesota and Iowa. However, the Missouri cases, like these cases and unlike *American Seed*, principally involve plaintiffs who are growers. Further, the Missouri cases, like these cases and unlike *American Seed*, include claims concerning crops other than corn. Thus, dismissal here advances not only the policy in favor of enforcing contractual commitments, but also the interests of judicial economy.

*Third*, litigating in St. Louis will not be "so gravely difficult and inconvenient that [Plaintiffs] will for all practical purposes be deprived of [their] day in court." *Bbdova*, 358 F. Supp. 2d at 390. Missouri in fact appears more convenient for Plaintiffs than this Court, and is far more convenient for Monsanto. Plaintiffs are Iowa and Mississippi businesses. They grow crops in Iowa and Mississippi. And they purport to represent classes of Iowa and Mississippi residents on claims under Iowa and Mississippi law. Plaintiffs' only apparent connection to Delaware is that one of the eight law firms representing them is in Wilmington. (Pullen Compl. pp. 40-41; Wade Compl. pp. 41-42). By comparison, Monsanto is headquartered in St. Louis (Pullen Compl. ¶ 17; Wade Compl. ¶ 19). Its executives therefore are in St. Louis, as are corporate records. Moreover, by entering into the Technology Agreement, Plaintiffs acknowledged that Missouri is a reasonable forum – in fact, the exclusive forum – for these actions. *See*

11

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995) ("a forum selection clause is treated as a manifestation of the parties' preferences as to a convenient forum").

### B.    Plaintiffs' Disputes With Monsanto Arise Out of and Are Connected With the Technology Agreement

The forum selection clause here is broad and provides that "all claims *and disputes* arising out of *or connected in any way with* this agreement and the use of the seed or the Monsanto technologies" must be filed in St. Louis. (*See* Ex. B (emphasis added)). The Third Circuit has held that forum selection clauses covering "disputes," as this one does, have a much broader scope than those covering "claims" related to a contract. *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997) (Alito, J.). The court also held that a clause using language such as "related to" – equivalent to the language "connected in any way with" in the Agreement here – makes the forum selection clause even more expansive. *Id.* For example, applying *John Wyeth & Brothers*, a district court within the Third Circuit recently found that a clause similar to the one here, which applied to "disputes arising out of or related in any way" to the contract covered more than just claims based on breach of contract. *Kahn v. Am. Heritage Life Ins.*, No. 06-01832, 2006 WL 1879192, at *6 (E.D. Pa. June 29, 2006). The court recognized that such broad provisions can encompass non-contractual claims if the contract was at least connected to the underlying, allegedly unlawful scheme. *See id.* (insurance agent's claims under the Pennsylvania Human Relations Act against insurer, "while not based on her contract with Defendants, arise out of the contractual relationship created between them by the contract, and her claims implicate the contract to the extent that she claims termination of the contract was a form of unlawful retaliation under the PHRA. Thus, Plaintiff's PHRA claims are sufficiently related to the agent contract to fall

12

within the scope of the broadly worded forum selection clause included therein."); *see also Hay Acquisition Co., I., Inc. v. Schneider*, No. 2:04-CV-1236, 2005 WL 1017804, at *6 (E.D. Pa. Apr. 27, 2005) ("Third Circuit [precedent] is clear that 'broad, unconditional forum selection clauses which mandate jurisdiction in a specific forum . . . apply to all claims, whether they be based in tort or contract, and shall be enforced" (quoting *Oak Sys. v. Fracotyp-Postalia, Inc., et al.*, No. 01-2794, 2002 U.S. Dist. LEXIS 2213, at *7 (3d Cir. Feb. 5, 2002)).[6]

Finally, the forum selection clause in the Technology Agreement is mandatory, not permissive. The parties consent to the "sole and exclusive jurisdiction and venue" of the St. Louis courts. "Sole" and "exclusive" are unambiguous, meaning that there is no other. But to reinforce the point, the clause here adds that "any lawsuit must be filed in St. Louis, MO." The clause thus bears no resemblance to the one in some licenses with seed companies – not growers – which provided that claims "*may* be heard and determined in" Missouri. *See American Seed Co., Inc., v. Monsanto Co.*, C.A. No. 05-535-SLR, Order (D. Del. Dec. 5, 2005) (Ex. G) (order denying transfer on ground that this language was permissive (emphasis added)).

Here, Plaintiffs' allegations of wrongdoing envelop the Technology Agreement. As discussed, Plaintiffs claim that earlier versions of the Technology Agreement unlawfully compelled growers to purchase Roundup herbicide, that the current Agreement restrains trade, and that components of the fees paid under the Technology

---

[6]    Beyond that, the Third Circuit has found that even more narrowly worded clauses may cover non-contract claims if the dispute implicates the parties' contractual relation or contract terms. *See Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943 (3d Cir. 1988 (per curiam) (finding that clause stating that "any litigation upon any of [the contractual] terms . . . . shall be maintained" in Florida courts, included RICO and tort claims since they "arise out of contractual relation and implicate the contract's terms").

Agreement have resulted in overcharges for Roundup. (Pullen Compl. ¶ 86; Wade Compl. ¶ 88). Plaintiffs describe the Agreement as "exclusionary" and "restrictive," contend that it "effectively mandates that [farmers] use only Roundup herbicides on Roundup Ready crops," and complain that "the grower is still effectively locked into using Roundup virtually exclusively." (Pullen Compl. ¶¶ 86-88, 92; Wade Compl. ¶¶ 88-90, 94). These claims do not merely "arise under" the Agreement. They are explicitly predicated on it. They are not merely "connected with" the use of Monsanto's technology. They center on the alleged tie between the use of the technology and the purchase of Roundup.

## CONCLUSION

Plaintiffs agreed to bring suits like these in St. Louis. Those agreements are valid and enforceable. The Court therefore should dismiss the Complaints.

OF COUNSEL:

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
Anthony J. Franze
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800
(202) 383-6610 facsimile

Dated: November 20, 2006

763266 / 30803

Respectfully submitted,

POTTER ANDERSON & CORROON LLP


By:  */s/ David E. Moore*
     Richard Horwitz (#2246)
     David E. Moore (#3938)
     Hercules Plaza, 6th Floor
     P.O. Box 951
     Wilmington, DE 19801
     (302) 984-6000
     rhorwitz@potteranderson.com
     dmoore@potteranderson.com

14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on November 20, 2006, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jeffrey S. Goddess
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899

I hereby certify that on November 20, 2006, I have sent by Electronically Mailed the foregoing document to the following:

Noah H. Silverman
Bruce E. Gerstein
Joseph Opper
Garwin Gerstein & Fisher LLP
1501 Broadway, Suite 1416
New York, NY 10036
nsilverman@garwingerstein.com
bgerstein@garwingerstein.com
jopper@garwingerstein.com

Adam M. Moskowitz
Tucker Ronzetti
David M. Buckner
Kozyak Torpin & Throckmorton, P.A.
2525 Ponce de Leon, 9th floor
Miami, FL 33134
AMM@KTTLAW.COM
TR@KTTLAW.COM
DMB@KTTLAW.COM

/s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
Hercules Plaza
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

763267 / 30803

# EXHIBIT A

COMPARISON OF SIMILAR ALLEGATIONS
IN PULLEN SEEDS/ WADE FARMS AND SCHOENBAUM COMPLAINTS[1]

| Pullen Seeds/ Wade Farms Complaints | Schoenbaum Amended Complaint |
|---|---|
| "Monsanto has been able to maintain its glyphosate herbicide monopoly . . . through a comprehensive anticompetitive and exclusionary scheme that has involved Monsanto's unlawful leveraging of its monopolies in both the market for glyphosate herbicides and the markets for genetically modified seed traits." (Pullen Compl. ¶ 6; Wade Compl. ¶ 6) | "Monsanto has maintained its monopoly power in these markets through a series of exclusionary and other anticompetitive practices." (Schoenbaum Compl. ¶ 128) |
| "Monsanto embarked on an $8 billion acquisition program whereby it acquired, merged with, or obtained an ownership interest in a large number of then existing and leading biotechnology and seed companies." (Pullen Compl. ¶ 58; Wade Compl. ¶ 60) | "Monsanto, in a multibillion-dollar buying spree - in an effort to acquire traits, technology, intellectual property, hybrid seed, foundation seed assets, and additional seed industry market share - rapidly acquired a large number of leading gene and seed companies." (Schoenbaum Compl. ¶ 118) |
| "AgrEvo (an Aventis predecessor) was also trying to develop a glufosinate-based seed trait through a collaboration agreement with Asgrow, a soybean and corn seed company. Had AgrEvo been able to develop such seed, growers could have sprayed glufosinate over glufosinate-tolerant crops. . . . In or about February 1997, however, Monsanto acquired Asgrow and promptly killed the glufosinate project." (Pullen Compl. ¶ 60; Wade Compl. ¶ 62) | "[I]n a further effort to prevent competition in the genetically-modified soybean seed market, Monsanto entered into an agreement with AgrEvo - the corporate predecessor of Aventis CropScience USA Holding, Inc. (which has since been acquired by Bayer AG) - to prevent AgrEvo's Liberty Link soybean seeds from gaining market viability." (Schoenbaum Compl. ¶ 117) |
| "During this period Monsanto also acquired various other seed and seed technology companies such as Argrocetes (1996), Ecogen (1996), Calgene (1997) and Plant Breeding International (1999) (a Brazilian seed company), all of which had been involved in the development and/or production of biotechnology traits or seeds." (Pullen Compl. ¶ 63; Wade Compl. ¶ 65) | "Specifically, since 1996, Monsanto has acquired, merged with, or obtained an interest in, inter alia: . . . Calgene LLC (1997); . . . Plant Breeding International (1999); . . . Agracetus (1996); Ecogen Inc. (1996); . . . ." (Schoenbaum Compl. ¶ 119) |

---

[1]    Complaint, *Pullen Seeds and Soil v. Monsanto Co.*, No. 06-599 (D. Del. Sept. 26, 2006); Complaint *Wade Farms et al. v. Monsanto Co.*, No. 06-600 (D. Del. Sept. 26, 2006); Amended Complaint, *Schoenbaum v. E.I. Dupont de NeMours and Co., et al.*, No. 4:05-CV-1108 (E.D. Mo. June 26, 2006).

| | |
|---|---|
| "Monsanto also pursued the strategy to neutralize potential competitors by entering into restrictive licensing agreements with independent seed companies." (Pullen Compl. ¶ 67; Wade Compl. ¶ 69) | "Monsanto has denied seed companies access to these traits unless the seed companies agree to enter restrictive licenses designed to prevent competition." (Schoenbaum Compl. ¶ 128) |
| "Monsanto entered into numerous long-term (typically 10-years) licensing agreements with seed companies which grow the seed with Monsanto's biotechnology seed traits for resale to the market. These agreements . . . prohibited [stacking] . . . ." (Pullen Compl. ¶ 68; Wade Compl. ¶ 70) | "Monsanto, however, imposes anticompetitive restrictions on the seed manufacturers, including: (a) prohibiting, . . . 'stacking' . . ." (Schoenbaum Compl. ¶ 67) |
| "Monsanto's use of licenses to block the development and growth of competing types of biotechnology seed traits and herbicides was the focus of its 1996 strategy called the 'Monsanto Maize Protection Business Plan.' The Monsanto Maize Protection Business Plan outlined a scheme to obtain and exercise monopoly control of the markets for biotechnology seed traits by licensing seed trait technology (including the glyphosate-tolerant technologies) to independent seed companies who might otherwise compete with Monsanto." (Pullen Compl. ¶ 70; Wade Compl. ¶ 72) | "Monsanto's intent to 'cartelize' or otherwise unlawfully control, *inter alia*, the genetically-modified seed and/or seed trait markets - including the genetically modified soybean and corn seed and/or seed trait markets - is evidenced in . . . its 'Maize Protection Business Plan' (the "Protection Plan"). In the Protection Plan, Monsanto outlined its strategy to monopolize and restrain trade through licensing its genetically-modified soybean and corn seed traits to independent seed companies - including Pioneer - that competed both with Monsanto and with each other." (Schoenbaum Compl. ¶ 101) |
| "According to an antitrust complaint filed by Syngenta in this Court, *Syngenta Seeds, Inc., v. Monsanto Company and Monsanto Technology, LLC*, C.A. No. 04-908-SLR, once Monsanto learned of Syngenta's efforts to develop and market its own glyphosate-tolerant corn seed traits based on the GA21 event, Monsanto prohibited its seed company licensees from developing a seed trait using the GA21 event, effectively foreclosing competition from Syngenta in glyphosate-tolerant corn traits." (Pullen Compl. ¶ 74; Wade Compl ¶ 76) | "Likewise, at different times during the Relevant Time Period, Syngenta has asserted, *inter alia*, that 'Monsanto is a monopolist in the markets for every biotechnological corn trait available in the United States market,' Complaint at ¶ 3, *Syngenta Seeds, Inc., v. Monsanto Co. and Monsanto Technology, LLC*, C.A. No. 04-908-SLR (D. Del. July 28, 2004); 'Monsanto has maintained its monopoly power [in the corn seed trait market] through a series of exclusionary and unlawful practices . . . [including] den[ying] [competitor] seed companies access to these traits unless the seed companies agree to enter restrictive licenses designed to prevent competition.' *Id.* at ¶ 4." (Schoenbaum Compl. ¶ 49) |
| "In addition to the exclusive-dealing requirements with its seed company licensees, Monsanto has used various types of bundled rebates to ensure that seed companies produce | "Through, *inter alia*, its bundled incentive programs . . . and the other methods described above, Monsanto has used its monopoly power in several markets to create virtually |

| | |
|---|---|
| and sell seed containing Monsanto's seed traits virtually exclusively." (Pullen Compl. ¶ 76; Wade Compl. ¶ 78) | impenetrable barriers for any competitor seeking to enter any one of those trait markets, thereby restraining competition therein." (Schoenbaum Compl. ¶ 134) |
| "Monsanto's dealers and distributors are subject to a variety of restrictive conditions that limit their ability and incentive to sell competing glyphosate herbicide products and which in fact penalize them for selling non-Monsanto herbicides." (Pullen Compl. ¶ 83; Wade Compl. ¶ 85) | "Monsanto's anticompetitive conduct was summed up, . . . that '[t]he pressure Monsanto puts on dealers and distributors makes it very difficult for competitors to sell their own glyphosate products, even when those products are cheaper than Roundup.'" (Schoenbaum Compl. ¶ 135) |
| "Monsanto . . . has various programs such as its so-called 'Action Pact Program,' pursuant to which Monsanto pays dealers and distributors a percentage rebate. . . ." (Pullen Compl. ¶ 84; Wade Compl. ¶ 86) | "Monsanto employed anti-competitive marketing tactics, including . . . the 'Action Pact' program, and other programs. . . . Monsanto's 'Action Pact' program rewards each participating seed retailer based on that retailer's rate of growth in sales of seeds containing Monsanto's traits. . . ." (Schoenbaum Compl. ¶¶ 129-130) |
| "As a result of Monsanto's rebate programs, dealers and distributors have little or no incentive to purchase, stock or sell generic glyphosate since if they sell more than a de minimus amount, they stand to be penalized by losing the substantial rebates they would otherwise receive on the sale of Monsanto products." (Pullen Compl. ¶ 85; Wade Compl. ¶ 87) | "The terms of these programs have allowed Monsanto to use its market power in the broad-spectrum-herbicide-resistant soybean and corn seed and/or seed trait markets and the genetically-modified *Bt* corn seed and/or seed trait markets to exclude other potential competitors from the needed channels of distribution and to monopolize these markets." (Schoenbaum Compl. ¶ 129) |
| "Monsanto has also imposed exclusionary and restrictive conditions at the grower level that prevent growers from using generic glyphosate in connection with Monsanto's glyphosate-tolerant seed traits. While Monsanto does not typically sell seeds directly to farmers, Monsanto requires growers to sign a technology license, Grower's Agreement and Technology Use Agreement ("TUA") that effectively mandates that they use only Roundup herbicides on Roundup Ready crops." (Pullen Compl. ¶ 86; Wade Compl. ¶ 88) | "In addition to setting forth the farmers' obligation to pay the technology fee to Monsanto as an incorporated part of the price of any purchase of seeds containing Monsanto's technologies, the Technology Agreement contains numerous other terms as well. These terms are so onerous that they demonstrate the anticompetitive lock that Monsanto has on the relevant genetically-modified seed and/or seed trait markets." (Schoenbaum Compl. ¶ 91) |

# EXHIBIT B

# 2006 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
*(Limited Use License)*

PLEASE MAIL THE SIGNED 2006 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:
Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Agreement you must be the operator/grower for all fields that will grow plants from Seed you obtain containing Monsanto Technologies (defined below). You represent that you have full authority to and hereby bind to this Agreement yourself, all entities for which you obtain Seed, all individuals and entities having an ownership interest in any entities for which you obtain Seed, and that Monsanto Company has not barred any of those individuals or entities from obtaining this limited-use license. Your name must be filled in and must match the signature below.

**Full Grower's Name** (First/Middle/Last)    Dr.    Mr.    Mrs.    Ms.    Suffix (Jr. Sr. II, III, etc.)    **Farm Business Name**

**Business Address** (as listed with the FSA)    **Business City**

**State    Zip    Area Code    Business Phone    Fax**

**E-mail Address**

## PRIMARY SEED SUPPLIER

**Business Name**

**Area Code    Phone    City    State    Zip**

### THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:

Lic. #:    Batch #:    Date:

This Monsanto Technology/Stewardship Agreement is entered into between you (Grower) and Monsanto Company (Monsanto) and consists of the terms on this page and on the second page.

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® soybeans, YieldGard® Corn Borer corn, YieldGard® Rootworm corn, YieldGard® Rootworm with Roundup Ready® Corn 2, YieldGard® Plus corn, YieldGard® Plus with Roundup Ready® Corn 2, YieldGard® Corn Borer with Roundup Ready® Corn 2, Roundup Ready® corn, Bollgard® cotton, Bollgard® with Roundup Ready® Cotton, Bollgard II® cotton, Bollgard II® with Roundup Ready® Cotton, Roundup Ready® Flex Cotton, Bollgard II® with Roundup Ready Flex Cotton, Roundup Ready® sugarbeets, Roundup Ready® Canola, and Roundup Ready® Alfalfa (Monsanto Technologies). This Agreement also contains Grower's stewardship responsibilities and requirements associated with the Monsanto Technologies.

**GENERAL TERMS:**
Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower acknowledges that Grower has received a copy of Monsanto's Technology Use Guide (TUG). To obtain additional copies of the TUG, contact Monsanto at 1-800-768-6387 or go to Farmsource.com. Once effective, this agreement will remain in effect until either Grower or Monsanto chooses to terminate the Agreement. Information regarding new and existing Monsanto Technologies and any new terms will be mailed to you each year. Continuing use of Monsanto Technologies after receipt of any new terms constitutes Grower's agreement to be bound by the new terms. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**GROWER RECEIVES FROM MONSANTO COMPANY:**
• A limited use license to purchase and plant seed containing Monsanto Technologies ("Seed") and apply Roundup agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready crops. Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement and for Spring canola in a separate use agreement.
• Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower, under applicable patents owned or licensed by Monsanto, to use Monsanto Technologies subject to the conditions specified in this Agreement. This license does not authorize Grower to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States. Grower is not authorized to transfer Seed to anyone outside of the U.S.
• Enrollment for participation in Roundup Rewards℠ program.
• A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, alfalfa, or Canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), Roundup agricultural herbicides or other glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop to control volunteer Roundup Ready corn in Grower's crops for the 2006 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

PLEASE MAIL THE SIGNED 2006 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO: Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141. This Monsanto Technology/Stewardship Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's home office in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

**UNITED STATES PATENTS:**
The licensed U.S. patents include: for YieldGard® Corn Borer corn — 5,484,956; 5,352,605; 5,424,412; 5,859,347; 5,593,874;6,180,774; 6,331,665; for YieldGard® Corn Rootworm corn - 5,110,732; 6,174,724; 5,484,956; 5,352,605; 5,023,179; 6,063,597; 6,331,665; 6,501,009; for YieldGard®Plus corn - 5,023,179; 5,352,605 ; 5,484,956; 5,424,412; 5,859,347; 5,593,874; 6,063,597; 6,174,724; 6,331,665; for Roundup Ready® Corn 2 – 4,940,835; 5,188,642; 5,359,142; 5,196,525; 5,322,938; 5,164,316; 5,352,605; 5,554,798; 5,593,874; 5,859,347; 5,424,412; 5,633,435; 5,804,425; 5,641,876; 6,825,400; 5,717,084; 5,728,925; 6,083,878; 6,025,545; for Roundup Ready® corn - 4,940,835; 5,188,642; 6,025,545; 5,554,798; 6,040,497; 5,641,876; 5,717,084; 5,728,925; 6,083,878; for YieldGard Corn Borer with Roundup Ready® Corn - 5,484,956; 5,352,605; 5,424,412; 5,859,347; 5,593,874; 6,331,665; 4,940,835; 5,188,642; 5,359,142; 5,196,525; 5,322,938; 5,164,316; 5,554,798; 5,633,435; 5,804,425; 5,641,876; 5,717,084; 5,728,925; 6,083,878; 6,025,545; for Roundup Ready® soybeans – 4,940,835; 5,188,642; 5,352,605; 5,633,435; 5,530,196; 5,717,084; 5,728,925; 5,804,425; for Roundup Ready® cotton – 5,633,435; 5,352,605; 5,530,196; 5,188,642; 4,940,835; 5,804,425, 6,051,753; 6,018,100; 5,378,619; 6,174,724; 5,159,135; 5,004,863; 5,717,084; 6,083,878; for Bollgard® cotton – 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,164,316; 6,174,724; 5,880,275; 5,159,135; 5,004,863; for Bollgard® with Roundup Ready® cotton – 5,633,435; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,164,316; 6,174,724; 5,880,275; 5,717,084; 5,728,925; 6,051,753; 6,018,100; 5,378,619; 6,174,724 ; 5,159,135; 5,004,863; 6,083,878; 5,880,275; 5,804,425; 5,338,544; 5,362,865; 5,659,172; for Roundup Ready® Canola – 6,051,753; 6,018,100; 5,378,619; 5,728,925; 5,776,760; 5,717,084; 5,804,425; 5,633,435; 5,188,642; 4,940,835; 5,453,375; 6,083,878; for Roundup Ready® sugarbeets – 5,378,619; 5,463,175; 5,776,760; 5,633,435; 5,164,316; 5,196,525; 5,322,938; 5,359,142; 5,352,605; 5,530,196; 4,940,835; 5,188,642; 5,717,084; 5,728,925; 6,018,100; 6,051,753; 6,083,878; 5,804,425; 6,174,724; for Roundup Ready® Alfalfa – 6,051,753; 6,018,100; 5,378,619; 5,362,865; 5,659,122; 5,717,084; 5,728,925; 5,633,435; 5,804,425; for Roundup Ready® Flex Cotton - 4,940,835; 5,004,863; 5,159,135; 5,188,642; 5,633,435;5,717,084; 5,728,925; 5,804,425; 6,051,753; 6,083,878; 6,660,011; for Bollgard II® with Roundup Ready® Flex Cotton - 6,489,542; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,164,316; 6,174,724; 5,880,275; 5,159,135; 5,004,863; 5,728,925; 5,717,084; 5,338,544; 5,659,122; 5,362,865; 4,940,835; 5,004,863; 5,159,135; 5,188,642; 5,633,435; 5,717,084; 5,728,925; 5,804,425; 6,051,753; 6,083,878; 6,660,011; for YieldGard® Plus with Roundup® Corn 2-5,023,179; 5,352,605 ; 5,484,956; 5,424,412; 5,859,347; 5,593,874; 6,063,597; 6,174,724; 6,331,665; 5,188,642; 5,359,142; 5,196,525; 5,322,938; 5,164,316; 5,352,605; 5,554,798; 5,593,874; 5,859,347; 5,424,412; 5,633,435; 5,804,425; 5,641,876; 6,825,400; 5,717,084; 5,728,925; 6,083,878; 6,025,545; for YieldGard® Corn Borer with Roundup Ready® Corn 2 -5,484,956; 5,352,605; 5,424,412; 5,859,347; 5,593,874;6,180,774; 6,331,665; 4,940,835; 5,188,642; 5,359,142; 5,196,525; 5,322,938; 5,164,316; 5,352,605; 5,554,798; 5,593,874; 5,859,347; 5,424,412; 5,633,435; 5,804,425; 5,641,876; 6,825,400; 5,717,084; 5,728,925; 6,083,878; 6,025,545; for YieldGard® Rootworm with Roundup Ready® Corn 2 - 5,110,732; 6,174,724; 5,484,956; 5,352,605; 5,023,179; 6,063,597; 6,331,665; 6,501,009; 4,940,835; 5,188,642; 5,359,142; 5,196,525; 5,322,938; 5,164,316; 5,352,605; 5,554,798; 5,593,874; 5,859,347; 5,424,412; 5,633,435; 5,804,425; 5,641,876; 6,825,400; 5,717,084; 5,728,925; 6,083,878; 6,025,545; for tank mix 6,239,072

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Roundup Ready® crops contain genes that confer tolerance to glyphosate, the active ingredient in Roundup® agricultural herbicides. Roundup® agricultural herbicides will kill crops that do not contain Roundup Ready® genes. Roundup®, Roundup Ready®, Bollgard®, Bollgard II®, YieldGard®, and the Vine Symbol are trademarks of Monsanto Technology LLC. Roundup Rewardssm is a servicemark of Monsanto Technology LLC © 2001 Monsanto Company. Roundup Rewards applies only to Roundup branded and other specified Monsanto agricultural herbicides.

          

**GROWER AGREES:**

- To direct grain produced from corn containing the YieldGard Rootworm trait and stacks that include the Roundup Ready Corn 2 and/or YieldGard Rootworm trait(s) to appropriate markets as necessary.
- If growing Roundup Ready alfalfa: to comply with the Seed and Feed Use Agreement, which is incorporated and part of this Agreement, to direct any product produced from a Roundup Ready alfalfa crop or seed, including hay and hay products, only to those countries where regulatory approvals have been granted, and not to plant Roundup Ready alfalfa for the production of sprouts. Refer to the Technology Use Guide for additional information.
- To accept and continue the obligations of this Monsanto Technology Stewardship Agreement on any new land purchased or leased by Grower that has Seed planted on it by a previous owner or possessor of the land; and to notify in writing purchasers or lessees of land owned by Grower that has Seed planted on it that the Monsanto Technology is subject to this Monsanto Technology Stewardship Agreement and they must have or obtain their own Monsanto Technology Stewardship Agreement.
- To implement an Insect Resistance Management program as specified in the applicable Bollgard/Bollgard II cotton and YieldGard corn sections of the most recent Technology Use Guide (TUG) and Insect Resistance Management (IRM) guides and to cooperate and comply with Insect Resistance Management programs.
- To use Seed containing Monsanto Technologies solely for planting a single commercial crop. Not to save any crop produced from Seed for planting and not to supply Seed produced from Seed to anyone for planting other than to a Monsanto licensed seed company.
- Not to transfer any Seed containing patented Monsanto Technologies to any other person or entity for planting.
- To plant Seed for Seed production, if and only if, Grower has entered into a valid, written Seed production agreement with a Seed company that is licensed by Monsanto to produce Seed. Grower must either physically deliver to that licensed Seed company or must sell or use as commodity grain all of the Seed produced pursuant to a Seed production agreement. Grower shall NOT plant any Seed Grower has produced or use or to allow others to use Seed containing patented Monsanto Technologies for crop breeding, research, or generation of herbicide registration data.
- To use on Roundup Ready crops only a labeled Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY CROP(S). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY CROP(S). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
- To read and follow the applicable sections of the TUG, which is incorporated into and is a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG as it may be amended from time to time.
- To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto or from a licensed company's authorized dealer.
- To pay all technology fees due to Monsanto that are a part of, associated with or collected with the Seed purchase price or that are invoiced for the seed.
- Upon written request, to allow Monsanto to review the Farm Service Agency crop reporting information on any land farmed by Grower including Summary Acreage History Report, Form 578 and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for seed and chemical transactions.
- To allow Monsanto to examine and copy any records and receipts that could be relevant to Grower's performance of this Agreement.

**GROWER UNDERSTANDS:**

- Commodity Marketing: Grain/commodities harvested from YieldGard Plus corn, YieldGard Plus with Roundup Ready Corn 2, YieldGard Rootworm with Roundup Ready Corn 2, YieldGard Corn Borer with Roundup Ready Corn 2, Roundup Ready Canola, and YieldGard Rootworm corn are approved for U.S. food and feed use but not yet approved in certain export markets where approval is not certain to be received before the end of 2006. As a result, Grower must direct those grain/commodities to the following approved market options: feeding on farm, use in domestic feed lots, elevators that agree to accept the grain, or other approved uses in domestic markets only. Go to www.866sellcom for a list of Grain Handlers' positions on accepting transgenic corn. The American Seed Trade Association web site (www.amseed.org) includes a list of grain handlers' positions on accepting transgenic corn. You must complete and send to Monsanto a Market Choices® Grain Marketing Communication Plan. For additional information on grain market options or to obtain additional forms, call 1-800-768-6387.
- Regulatory approvals: Monsanto Technologies may only be used where the products have been approved for use by all required governmental agencies. For example, some Monsanto Technologies are not approved in all states. Check with your Monsanto representative if you have questions about the approval status in your state.
- Insect Resistance Management (IRM): When planting any YieldGard or Bollgard product, Grower must implement an IRM program including planting a non-Bt refuge according to the size and distance guidelines specified in the Bollgard cotton and YieldGard corn sections of the most recent Monsanto Technology Use Guide including any supplemental amendments (collectively "TUG") and the crop specific IRM guides. Grower may lose Grower's limited use license to use these products if Grower fails to follow the IRM program required by this Agreement.
- Crop Stewardship & Specialty Crops: Refer to the section on Coexistence and Identity Preservation in the TUG for information on crop stewardship and considerations for production of identity preserved crops

**MONSANTO'S REMEDIES:**

If Grower breaches this Agreement, in addition to Monsanto's other remedies, Grower's limited-use license will terminate immediately. Thereafter, Monsanto will not accept any application for a new Monsanto Technology/Stewardship Agreement unless Monsanto provides in writing an authorization specifically naming Grower. Any such purported agreement that does not contain Monsanto's express authorization (whether a license number has been issued or not) is void. Injunction; Infringement and Contract Damages. If Grower is found by any court to have infringed one or more of the U.S. patents listed below, Grower agrees that Monsanto will be entitled to a permanent injunction enjoining Grower from making, using, selling, or offering for sale Seed and patent infringement damages to the full extent authorized by 35 U.S.C. § 271 et.seq.. Grower will also be liable for all breach of contract damages. If Grower is found by any court to have infringed one or more of the U.S. patents listed below or otherwise to have breached this agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) their attorneys' fees and costs.

Grower accepts the terms of the following NOTICE REQUIREMENT, LIMITED WARRANTY AND DISCLAIMER OF WARRANTY AND EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of Seed containing Monsanto Technology. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bags to Grower's seed dealer

**NOTICE REQUIREMENT:**

As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed containing Monsanto Technologies regarding performance or non-performance of Monsanto Technologies or the Seed in which it is contained, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed in which it is contained. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety.

**LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:**

Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

**GROWER'S EXCLUSIVE LIMITED REMEDY:**

THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED CONTAINING MONSANTO TECHNOLOGY (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call the Monsanto Customer Relations Center at: 1-800-ROUNDUP.

**GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the State of Missouri and the United States (without regard to the choice of law rules)

**BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:** Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

**GROWER SIGNATURE & DATE REQUIRED**

______________________________ ______________

Name Date

# EXHIBIT C

# 2005 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
*(Limited Use License)*

**PLEASE MAIL THE SIGNED 2005 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:**
Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Agreement you must be the operator/grower for all fields that will grow plants from Seed you obtain containing Monsanto Technologies (defined below). You represent that you have full authority to and do hereby bind to this Agreement yourself, all entities for which you obtain Seed, all individuals and entities having an ownership interest in any entities for which you obtain Seed, and that Monsanto Company has not barred any of those individuals or entities from obtaining this limited-use license. Your name must be filled in and must match the signature below.

**Grower's Name** (First/Middle/Last)    Dr. □  Mr. □  Mrs. □  Ms. □  Suffix (Jr. Sr. II, III, etc.)    **Farm Business Name**

**911 Business Address**    **Business City**    **State**    **Zip**

**Area Code**    **Business Phone**    **Fax**

**E-mail Address**

## PRIMARY SEED SUPPLIER

**Business Name**

**Area Code**    **Phone**    **City**    **State**

### THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:

Lic. #:          Batch #:          Date:

---

This Monsanto Technology/Stewardship Agreement is entered into between you (Grower) and Monsanto Company (Monsanto) and consists of the terms on this page and on the second page.

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® soybeans, YieldGard® Corn Borer corn, YieldGard Rootworm® corn, YieldGard Rootworm with Roundup Ready® corn 2, YieldGard® Plus corn**, YieldGard Plus with Roundup Ready® corn 2*, Roundup Ready® corn, Roundup Ready® corn 2, YieldGard Corn Borer with Roundup Ready® corn, YieldGard Corn Borer with Roundup Ready corn 2, Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Bollgard® II cotton, Bollgard® II with Roundup Ready® cotton, Roundup Ready® sugarbeets, Roundup Ready® canola, and Roundup Ready® alfalfa* (Monsanto Technologies). This Agreement also contains Grower's stewardship responsibilities and requirements associated with the Monsanto Technologies.

**GENERAL TERMS:**
Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower acknowledges that Grower has received a copy of Monsanto's Technology Use Guide (TUG). To obtain additional copies of the Monsanto Technology Use Guide, contact Monsanto at 1-800-768-6387. This Agreement will remain in effect until either Grower or Monsanto choose to terminate the Agreement. Once you enroll, information regarding new and existing Monsanto Technologies and any new terms will be mailed to you each year. Your continuing use of Monsanto Technologies after receipt of any new terms constitutes your agreement to be bound by the new terms. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

**GROWER RECEIVES FROM MONSANTO COMPANY:**
• A limited use license to purchase and plant seed containing Monsanto Technologies ("Seed") and apply Roundup agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready crops. Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement and for canola in a separate use agreement.
• Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower, under applicable patents owned or licensed by Monsanto, to use Monsanto Technologies subject to the conditions listed in this Agreement. This license does not authorize Grower to plant Seed in the United States that have been purchased in another country or plant Seed in another country that has been purchased in the United States.
• Enrollment in the value package called Roundup Rewards™, designed to bring increased benefits to you.
• A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, or canola crops (or have others prepare and apply) tank mixes of, or sequentially apply (or have others sequentially apply), Roundup agricultural herbicides or other glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop to control volunteer Roundup Ready corn in Grower's crops for the 2005 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

**PLEASE MAIL THE SIGNED 2005 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141. This Monsanto Technology/Stewardship Agreement becomes effective if and when Monsanto issues the Grower a license number from Monsanto's home office in St. Louis, Missouri. Monsanto does not authorize seed dealers or seed retailers to issue a license of any kind for Monsanto Technologies.

**UNITED STATES PATENTS:**
The licensed U.S. patents include: for YieldGard® Corn Borer corn – 5,484,956; 5,352,605; 5,424,412; 5,859,347; 5,593,874; 6,331,665; for YieldGard Corn Rootworm corn – 5,110,732; 6,174,724; 5,484,956; 5,352,605; 5,023,179; 6,063,597; 6,331,665; 6,501,009; for YieldGard®Plus corn – 5,023,179; 5,352,605; 5,484,956; 5,424,412; 5,859,347; 5,593,874; 6,063,597; 6,174,724; 6,331,665; for Roundup Ready® corn 2 – 4,940,835; 5,188,642; 5,359,142; 5,196,525; 5,322,938; 5,164,316; 5,352,605; 5,554,798; 6,040,497; 5,641,876; 5,717,084; 5,728,925; 6,083,878; 6,025,545; for Roundup Ready® corn – 4,940,835; 5,188,642; 6,025,545; 5,554,798; 6,040,497; 5,641,876; 5,717,084; 5,728,925; 6,083,878; for YieldGard Corn Borer with Roundup Ready® corn – 5,484,956; 5,352,605; 5,424,412; 5,859,347; 5,593,874; 6,331,665; 4,940,835; 5,188,642; 5,359,142; 5,196,525; 5,322,938; 5,164,316; 5,554,798; 5,633,435; 5,804,425; 5,641,876; 5,717,084; 5,728,925; 6,083,878; 6,025,545; for Roundup Ready® soybeans – 4,940,835; 5,188,642; 5,352,605; 5,633,435; 5,530,196; 5,717,084; 6,083,878; for Bollgard® cotton – 5,633,435; 5,352,605; 5,530,196; 5,188,642; 4,940,835; 5,804,425; 6,051,753; 6,018,100; 5,378,619; 6,174,724; 5,159,135; 5,004,863; 5,728,925; 5,717,084; 6,083,878; for Bollgard® cotton – 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,164,316; 6,174,724; 5,188,642; 5,159,135; 5,004,863; for Bollgard® with Roundup Ready® cotton – 5,633,435; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 6,051,753; 6,018,100; 5,378,619; 6,174,724; 5,159,135; 5,004,863; 6,083,878; 5,880,275 and 5,804,425; for Bollgard® II cotton – 6,489,542; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,164,316; 6,174,724; 5,728,925; 5,159,135; 5,004,863; 5,728,925; 5,717,084; 5,338,544; 5,659,122; 5,362,865; for Bollgard® II with Roundup Ready® cotton – 5,633,435; 6,489,542; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; 6,051,753; 6,018,100; 5,378,619; 6,174,724; 5,159,135; 5,004,863; 6,083,878; 5,880,275; 5,804,425; 5,338,544; for Roundup Ready® canola – 6,051,753; 6,018,100; 5,378,619; 5,728,925; 5,776,760; 5,717,084; 5,804,425; 5,633,435; 5,627,061; 5,188,642; 4,940,835; 5,463,175; 6,083,878; for Roundup Ready® sugarbeets – 5,378,619; 5,463,175; 5,776,760; 5,633,435; 5,164,316; 5,196,525; 5,322,938; 5,359,142; 5,352,605; 5,530,196; 4,940,835; 5,188,642; 5,717,084; 5,728,925; 6,018,100; 6,051,753; 6,083,878; 5,804,425; 6,174,724; for Roundup Ready® Alfalfa – 6,051,753; 6,018,100; 5,378,619; 5,362,865; 5,659,122; 5,717,084; 5,728,925; 5,633,435; 5,804,425; for tank mix 6,239,072.

*ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Roundup® agricultural herbicides will kill crops that do not contain the Roundup Ready® gene. Roundup®, Roundup Ready®, Bollgard®, YieldGard®, and the Vine Symbol are trademarks of Monsanto Technology LLC. Roundup Rewards™ is a servicemark of Monsanto Technology LLC © 2001 Monsanto Company. Roundup Rewards applies only to Roundup branded and other specified Monsanto agricultural herbicides.*

          

**GROWER AGREES:**
• To direct grain produced from corn containing the Roundup Ready and/or YieldGard Rootworm trait(s) (including stacks) to appropriate markets as necessary to prevent movement to markets within the European Union (until issuance of final approvals).
• To implement an Insect Resistance Management program as specified in the applicable Bollgard cotton and YieldGard corn sections of the most recent Technology Use Guide (TUG) and to cooperate and comply with Insect Resistance Management programs.
• To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
• Not to supply any Seed containing patented Monsanto Technologies to any other person or entity for planting. Not to save any crop produced from Seed for planting and not to supply Seed produced from Seed to anyone for planting.
• Not to use or to allow others to use Seed containing patented Monsanto Technologies for crop breeding, research, generation of herbicide registration data, or Seed production (unless Grower has entered into a valid, written production agreement with a licensed seed company).
• To use on Roundup Ready crops only a Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY CROP(S). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY CROP(S). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
• To read and follow the applicable sections of the TUG, which is incorporated into and is a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG as it may be amended from time to time.
• To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto or from a licensed company's authorized dealer.
• To pay the technology fees due to Monsanto that are a part of or collected with the Seed purchase price.
• Upon written request, to allow Monsanto to review the Farm Service Agency crop reporting information on any land farmed by Grower including Summary Acreage History Report, Form 578 and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for your seed and chemical transactions.
• To allow Monsanto to examine and copy any records and receipts that could be relevant to Grower's performance of this Agreement.

*Final regulatory approvals are pending for Roundup Ready alfalfa and  YieldGard Plus with Roundup Ready corn 2. These products are not currently registered with the U.S. Environmental Protection Agency and are not currently available for sale or commercial use. UPON APPROVAL, this Monsanto Technology/Stewardship Agreement (limited use license) will be used and shall govern the terms and conditions for the authorized use of these products.  **As of 4/16/04, YieldGard Plus is awaiting final Japanese approval and is being distributed in 2004 pursuant to a controlled Grower Demonstration Program.  Upon final Japanese approval, Monsanto plans a national launch for the 2005 growing season*

**GROWER UNDERSTANDS:**
• Grain Marketing:  Grain/commodities harvested from Roundup Ready corn, Roundup Ready corn 2, Roundup Ready Plus with Roundup Ready corn 2, YieldGard Rootworm with Roundup Ready corn 2, YieldGard Corn Borer with Roundup Ready corn, YieldGard Corn Borer with Roundup Ready corn 2, Roundup Ready canola, and YieldGard Rootworm corn are approved for U.S. food and feed use but not yet approved in certain export markets where approval is not certain to be received before the end of 2005. As a result, Grower must direct those grain/commodities to the following approved market options: feeding on farm, use in domestic feed lots, elevators that agree to accept the grain, or other approved uses in domestic markets only. The American Seed Trade Association web site (www.amseed.org) includes a list of grain handlers' positions on accepting transgenic corn. You must complete and send to Monsanto a Market Choices® form. For additional information on grain market options or to obtain additional forms, call 1-800-768-6387.
• Regulatory approvals:  Monsanto Technologies may only be used within the United States where the products have been approved for use by all required governmental agencies.
• Insect Resistance Management (IRM):  When planting any YieldGard or Bollgard product, Grower must implement an IRM program including planting a non-Bt refuge according to the size and distance guidelines specified in the Bollgard cotton and YieldGard corn sections of the most recent Monsanto Technology Use Guide including any supplemental amendments (collectively "TUG"). Grower may lose Grower's limited use license to use these products if Grower fails to follow the IRM program required by this Agreement.
• Gene flow:  Refer to the TUG for information on crop stewardship regarding the potential movement of pollen to neighboring crops.

**MONSANTO'S REMEDIES:**
a. Termination of License.  If Grower breaches this Agreement, in addition to Monsanto's other remedies, Grower's limited-use license will terminate immediately. Thereafter, Monsanto will not accept any offer for a new Monsanto Technology/Stewardship Agreement with Grower, unless Monsanto expressly provides in writing an authorization specifically naming Grower. Any such purported agreement that does not contain Monsanto's express authorization defining a license number has been issued or not) is void.
b. Injunction; Infringement and Contract Damages.  If Grower is found by any court to have infringed one or more of the U.S. patents listed below, Grower agrees that Monsanto will be entitled to a permanent injunction enjoining Grower from making, using, selling, or offering for sale Seed and patent infringement damages to the full extent authorized by 35 U.S.C. § 283. Grower will also be liable for all breach of contract damages.
c. Attorneys Fees.  If Grower is found by any court to have infringed one or more of the U.S. patents listed below or otherwise to have breached this agreement, Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) their attorneys' fees and costs.

Grower accepts the terms of the following NOTICE REQUIREMENT, LIMITED WARRANTY AND DISCLAIMER OF WARRANTY AND EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of seed containing Monsanto Technology. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bags to Grower's seed dealer.

**NOTICE REQUIREMENT:**
As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed containing Monsanto Technologies regarding performance or non-performance of Monsanto Technologies or the Seed in which it is contained, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies and/or to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or the Seed in which it is contained. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety.

**LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:**
Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

**GROWER'S EXCLUSIVE LIMITED REMEDY:**
THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED CONTAINING MONSANTO TECHNOLOGY INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED.  IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies or this license, please call the Monsanto Customer Relations Center at: 1-800-ROUNDUP.

**GOVERNING LAW:** This Agreement and the parties' relationship shall be governed by the laws of the state of Missouri and the United States (without regard to the choice of law rules)

**BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:** Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement, any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS:** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (ANY LAWSUIT MUST BE FILED IN ST LOUIS, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES, EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT. 9 U.S.C. §1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

**GROWER SIGNATURE & DATE REQUIRED**

_____          _____
Name                                                              Date

# 2004 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
### (Limited Use License)

## GROWER INFORMATION (please print)

Please complete this section with your business information. To sign this Agreement you must be the operator/grower for all fields that will grow plants from Seed you obtain containing Monsanto Technologies (defined below). You represent that you have full authority to and do hereby bind to this Agreement all entities for which you obtain this Seed. Your name must be filled in and must match the signature below.

Grower's Name (print/initial) [ ] Dr. [ ] Mr. [ ] Mrs. [ ] Ms.     Suffix (Sr, Sr, II, III, etc.) [ ]     Farm Business Name

Business Address

Business City     State     Zip

Area Code     Business Phone     Fax

E-mail Address

BAR CODE

Form Number

**4 0 0 1 0 3 6 1 5**

## PRIMARY SEED SUPPLIER

Business Name

Area Code     Phone     City     State

## THIS SPACE FOR MONSANTO OFFICE USE ONLY, PLEASE LEAVE THIS SECTION BLANK:

Lic. #:     Batch #:     Date:

This Monsanto Technology/Stewardship Agreement is entered into between you (Grower) and Monsanto Company (Monsanto) and consists of the terms on this page and on the reverse side of this page.

This Monsanto Technology/Stewardship Agreement grants Grower a limited license to use Roundup Ready® soybeans, YieldGard Corn Borer corn and YieldGard Rootworm® corn, Roundup Ready® corn, YieldGard Corn Borer with Roundup Ready® corn, Roundup Ready® cotton, Bollgard® cotton, Bollgard II® with Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Roundup Ready® soybeans, Roundup Ready® canola, and Roundup Ready Alfalfa™ (Monsanto Technologies). This Agreement also contains Grower's stewardship responsibilities and requirements associated with the Monsanto Technologies.

**GOVERNING LAW:**
This Agreement and the parties relationship shall be governed by the laws of the state of Missouri and the United States (other than the choice of law rules).

**BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:**
Any claim or action made or asserted by a cotton Grower (or any other person) claiming an interest in the Grower's cotton crop against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of ... and/or in connection with the production or the sale or performance of the cotton Seed containing Monsanto Technology (other than claims arising under the patent laws of the United States) must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce... The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place in the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/seller shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/seller shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS.** THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI. ANY LAWSUIT MUST BE FILED IN ST. LOUIS, MO FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER.

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. 1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

SIGNATURE & DATE REQUIRED

Name     Date

[The Agreement continues below and on the reverse side of this page.]

**GROWER AGREES:**
- To channel grain produced to appropriate markets as necessary to prevent movement to markets when the grain has not yet received regulatory approval for import.
- To implement an Insect Resistance Management program as specified in the applicable Bollgard cotton and YieldGard corn sections of the most recent Technology Use Guide (TUG) and to cooperate and comply with Insect Resistance Management programs.
- To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
- Not to supply any Seed containing patented Monsanto Technologies to any other person or entity for planting. Not to save any crop produced from this Seed for planting and not to supply Seed produced from this Seed to anyone for planting.
- Not to use or to allow others to use Seed containing patented Monsanto Technologies for crop breeding, research, generation of herbicide registration data, or Seed production (unless Grower has entered into a valid, written production agreement with a licensed seed company).
- To use on Roundup Ready crops only a Roundup® labeled herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready gene (see TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY CROP(S). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY CROP(S). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
- To read and follow the applicable sections of the TUG, which is incorporated into and is a part of this Agreement, for specific requirements relating to the items of this Agreement, and so abide by and be bound by the terms of the TUG as it may be amended from time to time.
- To acquire Seed containing these Monsanto Technologies only from a seed company with technology license(s) from Monsanto or from a licensed company's authorized dealer.
- To pay the Seed purchase price including any applicable technology fees.
- To allow Monsanto to review the Farm Service Agency crop reporting information on any land farmed by Grower including Summary Acreage History Report, Form 578 and corresponding aerial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for your seed and chemical transactions.
- To allow Monsanto to examine and copy any records and receipts that could be relevant to Grower's performance of this Agreement.

*Final regulatory approvals are pending for Roundup Ready Alfalfa. This product is not currently registered with the U.S.
APPROVAL. (In) Monsanto Technology/Stewardship Agreement (limited use license) will be used and shall govern the terms and conditions for the authorized use of stated seed.

Roundup     Bollgard II   Bollgard     MONSANTO

MONSANTO COPY

**GROWER RECEIVES FROM MONSANTO COMPANY:**

**GROWER UNDERSTANDS:**

**GENERAL TERMS:**

**MONSANTO'S REMEDIES:**

**NOTICE REQUIREMENT:**

**LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:**

**GROWER'S EXCLUSIVE LIMITED REMEDY:**

# 2003 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
### (Limited Use License)

## FARM INFORMATION (please print)

Please complete this section with your farm business information. The individuals and entities bound by the terms of this Agreement shall include the farm business listed below as well as all individuals or entities affiliated with, related to or having an ownership in such farm business. Your name must be filled in and must match the signature below.

**Farm Business Name**

**Your Name** (Last/Middle/First) ☐ Dr. ☐ Mr. ☐ Mrs. ☐ Ms. Suffix (Sr, Jr, III, etc.)

**Business Address**

**Business City**     **State**     **Zip**

**Area Code**   **Business Phone**   **Fax**

**E-mail Address**

What is your role on the farm? (check one)
☐ Owner
☐ Owner/Oper.
☐ Operator
☐ Farm Mgt.
☐ Farm/Dir.
☐ Other
Describe:

BAR CODE

**Form Number**
## 04 0256544

## PRIMARY SEED SUPPLIER

**Business Name**

**Area Code**   **Phone**   **City**   **State**

THIS SPACE FOR MONSANTO OFFICE USE ONLY. PLEASE LEAVE THIS SECTION BLANK:

Lic. #:     Batch #:     Date:

This Monsanto Technology/Stewardship Agreement is entered into between you (Grower) and Monsanto Company (Monsanto) and consists of the terms on this page and on the reverse side of this page.

This Monsanto Technology/Stewardship Agreement grants you a limited license to use Roundup Ready® soybeans, YieldGard® Corn Borer corn and YieldGard® Corn Rootworm corn™, Roundup Ready® corn, YieldGard® Corn Borer with Roundup Ready® corn, Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Bollgard II™ cotton, Bollgard II® with Roundup Ready® cotton, Roundup Ready® sugarbeets and Roundup Ready® canola (Monsanto Technologies). This Agreement also contains your stewardship responsibilities and requirements associated with the Monsanto Technologies.

**GOVERNING LAW:**
This Agreement and the parties relationship shall be governed by the laws of the state of Missouri and the United States (other than the choice of law rules).

**BINDING ARBITRATION FOR COTTON-RELATED CLAIMS MADE BY GROWER:**
Any claim or action made or asserted by a cotton Grower (or any other person claiming an interest in the Grower's cotton crop) against Monsanto or any seller of cotton Seed containing Monsanto Technology arising out of and/or in connection with this Agreement, or the sale or performance of the cotton Seed containing Monsanto Technology other than claims arising under the patent laws of the United States must be resolved by binding arbitration. The parties acknowledge that the transaction involves interstate commerce. The parties agree that arbitration shall be conducted pursuant to the provisions of the Federal Arbitration Act, 9 U.S.C. Sec. 1 et seq. and administered under the Commercial Dispute Resolution Procedures established by the American Arbitration Association ("AAA"). The term "seller" as used throughout this Agreement refers to all parties involved in the production, development, distribution, and/or sale of the Seed containing Monsanto Technology. In the event that a claim is not amicably resolved within 30 days of Monsanto's receipt of the Grower's notice required pursuant to this Agreement any party may initiate arbitration. The arbitration shall be heard in the capital city of the state of Grower's residence or in any other place as the parties decide by mutual agreement. When a demand for arbitration is filed by a party, the Grower and Monsanto/sellers shall each immediately pay one half of the AAA filing fee. In addition, Grower and Monsanto/sellers shall each pay one half of AAA's administrative and arbitrator fees as those fees are incurred. The arbitrator(s) shall have the power to apportion the ultimate responsibility for all AAA fees in the final award. The arbitration proceedings and results are to remain confidential and are not to be disclosed without the written agreement of all parties, except to the extent necessary to effectuate the decision or award of the arbitrator(s) or as otherwise required by law.

**FORUM SELECTION FOR NON-COTTON-RELATED CLAIMS MADE BY GROWER AND ALL OTHER CLAIMS. THE PARTIES CONSENT TO THE SOLE AND EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, MISSOURI, (any lawsuit must be filed in St. Louis, MO) FOR ALL CLAIMS AND DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THIS AGREEMENT AND THE USE OF THE SEED OR THE MONSANTO TECHNOLOGIES EXCEPT FOR COTTON-RELATED CLAIMS MADE BY GROWER.**

THIS AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION FOR COTTON RELATED CLAIMS PURSUANT TO THE PROVISIONS OF THE FEDERAL ARBITRATION ACT, 9 U.S.C. 1 ET SEQ., WHICH MAY BE ENFORCED BY THE PARTIES.

SIGNATURE & DATE REQUIRED

Name     Date
[The Agreement continues below and on the reverse side of this page.]

**YOU AGREE:**
• To channel grain produced to appropriate markets as necessary to prevent movement to markets when the grain has not yet received regulatory approval for import.
• To implement an Insect Resistance Management program as specified in the applicable Bollgard cotton and YieldGard corn sections of the most recent Technology Use Guide (TUG) and to cooperate and comply with Insect Resistance Management programs.
• To use Seed containing Monsanto Technologies solely for planting a single commercial crop.
• Not to supply any Seed containing patented Monsanto Technologies to any other person or entity for planting. Not to save any crop produced from this Seed for planting and not to supply Seed produced from this Seed to anyone for planting.
• Not to use or to allow others to use Seed containing patented Monsanto Technologies Seed or for crop breeding, research, generation of herbicide registration data, or seed production.
• To use on Roundup Ready crops only a Roundup® agricultural herbicide or other authorized non-selective herbicide which could not be used in the absence of the Roundup Ready gene (See TUG for details on authorized non-selective products). Use of any selective herbicide labeled for the same crop without the Roundup Ready gene is not restricted by this Agreement. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY CROPS. MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY CROPS. ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THOSE COMPANIES.
• To read and follow the applicable sections of the TUG, which is incorporated into and is a part of this Agreement, for specific requirements relating to the terms of this Agreement, and to abide by and be bound by the terms of the TUG as it may be amended from time to time.
• To accept these Monsanto Technologies only from a seed company with technology license(s) from Monsanto or from a licensed company's authorized dealer.
• To pay any applicable technology fees for cotton, canola, and sugarbeet traits as well as the purchase price of corn and soybeans, which is in part a Monsanto royalty. (Some seed company licensees may continue to charge a technology fee to Growers on soybean Seed and corn Seed).

*Final regulatory approvals are pending for YieldGard Corn Rootworm and Bollgard II. These products are not currently registered within U.S. Environmental Protection Agency and are not currently available for sale or commercial use. UPON APPROVAL, THIS MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT (LIMITED USE LICENSE) SHALL BE USED AND SHALL GOVERN THE TERMS AND CONDITIONS FOR THE USE OF THOSE TECHNOLOGIES.

Roundup  Bollgard  YieldGard  MONSANTO

MONSANTO COPY

**YOU RECEIVE FROM MONSANTO COMPANY:**
• A limited use license to purchase and plant seed containing Monsanto Technologies ("Seed") and apply Roundup agricultural herbicides and other authorized non-selective herbicides over the top of Roundup Ready crops (See TUG for details regarding authorized non-selective products). Monsanto retains ownership of the Monsanto Technologies including the genes (for example, the Roundup Ready gene) and the gene technologies. Grower receives the right to use the Monsanto Technologies subject to the conditions specified in this Agreement.
• Enrollment in the value package called Roundup Rewards™, designed to bring increased benefits to you.
• A limited use license to prepare and apply on glyphosate-tolerant soybean, cotton, or canola crops (or have others prepare and apply) such mixes of, or sequentially apply (or have others sequentially apply), Roundup agricultural herbicides or other glyphosate herbicides labeled for use on those crops with quizalofop, clethodim, sethoxydim, fluazifop, and/or fenoxaprop to control volunteer Roundup Ready corn in Grower's crops for the 2003 growing season. However, neither Grower nor a third party may utilize any type of co-pack or premix of glyphosate plus one or more of the above-identified active ingredients in the preparation of a tank mix.

**YU UNDERSTAND:**
• Channeling: Grain/commodities harvested from Roundup Ready corn, YieldGard Corn Borer with Roundup Ready corn, Roundup Ready canola and Roundup Ready sugarbeets are approved for U.S. food and feed use, but not yet approved in certain export markets where approval is not certain to be received before the end of 2003. As a result, the Grower must direct those grain/commodities to the following approved market options: feeding on farm, use in domestic feed lots, elevators that agree to accept the grain, or other approved uses in domestic markets only. The American Seed Trade Association web site (www.amseed.org) includes a list of grain handlers' positions on accepting Roundup Ready corn. For additional information on grain market options, call 1-800-768-6387.
• Regulatory Approvals: Monsanto Technologies may only be used within the United States where the products have been approved for use by all required governmental agencies.
• Insect Resistance Management (IRM): When planting any YieldGard or Bollgard product, you must implement an IRM program including planting a non-Bt refuge according to the size and distance guidelines specified in the Bollgard cotton and YieldGard corn sections of the most recent Monsanto TUG including any supplemental amendments. You may lose your limited use license to use these products if you fail to follow the IRM program required by this Agreement.
• Pollen flow: You should refer to the TUG for information on crop stewardship regarding the potential movement of pollen to neighboring crops.
• Patent Information: Monsanto Technologies are protected under U.S. patent law. Monsanto licenses the Grower, under applicable patents owned or licensed by Monsanto, to use Monsanto Technologies subject to the conditions listed in this Agreement. This license does not authorize you to plant Seed in the United States that has been purchased in another country or plant Seed in another country that has been purchased in the United States.

**GENERAL TERMS:**
Grower's rights may not be transferred to anyone else without the written consent of Monsanto. If Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights.

If Grower violates the terms of this Agreement, in addition to other remedies, Grower's rights pursuant to this Agreement will terminate immediately, and Grower and any entity owned or controlled by Grower forfeits any right to obtain an Agreement in the future and Grower's violation may result in infringement of one or more of the patents. Grower agrees to pay Monsanto and the licensed Monsanto patentee(s) their attorneys' fees and costs of enforcing this Agreement. If the Agreement is terminated, Grower will no longer have a right to purchase or use Seed containing Monsanto Technologies. Any obligations that arose before termination will continue to be in effect. In the event that Grower saves, supplies, sells or acquires Seed for planting in violation of this Agreement, Grower will be liable to Monsanto for patent infringement. In addition, Grower agrees that Monsanto will suffer damages for breach of contract, that the measure of these damages is difficult to determine, and as a result Monsanto has the right to liquidated damages to recover Monsanto's losses as just compensation and not as a penalty that shall be equal to the gross revenue from such seed, grain, or fiber produced from infringing use of Seed (calculated based upon the Chicago Board of Trade price for the applicable grain/commodity as of August 1st of the year in question and the USDA stated U.S. average yield for such crop in any county Grower grows the crop for the year in question). Grower consents to Monsanto's review of Farm Service Agency crop reporting information on any land farmed by Grower including Forms 578 and corresponding serial photographs, Risk Management Agency claim documentation, and dealer/retailer invoices for Grower's seed and chemical transactions. Grower agrees to allow Monsanto to examine and copy any of Grower's records and receipts that could be relevant to Grower's performance of this Agreement.

Grower acknowledges that grower has received a copy of Monsanto's TUG. To obtain additional copies of the Monsanto TUG, contact Monsanto at 1-800-768-6387. This Agreement will remain in effect until either you or Monsanto choose to terminate the Agreement. Once you enroll, information regarding new and existing Monsanto Technologies and any new terms will be mailed to you each year. Your continuing use of Monsanto Technologies after receipt of any new terms constitutes your agreement to be bound by the new terms. If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Grower accepts the terms of the following NOTICE REQUIREMENT, LIMITED WARRANTY AND EXCLUSIVE LIMITED REMEDY by signing this Agreement and/or opening a bag of seed containing Monsanto Technology. If Grower does not agree to be bound by the conditions of purchase or use, Grower agrees to return the unopened bags to Grower's seed dealer.

**NOTICE REQUIREMENT:**
As a condition precedent to Grower or any other person with an interest in Grower's crop asserting any claim, action, or dispute against Monsanto and/or any seller of Seed containing Monsanto Technologies regarding performance or non-performance of Monsanto Technologies or the Seed in which it is contained, Grower must provide Monsanto a written, prompt, and timely notice (regarding performance or non-performance of the Monsanto Technologies) and to the seller of any Seed (regarding performance or non-performance of the Seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. The notice will be timely only if it is delivered 15 days or less after the Grower first observes the issue(s) regarding performance or non-performance of the Monsanto Technology and/or Seed in which it is contained. The notice shall include a statement setting forth the nature of the claim, name of the Monsanto Technology, and Seed hybrid or variety.

**LIMITED WARRANTY AND DISCLAIMER OF WARRANTIES:**
Monsanto warrants that the Monsanto Technologies licensed hereunder will perform as set forth in the TUG when used in accordance with directions. This warranty applies only to Monsanto Technologies contained in planting Seed that has been purchased from Monsanto and seed companies licensed by Monsanto or the seed company's authorized dealers or distributors. EXCEPT FOR THE EXPRESS WARRANTIES IN THE LIMITED WARRANTY SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED INCLUDING THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE.

**EXCLUSIVE LIMITED REMEDY:**
THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF SEED CONTAINING MONSANTO TECHNOLOGY (INCLUDING CLAIMS BASED ON CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, TORT, OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF THE SEED INVOLVED OR, AT THE ELECTION OF MONSANTO OR THE SEED SELLER, THE REPLACEMENT OF THE SEED. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL, OR PUNITIVE DAMAGES.

Thank you for choosing our advanced technologies. We look forward to working with you in the future. If you have any questions regarding the Monsanto Technologies, please call the Monsanto Customer Relations Center at: 1-800-ROUNDUP.

**PLEASE MAIL THE SIGNED 2003 MONSANTO TECHNOLOGY AGREEMENT TO:** Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

The licensed U.S. patents include: for YieldGard® Corn Borer corn - 5,484,956; 5,352,605; 5,538,877; 5,538,880; 5,359,142; 5,322,938; 5,164,316; 5,196,525; 5,206,167; 5,424,412; 5,880,275; 5,859,347; 5,858,742; 5,593,874; 5,424,200; 5,359,142; 5,196,525; 5,322,938; 5,164,316; 5,424,200; 5,858,742; 5,352,605; 5,538,877; 5,538,880; 5,554,798; 5,593,874; 5,859,347; 5,424,412; 5,633,435; 5,804,425; 5,627,061; 5,641,876; 5,717,084; 5,728,925; and 5,188,642; for Roundup Ready® soybeans - 4,940,835; 5,188,642; 5,352,605; 5,633,435; 5,530,196; 5,717,084; 5,728,925; 5,804,425; 5,051,753; for Roundup Ready® cotton - 5,633,435; 5,352,605; 5,530,196; 5,188,642; 5,051,753; 5,804,425; 5,051,753; 6,018,100; 5,378,619; 5,627,061; 5,858,742; 6,174,724; 5,159,135; 5,004,863; 5,728,925; 5,717,084; and 6,063,876; for Bollgard® cotton - 5,424,200; 5,359,142; 5,352,605; 5,196,525; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,051,753; 6,018,100; 5,378,619; 5,627,061; 5,858,742; 6,174,724; 5,159,135; 5,004,863; 6,063,876; 5,880,275; 5,804,425; for Bollgard® II cotton - 5,424,200; 5,359,142; 5,352,605; 5,530,196; 5,322,938; 5,196,525; 5,164,316; 6,174,724; 5,880,275; 5,858,742; 6,063,876; 5,717,084; and 5,159,135; for Roundup Ready® corn - 6,083,878; 5,880,275; 5,804,425; and 5,538,544; for Roundup Ready® canola - 6,051,753; 6,018,100; 5,378,619; 5,728,925; 5,717,084; 5,804,425; 5,633,435; 5,627,061; 5,858,742; 6,174,724; 5,159,135; 5,004,863; 6,063,878; and for Roundup Ready® sugarbeets - 5,378,619; 5,463,175; 5,717,084; 5,627,061; 5,633,435; 5,164,316; 5,196,525; 5,322,938; 5,359,142; 5,424,200; 5,352,605; 5,530,196; 4,940,835; 5,463,175; and 5,728,925; 6,018,100; 6,051,753; 6,063,878; and 5,804,425; for tank mix-6,239,072. Please call 1-800-ROUNDUP if you have any questions concerning this license.

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Roundup® agricultural herbicides will kill crops that do not contain the Roundup Ready® gene. Roundup®, Roundup Ready®, Bollgard®, YieldGard®, and the Vine Symbol are trademarks of Monsanto Technology LLC Roundup Rewards™ is a servicemark of Monsanto Technology LLC © 2003 Monsanto Company. Roundup Rewards applies only to Roundup branded and other specified Monsanto agricultural herbicides.

# 2002 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT
## (Limited Use License)

## FARM INFORMATION

Please complete this section with your farm business information. The individuals and entities bound by the terms of this Agreement shall include the farm business listed below as well as all individuals or entities affiliated with, related to or having an ownership in such farm business. Your name must be filled in and must match the signature below.

❑ Dr.   ❑ Mr.   ❑ Mrs.   ❑ Ms.

Farm Business Name

Your Name (First/Middle/Last)

Business Address

Business City ____ State ____ Zip ____

Area Code ____ Business Phone ____ Area Code ____ FAX ____

E-mail Address

**What is your role on the farm?**
(Check One)
❑ Owner
❑ Owner/Oper.
❑ Operator
❑ Farm Mgr.
❑ Farmer/Dealer
❑ Other
_____
Describe

**FORM NUMBER**
030072290

## CROP INFORMATION FOR THE 2002 GROWING SEASON

Please fill in the planned acres and type of seed you are interested in for the 2002 growing season, so we can keep you updated on important product information. (This section is NOT a purchase commitment or contract.)

**TOTAL Crop Acres Planned for 2002 (All Varieties)**

| | acres |
|---|---|
| Soybeans | acres |
| Cotton | acres |
| Corn | acres |
| Rice | acres |
| Wheat | acres |
| Sugarbeets | acres |
| Canola | acres |

**TOTAL Planned Technology Acres for 2002**

| | acres |
|---|---|
| Roundup Ready® Soybeans | acres |
| Bollgard® Cotton | acres |
| Roundup Ready Cotton | acres |
| Bollgard with Roundup Ready Cotton | acres |
| YieldGard® Corn Borer Corn | acres |
| Roundup Ready Corn | acres |
| YieldGard Corn Borer with Roundup Ready Corn | acres |
| Roundup Ready Sugarbeets | acres |
| Roundup Ready Canola | acres |

## PRIMARY RETAILER/DEALER

Business Name

Area Code ____ Phone ____ City ____ State ____

## CROP CONSULTANT INFORMATION

Business Name

Contact Name (First/Middle/Last)

Mailing Address

City ____ State ____ Zip ____

Area Code ____ Business Phone ____ Area Code ____ FAX ____

## TECHNOLOGY CARDS

Upon completion and submission of this page, you will receive a Technology Card with your name and individual Technology ID number. If more than one individual will be purchasing under this Agreement, you may request additional cards. These cards should be presented when purchasing MONSANTO gene technologies and for redeeming benefits offered under Roundup Rewards.

❑ Please send me _____ additional cards.

## SIGNATURE & DATE REQUIRED

I acknowledge that I have read and understand the terms and conditions of this Agreement, including the Monsanto Technology Use Guide and the provisions related to the Disclaimer of Warranties and Exclusive Remedy. If I do not agree to these terms, I agree to return the unopened bags of seed to my dealer per my dealer's return policy. The undersigned acknowledges that he/she has the authority to bind the individuals and/or entities subject to this Agreement.

Must be signed by the customer listed above. ____ Date ____

**MONSANTO COPY**

2002 MONSANTO TECHNOLOGY/STEWARDSHIP AGREEMENT

*Limited Use License*

**YOU RECEIVE:**

**YOU UNDERSTAND:**

**YOU AGREE:**

**GENERAL CONDITIONS:**

**NOTICE REQUIREMENT:**

**LIMITED WARRANTY:**

**EXCLUSIVE LIMITED REMEDY:**

**BINDING ARBITRATION (FOR COTTON-RELATED CLAIMS MADE BY GROWER):**

**GOVERNING LAW/FORUM SELECTION (FOR ALL OTHER CLAIMS OR DISPUTES):**

PLEASE MAIL THE SIGNED ORIGINAL TECHNOLOGY AGREEMENT TO: Grower Licensing, Monsanto, 622 Emerson Road, Suite 150, St. Louis, MO 63141

# 2001 MONSANTO TECHNOLOGY AGREEMENT
*North Central/Plains*

## FARM INFORMATION

Please complete this section with your farm business information. The individuals and entities bound by the terms of this Agreement shall include the farm business listed below as well as all individuals or entities affiliated with, related to or having an ownership in such farm business. Your name must be filled in and must match the signature below.

☐ Dr.   ☐ Mr.   ☐ Mrs.   ☐ Ms.

Farm Business Name

Your Name (First/Middle/Last)

Business Address

Business City                     State        Zip

Area Code    Business Phone        Area Code    FAX

E-mail Address

**What is your role on the farm?**
*(Check One)*

☐ Owner
☐ Owner/Oper.
☐ Operator
☐ Farm Mgr.
☐ Farmer/Dealer
☐ Other

*Describe*

**FORM NUMBER**
**020213976**

## CROP INFORMATION FOR THE 2001 GROWING SEASON

Please fill in the planned acres and type of seed you are interested in for the 2001 growing season, so we can keep you updated on important product information. (This section is NOT a purchase commitment or contract.)

**TOTAL Crop Acres Planned for 2001**
*(All Varieties)*

| Crop | acres |
|------|-------|
| Soybeans | acres |
| Corn | acres |
| Rice | acres |
| Wheat | acres |
| Sugarbeets | acres |
| Canola | acres |

**TOTAL Planned Technology Acres for 2001**

| Technology | acres |
|------------|-------|
| Roundup Ready® Soybeans | acres |
| YieldGard® Insect Protected Corn | acres |
| Roundup Ready Corn | acres |
| YieldGard/Roundup Ready Corn | acres |
| Roundup Ready Sugarbeets | acres |
| Roundup Ready Canola | acres |

## PRIMARY AG CHEMICAL RETAILER

Business Name

Area Code    Phone        City        State

## CROP CONSULTANT INFORMATION

Business Name

Contact Name (First/Middle/Last)

Mailing Address

City                     State        Zip

Area Code    Business Phone        Area Code    FAX

### PLEASE SEND ME ADDITIONAL TECHNOLOGY CARDS

Upon completion and submission of this page, you will receive a Technology Card with your name and individual Technology ID number. If more than one individual will be purchasing under this Agreement, you may request additional cards. These cards should be presented when purchasing MONSANTO gene technologies and for redeeming benefits offered under Roundup Rewards.

☐ Please send me _____ additional cards.

### SIGNATURE & DATE REQUIRED

I acknowledge that I have read and understand the terms and conditions of this Agreement, including the Monsanto Technology Use Guide and the provisions related to the Disclaimer of Warranties and Exclusive Remedy. If you do not agree to these terms, you should return the unopened bags of seed to your dealer. The undersigned acknowledges that he/she has the authority to bind the individuals and/or entities subject to this Agreement.

Must be signed by the customer listed above.        Date

MONSANTO COPY

# 2001 MONSANTO TECHNOLOGY AGREEMENT

We appreciate your interest in Monsanto's advanced technologies and the exciting benefits they offer. This Monsanto Technology Agreement covers Roundup Ready® soybeans, YieldGard® corn, Roundup Ready® corn, Roundup Ready® corn with YieldGard®, Roundup Ready® sugarbeets and Roundup Ready® canola.

For your convenience, this Agreement remains in effect until either you or Monsanto choose to terminate the Agreement. Once you enroll, information regarding new and existing technologies and any new terms will be mailed to you each year. Continuing to use Monsanto's technologies after receipt of any new terms constitutes your agreement to be bound by the terms. Additionally, by completing this Agreement, you are automatically enrolled in the value package called Roundup Rewards℠, designed to bring increased benefits to you.

## YOU RECEIVE:
- Opportunity to purchase and plant seed containing these technologies under this Agreement.
- Opportunity to participate in Roundup Rewards for applicable crop(s).

## YOU UNDERSTAND:
- These Monsanto gene technologies are protected under U.S. patent law. Monsanto licenses the grower, under applicable patents* owned or licensed by Monsanto, to use these technologies under the conditions listed below. This Agreement only covers the United States, and does not authorize planting of seed in the United States which has been purchased in another country or planting of seed in another country which has been purchased in the United States.
- Grain/commodities harvested from Roundup Ready corn, Roundup Ready corn with YieldGard, Roundup Ready canola and Roundup Ready sugarbeets are approved for U.S. food and feed use, but not yet approved in certain export markets where approval is not likely to be received before the end of 2001. As a result, the grower is restricted from introducing such grain/commodities into channels of trade where the potential for export to such markets exists. The grower must channel such grain/commodities for feeding on farm, use in domestic food lots or other uses in domestic markets only. Growers should refer to Monsanto's Technology Use Guide for information on crop stewardship regarding the potential movement of pollen to neighboring crops*. *For assistance in locating domestic outlets for corn grain/commodities, view the ASTA web site at www.amseed.org or contact Monsanto at 1-800-768-6387.*
- The gene technologies referenced in this Agreement can only be used in locations where the products have been approved for use by all required governmental agencies.

## YOU AGREE:
- To use the seed containing Monsanto gene technologies solely for planting a single commercial crop.
- Not to supply any of this seed to any other person or entity for planting, and not to save any crop produced from this seed for replanting, or supply seed produced from this seed to anyone for replanting.
- Neither to use this seed nor to provide it to anyone else to use for crop breeding, research, generation of herbicide registration data or seed production.
- To use in Roundup Ready crops only a Roundup® brand or other herbicide which has been registered for use by and has a label for use in the particular Roundup Ready crop approved by all required governmental agencies. MONSANTO DOES NOT MAKE ANY REPRESENTATIONS, WARRANTIES OR RECOMMENDATIONS CONCERNING THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES WHICH ARE LABELED FOR USE IN ROUNDUP READY CROPS). MONSANTO SPECIFICALLY DISCLAIMS ALL RESPONSIBILITY FOR THE USE OF THESE PRODUCTS IN ROUNDUP READY CROPS). ALL QUESTIONS AND COMPLAINTS ARISING FROM THE USE OF PRODUCTS MANUFACTURED OR MARKETED BY OTHER COMPANIES SHOULD BE DIRECTED TO THAT COMPANY.
- To purchase seed containing these gene technologies only from a seed company with required technology license(s) from Monsanto and to pay the applicable Technology Fee for the particular product being purchased.
- To implement an Insect Resistance Management program as specified in the applicable YieldGard corn sections of the Technology Use Guide and to comply with Insect Resistance Management programs and research.*
- To channel grain produced to domestic use as necessary to prevent movement to markets where the grain is not yet approved for import.

## GENERAL CONDITIONS:
The grower's rights may not be transferred to anyone else without written consent of Monsanto. If the grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights.

If the grower violates the terms of this Agreement, in addition to other remedies available to the technology provider(s), the grower's rights under this Agreement will terminate immediately and the grower forfeits any right to obtain an Agreement in the future and that violation may result in infringement of one or more of the patents that relate to that product. The grower agrees that the technology provider(s) are entitled to recover their full amount of legal fees and other costs of enforcing this Agreement. If the Agreement is terminated, the grower will no longer have a right under this Agreement to purchase seed aiming these technologies, however, any obligations that arose before termination will continue in effect. In the event that the grower saves, supplies, sells or acquires seed for planting in violation of this agreement and license restriction, in addition to all remedies for patent infringement and/or other remedies available to the technology provider(s), the grower agrees that damages will include a claim for liquidated damages that shall be equal to the gross revenue from the seed for grain production (calculated based upon the Chicago Board of Trade price for the applicable grain/ commodity as of August 1st of the year in question and the USDA stated U.S. average yield for such crop for the year in question). Grower consents to Monsanto review of Farm Service Agency crop reporting information including Forms 578 and corresponding aerial photographs and dealer/retailer invoices for seed and chemical transactions.

Grower acknowledges that grower has received a copy of Monsanto's Technology Use Guide and has read and agrees to abide by and be bound by the terms of this Guide.

Monsanto retains ownership of the licensed genes (for example the Roundup Ready gene), and the gene technologies, and the grower receives the right to use the licensed genes and technology as specified in this Agreement.

Grower is deemed to have accepted the terms of the following LIMIT OF WARRANTY AND LIABILITY upon signing this Agreement and/or opening a bag of seed containing Monsanto gene technology, which terms may not be varied by any oral or written agreement.

If grower does not agree to be bound by the following conditions of purchase or use, he/she should return the unopened bags to his/her seed dealer.

## NOTICE REQUIREMENT:
As a condition precedent to the grower, or any other person with an interest in grower's crop, asserting any controversy, claim, action, or dispute against Monsanto and/or any seller of seed containing Monsanto's gene technologies regarding performance or non-performance of the gene technologies or the seed in which it is contained, the grower must provide prompt and timely notice to Monsanto (regarding performance or non-performance of the gene technologies) and/or the seller of any seed (regarding performance or non-performance of the seed) within sufficient time to allow an in-field inspection of the crop(s) about which any controversy, claim, action, or dispute is being asserted. For purposes of this Agreement, such notice shall be insufficient if it is provided more than 15 days after the issue(s) regarding performance or non-performance of the gene technology and/or the seed in which it is contained is first observed. The notice shall include a statement setting forth the nature of the claim, and the technology and/or seed variety in question.

Monsanto warrants that the Monsanto gene technology licensed hereunder will perform as set forth in the Monsanto Technology Use Guide when used in accordance with directions. This warranty applies only to Monsanto gene technology contained in planting seed that has been purchased from a seed company licensed by Monsanto, or such seed company's authorized dealers or distributors, and obtained from the original sealed bag. EXCEPT FOR THE EXPRESS WARRANTIES SET FORTH ABOVE, MONSANTO MAKES NO OTHER WARRANTIES OF ANY KIND, AND DISCLAIMS ALL OTHER WARRANTIES, WHETHER ORAL OR WRITTEN, EXPRESS OR IMPLIED. THERE IS NO IMPLIED WARRANTY OF FITNESS FOR PARTICULAR PURPOSE OR MERCHANTABILITY.

THE EXCLUSIVE REMEDY OF THE GROWER AND THE LIMIT OF THE LIABILITY OF MONSANTO OR ANY SELLER FOR ANY AND ALL LOSSES, INJURY OR DAMAGES RESULTING FROM THE USE OR HANDLING OF A PRODUCT CONTAINING MONSANTO'S GENE TECHNOLOGY (INCLUDING CLAIMS BASED IN CONTRACT, NEGLIGENCE, PRODUCT LIABILITY, STRICT LIABILITY, OTHER TORT OR OTHERWISE) SHALL BE THE PRICE PAID BY THE GROWER FOR THE QUANTITY OF SUCH PRODUCT INVOLVED, OR, AT THE ELECTION OF MONSANTO OR ANY SELLER, THE REPLACEMENT OF SUCH QUANTITY, OR IF NOT ACQUIRED BY PURCHASE, REPLACEMENT OF SUCH QUANTITY. IN NO EVENT SHALL MONSANTO OR ANY SELLER BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, SPECIAL OR PUNITIVE DAMAGES.

THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF MISSOURI AND THE UNITED STATES (OTHER THAN THE CHOICE OF LAW RULES). THE PARTIES CONSENT TO THE EXCLUSIVE JURISDICTION AND VENUE OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, STATE OF MISSOURI, FOR ALL DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THE USE OF THE SEED OR THE TECHNOLOGIES AS PROVIDED THROUGH THIS AGREEMENT OR ITS RELATED PARTS.

If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect.

Thank you for choosing our advanced technologies. We look forward to working with you in the future.

If you have any questions regarding the technologies from Monsanto, please call the Monsanto Customer Relations Center at: 1-800-ROUNDUP.

PLEASE MAIL THE SIGNED 2001 MONSANTO TECHNOLOGY AGREEMENT TO: Monsanto Grower Licensing, P.O. Box 3469, Monticello, MN 55565

*Refer to the applicable section of the Monsanto Technology Use Guide, which is part of this Agreement, for specifics relating to these terms. If you have not received a copy of the Monsanto Technology Use Guide, contact Monsanto at 1-800-768-6387.

ALWAYS READ AND FOLLOW PESTICIDE LABEL DIRECTIONS. Roundup® brand herbicides will kill crops that do not contain the Roundup Ready® gene.
Roundup®, Roundup Ready®, YieldGard®, YieldGard logo and the Corn Symbol are trademarks of Monsanto Company. © 2000 Monsanto Company. MON-01-01-2001

## 2000 MONSANTO TECHNOLOGY AGREEMENT

### FARM INFORMATION

Please complete this section with your farm business information. Your name must be filled in and must match the signature below.

☐ Dr.    ☐ Mr.    ☐ Mrs.    ☐ Ms.

Farm Business Name

Your Name (First/Middle/Last)

**What is your role on the farm?** *(Check One)*

☐ Owner
☐ Owner/Oper.
☐ Operator
☐ Farm Mgr.
☐ Farmer/Dealer
☐ Other

Business Address

Business City                    State        Zip

*Describe*

Area Code    Business Phone        Area Code    FAX

**FORM NUMBER**
**010129905**

E-mail Address

### CROP INFORMATION FOR THE 2000 GROWING SEASON

Please fill in the planned acres and type of seed you are interested in for the 2000 growing season, so we can keep you updated on important product information. (This section is NOT a purchase commitment or contract.)

**TOTAL Crop Acres Planned for 2000**
*(All Varieties)*

| Crop | acres |
|------|-------|
| Soybeans | ___ acres |
| Cotton | ___ acres |
| Corn | ___ acres |
| Rice | ___ acres |
| Wheat | ___ acres |
| Sugarbeets | ___ acres |
| C | ___ acres |

**TOTAL Planned Technology Acres for 2000**

| Technology | acres |
|-----------|-------|
| Roundup Ready® Soybeans | ___ acres |
| Bollgard® Cotton | ___ acres |
| Roundup Ready Cotton | ___ acres |
| Bollgard with Roundup Ready Cotton | ___ acres |
| YieldGard® Insect Protected Corn | ___ acres |
| Roundup Ready Corn | ___ acres |
| Roundup Ready Corn with YieldGard | ___ acres |
| Roundup Ready Sugarbeets | ___ acres |
| Roundup Ready Canola | ___ acres |

### PRIMARY AG CHEMICAL RETAILER

Business Name

Area Code    Phone        City            State

### CROP CONSULTANT INFORMATION

Business Name

Contact Name (First/Middle/Last)

Mailing Address

City                    State        Zip

Area Code    Business Phone        Area Code    FAX

### PLEASE SEND ME ADDITIONAL TECHNOLOGY CARDS

Upon completion and submission of this page, you will be mailed a Technology Card with your name and individual Technology ID number. If more than one individual will be purchasing under this Agreement, you may request additional cards. These cards should be presented when purchasing MONSANTO gene technologies and for redeeming benefits offered under the Technology Value Package.

☐ Please send me _____ additional cards.

### SIGNATURE & DATE REQUIRED

I acknowledge that I have read and understand the terms and conditions of this Agreement and that I agree to them.

Must be signed by the customer listed above.        Date

MONSANTO COPY



# 2000 MONSANTO TECHNOLOGY AGREEMENT

### *Effective August 1, 1999 through August 31, 2000*

We appreciate your interest in Monsanto's advanced technologies and the exciting benefits they offer. This Monsanto Technology Agreement covers Roundup Re soybeans, YieldGard® corn, Roundup Ready® corn, Roundup Ready® corn with YieldGard, Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® Roundup Ready® sugarbeets and Roundup Ready® canola.

For your convenience, this Agreement remains in effect until either you or Monsanto choose to terminate the Agreement. Once you enroll, informati regarding new and existing technologies and any new terms will be mailed to you each year. Additionally, by completing this Agreement, you are autom enrolled in the Technology Value Package™, designed to bring increased benefits to you.

**You Receive:**
- Opportunity to purchase and plant seed containing these technologies under this Agreement.
- Opportunity to participate in the Technology Value Package for applicable crop(s).

**You Understand:**
- These Monsanto gene technologies are protected under U.S. patent law. Monsanto licenses the Grower, under applicable patents [1] owned or licens by Monsanto, to use these technologies under the conditions listed below. This Agreement only covers the United States, and does not authorize planting of seed in the United States which has been purchased in another country or planting of seed in another country which has been purchase in the United States.
- Regulatory approval of grain/commodities harvested from Roundup Ready corn, Roundup Ready corn with YieldGard, Roundup Ready canola and Roundup R sugarbeets is pending in certain export markets, and may not be received before the end of 2000. As a result, the Grower may be restricted from introducing su grain/commodities into channels of trade where the potential for export to such markets exists. The Grower must channel such grain/commodities for feeding o farm, use in domestic feed lots or other uses in domestic markets only. Growers should refer to Monsanto's Technology Use Guide for information on crop stewan regarding the potential movement of pollen to neighboring crops. *For assistance in locating domestic outlets for corn grain/commodities, view the ASTA we at www.amseed.org or contact Monsanto at 1-800-768-6387.*
- The gene technologies referenced in this Agreement can only be used in locations where the products have been approved for use by all required governmenta agencies.

**You Agree:**
- To use the seed containing Monsanto gene technologies solely for planting a single commercial crop.
- To not supply any of this seed to any other person or entity for planting, and to not save any crop produced from this seed for replanting, or supply seed produce from this seed to anyone for replanting.
- To not use this seed or provide it to anyone for crop breeding, research, generation of herbicide registration data or seed production.
- Use of any selective herbicide labeled for the same crop without the Roundup Ready® gene is not restricted by this Agreement. If you use a herbicide over the to of a Roundup Ready® crop that depends on the Roundup Ready gene to be selective, you agree to use only a Roundup Ultra® brand herbicide or only another herbicide brand authorized by Monsanto as specified in Monsanto's Technology Use Guide. MONSANTO DOES NOT WARRANT THE CROP SAFETY OR PERFORMA OF HERBICIDES OTHER THAN MONSANTO BRANDS. [*]
- To purchase seed containing these gene technologies only from a seed company with required technology license(s) from Monsanto and to pay the applicable Technology Fee for the particular product being purchased.
- To implement an Insect Resistance Management program as specified in the applicable Bollgard cotton and YieldGard corn sections of the Technology Use Guide and to cooperate with Insect Resistance Management programs and research. [*]

**General Conditions:**

The Grower's rights may not be transferred to anyone else without written consent of Monsanto. If the Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights.

If the Grower violates the terms of this Agreement, in addition to other remedies available to the technology provider(s), the Grower's rights under this Agreement wi terminate immediately and the Grower forfeits any right to obtain an Agreement in the future and that violation may result in infringement of one or more of the patents th relate to that product. The Grower agrees that the technology provider(s) are entitled to recover their full amount of legal fees and other costs of enforcing this Agreement. If the Agreement is terminated, the Grower will no longer have a right under this Agreement to purchase seed containing these technologies, however, any obligations tha arose before termination will continue in effect. In the event that the Grower saves, supplies, sells or acquires seed for planting in violation of this Agreement and license restriction, in addition to other remedies available to the technology provider(s), the Grower agrees that damages will include a claim for liquidated damages which will be based on 120 times the applicable Technology Fee. Grower consents to Monsanto review of Farm Service Agency crop reporting information and dealer/retailer invoices for seed and chemical transactions.

Grower acknowledges that Grower has received a copy of Monsanto's Technology Use Guide and has read and agrees to abide by and be bound by the terms of this Guide. Grower agrees that use of seed containing Monsanto gene technologies is subject to the LIMIT OF WARRANTY AND LIABILITY and all other provisions contained in Monsanto's Technology Use Guide which is incorporated by this reference as part of this Monsanto Technology Agreement. [*]

Monsanto retains ownership of the licensed genes (for example the Roundup Ready gene), and the gene technologies, and the Grower receives the right to use the licensed genes and technology as specified in this Agreement.

THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF MISSOURI AND THE UNITED STATES (OTHER THAN THE CHOICE OF LAW RULES). THE PARTIES CONSEN THE EXCLUSIVE JURISDICTION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF S LOUIS, STATE OF MISSOURI, FOR ALL DISPUTES ARISING OUT OF OR CONNECTED IN ANY WAY WITH THE USE OF THE SEED OR THE TECHNOLOGIES AS PROVIDED THROUGH THIS AGREEMENT OR ITS RELATED PARTS.

Thank you for choosing our advanced technologies. We look forward to working with you in the future.

If you have any questions regarding the technologies from Monsanto, please call the Monsanto Customer Relations Center at: 1-800-ROUNDUP.

**PLEASE MAIL THE SIGNED 2000 MONSANTO TECHNOLOGY AGREEMENT TO:** Monsanto, P.O. Box 4063, Monticello, MN 55565-9986

---

[*] *Refer to the applicable section of the Monsanto Technology Guide, which is part of this Agreement, for specifics relating to these terms.*

[1] The licensed U.S. patents include: for YieldGard® corn - 5,484,956; 5,500,365; 5,352,605; 5,538,877; 5,538,880; 5,359,142; 5,322,938; 5,164,316; 5,196,525; 5,424,412; and 5,424,200; for Roundup Ready® corn - 5,554,798, 4,940,835; 4,535,060; 5,538,877; 5,538,880; 5,094,945; 5,188,642; 5,717,084; and 5,728,925; for Roundup Ready® soybeans - 4,940,835; 5,188,642; 5,352,605; 5,633,435; 5,530,196; 5,717,084; 5,728,925; and 5,804,4 for Roundup Ready® cotton - 5,633,435; 5,352,605; 5,188,642; 4,940,835; 5,717,084; 5,728,925; for Bollgard® cotton - 5,500,365; 5,424,200; 5,359,142; 5,322,938; 5,196,525; and 5,164,316; for Bollgard® with Roundup Ready® cotton - 5,633,435; 5,500,365; 5,424,200; 5,359,142; 5,352,605; 5,322,938; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; and 5,804,425; for Roundup Ready® canola - 5,378,619; 5,463,175; 5,776,760; 5,627,061; 5,633,435; 4,940,835; 5,188,642; 5,717,084; 5,728,925; and 5,804,425; and for Roundup Ready® sugarbeets - 5,378,619; 5,463,175; 5,776,760; 5,627,061; 5,633,435; 5,164,3 5,196,525; 5,322,938; 5,359,142; 5,424,200; 5,352,605; 5,530,196; 4,940,835; 5,188,642; 5,717,084; 5,778,925; and 5,804,425.

ALWAYS READ AND FOLLOW LABEL DIRECTIONS. Roundup Ultra® will kill crops that do not contain the Roundup Ready® gene.
Roundup®, Roundup Ready®, Bollgard®, YieldGard®, TVP™, and Roundup Ultra® are trademarks of Monsanto Company. © 1999 Monsanto Company. MAG-99-69  2000

# 1999 MONSANTO TECHNOLOGY AGREEMENT / CUSTOMER

## FARM INFORMATION

Please complete this section with your farm business information. Your name must be filled in and must match the signature below.

☐ Dr.   ☐ Mr.   ☐ Mrs.   ☐ Ms.

Your Name (First/Middle/Last)

Farm Business Name

Mailing Address

City                                State        Zip

Area Code   Business Phone          Area Code   FAX

E-mail Address

☐ Check here if you are a Farm Seed Dealer.

What is your role on the farm? (Check One)

☐ Owner
☐ Owner/Oper.
☐ Operator
☐ Farm Mgr.
☐ Other

Describe

**900643307**

## CROP INFORMATION FOR THE 1999 GROWING SEASON

Please let us know your planned acres and type of seed you are interested in for the 1999 growing season. This section is NOT a purchase commitment or contract.

**TOTAL Crop Acres Planned for 1999** (All Varieties)

| | |
|---|---|
| Soybeans | acres |
| Cotton | acres |
| Corn | acres |
| Rice | acres |
| Wheat | acres |
| Sugarbeets | acres |
| Canola | acres |

**TOTAL Planned Technology Acres for 1999**

| | |
|---|---|
| Roundup Ready® Soybeans | acres |
| Bollgard® Cotton | acres |
| Roundup Ready Cotton | acres |
| Bollgard with Roundup Ready Cotton | acres |
| YieldGard® Insect Protected Corn | acres |
| Roundup Ready Corn | acres |
| Roundup Ready Sugarbeets | acres |
| Roundup Ready Canola | acres |

## MONSANTO TECHNOLOGY CENTER/PRIMARY AG CHEMICAL RETAILER

Business Name

Area Code   Phone              City                        State

## CROP CONSULTANT INFORMATION

Business Name

Contact Name

Mailing Address

City                                State        Zip

Area Code   Business Phone          Area Code   FAX

## SIGNATURE & DATE REQUIRED

I acknowledge that I have read and understand the terms and conditions of this Agreement and that I agree to them.

Must be signed by the customer listed above.          Date

## TECHNOLOGY CARDS

Upon completion and submission of this page, you will be mailed a Technology Card with your name and individual Technology ID number. This card should be presented when purchasing additional MONSANTO gene technologies, and for redeeming benefits offered under the Technology Value Package.

☐ Please send me _____ additional cards.

MONSANTO COPY



# 1999 MONSANTO TECHNOLOGY AGREEMENT

### *Effective August 1, 1998 through July 31, 1999*

We appreciate your interest in Monsanto's advanced technologies and the exciting benefits they offer. This Monsanto Technology Agreement covers Roundup Ready® soybeans, YieldGard® corn, Roundup Ready® corn, Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Roundup Ready® sugarbeets* and Roundup Ready® canola*.

For your convenience, this Agreement remains in effect until either you or Monsanto choose to terminate the Agreement. Once you enroll, information regarding new and existing technologies and any new terms will be mailed to you each year. Additionally, by completing this Agreement, you are automatically enrolled in the Technology Value Package, designed to bring increased benefits to you.

**You Receive:**
- Opportunity to purchase and plant seed containing these technologies under this Agreement.
- Opportunity to participate in the Technology Value Package for applicable crop(s).

**You Understand:**
- These Monsanto gene technologies are protected under U.S. patent law. Monsanto licenses the Grower under applicable patents [1] owned or licensed by Monsanto to use these technologies under the conditions listed below. This Agreement only covers the United States, and does not authorize planting of seed in the United States which has been purchased in another country or planting of seed in another country which has been purchased in the United States.
- Regulatory approval of grain harvested from seed of Roundup Ready corn is pending in certain export markets and may not be received before the end of 1999. As a result, the Grower may be restricted from introducing the grain into channels of trade where the potential for export to those markets exists. In such cases, the Grower must be prepared to feed the grain on-farm, or sell it for use in domestic markets only.
- The gene technologies referenced in this Agreement can only be used in locations where the products have been approved for use by all required governmental agencies.

**You Agree:**
- To use the seed containing Monsanto gene technologies solely for planting a single commercial crop.
- To not supply any of this seed to any other person or entity for planting, and not to save any crop produced from this seed for replanting, or supply saved seed to anyone for replanting.
- To not use this seed or provide it to anyone for crop breeding, research, generation of herbicide registration data or seed production.
- If you use a herbicide over the top of a Roundup Ready® crop that is not selective to the same crop without the Roundup Ready® gene, you agree to use only a Roundup® brand herbicide or only another herbicide brand authorized by Monsanto as specified in Monsanto's Technology Use Guide. Use of any selective herbicide labeled for the same crop without the Roundup Ready gene is not restricted by this agreement. MONSANTO DOES NOT WARRANT THE CROP SAFETY OR PERFORMANCE OF HERBICIDES OTHER THAN MONSANTO BRANDS.**
- To purchase seed containing these gene technologies only from a seed company licensed under their required technologies from Monsanto and to pay the applicable Technology Fee for the particular product being purchased.
- To implement an Insect Resistance Management program specified in the applicable Bollgard cotton and YieldGard corn sections of the Technology Use Guide and to cooperate with Insect Resistance Management programs and research.**

## General Conditions:

The Grower's rights may not be transferred to anyone else without written consent of Monsanto. If the Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights.

Grower agrees that its use of seed containing Monsanto gene technologies is subject to the provisions contained in Monsanto's Technology Use Guide, including the provisions related to LIMIT OF WARRANTY AND LIABILITY.**

If the Grower violates the terms of this Agreement, in addition to other remedies available to the technology provider(s), the Grower's rights under this Agreement will terminate immediately and the Grower forfeits any right to obtain an Agreement in the future and that violation may result in infringement of one or more of the patents that relate to that product. The Grower agrees that the technology provider(s) are entitled to recover their full amount of legal fees and other costs of enforcing this Agreement. If the Agreement is terminated, the Grower will no longer have a right under this Agreement to purchase seed containing these technologies, however, any obligations that arose before termination will continue in effect. In the event that the Grower saves, supplies, sells or acquires seed for replant in violation of this Agreement and license restriction, in addition to other remedies available to the technology provider(s), the Grower agrees that damages will include a claim for liquidated damages which will be based on 120 times the applicable Technology Fee.

Monsanto retains ownership of the licensed genes (for example the Roundup Ready gene), and the gene technologies, and the Grower receives the right to use the licensed genes and technology as specified in this Agreement.

THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF MISSOURI AND THE UNITED STATES (OTHER THAN THE CHOICE OF LAW RULES). THE PARTIES CONSENT TO THE EXCLUSIVE JURISDICTION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, STATE OF MISSOURI, FOR ALL DISPUTES ARISING UNDER THIS AGREEMENT.

Thank you for choosing our advanced technologies. We look forward to working with you in the future.

If you have any questions regarding the technologies from Monsanto, please call the Monsanto Customer Relations Center at: 1-800-ROUNDUP or 1-800-523-2333 (Southern States Only).

**PLEASE MAIL THE SIGNED 1999 MONSANTO TECHNOLOGY AGREEMENT TO:** Monsanto, P.O. Box 4063, Monticello, MN 55565-9986.

* The licenses for Roundup Ready sugarbeets and Roundup Ready canola are effective only after those crops have been approved for sale by the required governmental agencies.
** Refer to the applicable section of the Monsanto Technology Use Guide, which is part of this Agreement, for specifics relating to those terms.

[1] The licensed U.S. patents include: for YieldGard® corn - 5,484,956; 5,500,365; 5,352,605; 5,538,877; 5,538,880; 5,359,142; 5,322,938; 5,164,316; 5,196,525; 5,424,412; and 5,474,200; for Roundup Ready® corn - 5,554,768; 4,940,835; 4,535,060; 5,538,877; 5,538,880; 5,094,945; 5,188,642; 5,717,084; and 5,728,925; for Roundup Ready® soybeans - 4,940,835; 5,188,642; 5,352,605; 5,633,435; 5,530,196; 5,717,084; 5,728,925; and 5,804,425; for Roundup Ready® cotton - 5,633,435; 5,530,196; 5,188,642; 4,940,835; 5,717,084; 5,728,925; and 5,804,425; for Bollgard® cotton - 5,500,365; 5,424,200; 5,359,142; 5,352,605; 5,322,938; 5,196,525; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; and 5,804,425; for Bollgard® with Roundup Ready® cotton - 5,633,435; 5,500,365; 5,424,200; 5,359,142; 5,352,605; 5,322,938; 5,196,525; 5,188,642; 5,164,316; 4,940,835; 5,717,084; 5,728,925; and 5,804,425; for Roundup Ready® canola - 5,378,619; 5,463,175; 5,776,760; 5,627,061; 5,633,435; 4,940,835; 5,188,642; 5,717,084; 5,728,925; and 5,804,425; and for Roundup Ready® sugarbeet - 5,378,619; 5,463,175; 5,776,760; 5,627,061; 5,633,435; 5,164,316; 5,196,525; 5,322,938; 5,359,142; 5,424,200; 5,352,605; 5,530,196; 4,940,835; 5,188,642; 5,717,084; 5,728,925; and 5,804,425.

ALWAYS READ AND FOLLOW LABEL DIRECTIONS. Roundup Ultra® will kill crops that do not contain the Roundup Ready® gene.
Roundup®, Roundup Ready®, Bollgard®, YieldGard®, TVP™, and Roundup Ultra® are trademarks of Monsanto Company. © 1998 Monsanto Company. 004-98-138 1999

4102808 R

# MONSANTO TECHNOLOGY AGREEMENT

## FARM INFORMATION

Please complete this section with your farm business information. Your name must be filled in and must match the signature below. If you have questions, please call Monsanto at 1-800-523-2333.

☐ Dr.   ☐ Mr.   ☐ Mrs.   ☐ Ms.

**What is your role on the farm?** (Check One)
☐ Owner
☐ Owner/Oper.
☐ Operator
☐ Farm Mgr.
☐ Other: _____

Your Name (First/Middle/Last)

Farm Business Name

Mailing Address

City                                   State    Zip

Area Code    Business Phone            Area Code   FAX

E-Mail Address

## CROP INFORMATION FOR THE 1998 GROWING SEASON

Please check (x) each type of seed you are interested in for the 1998 growing season, and fill in the planned acres. This section is NOT a purchase commitment or contract.

☐ Roundup Ready® Soybeans _____ acres
☐ Bollgard® Cotton _____ acres
☐ Roundup Ready Cotton _____ acres
☐ Bollgard with Roundup Ready Cotton _____ acres
☐ YieldGard® Insect Protected Corn _____ acres
☐ Roundup Ready Corn _____ acres

**TOTAL Crop Acres Planned for 1998** (All Varieties)

Soybeans _____ acres        ConTill Acres _____
Corn _____ acres            _____
Cotton _____ acres          _____

## MONSANTO TECHNOLOGY CENTER PRIMARY AG CHEMICAL RETAILER

Business Name

Area Code    Phone            City                              State

## CROP CONSULTANT INFORMATION

Business Name

Contact Name

Mailing Address

City                        State    Zip

Area Code    Business Phone           Area Code   FAX

## SIGNATURE & DATE REQUIRED

I acknowledge that I have read and understand the terms and conditions of this Agreement and that I agree to them.

Signature must match customer name listed above.    Date

## TECHNOLOGY CARDS

Upon completion and submission of this page, you will be mailed a Technology Card with your name and individual Technology ID number. This card should be presented when purchasing additional MONSANTO gene technologies, and for redeeming benefits offered under the Technology Value Package.

☐ Please send me _____ additional cards.

MONSANTO COPY

## MONSANTO TECHNOLOGY AGREEMENT

We appreciate your interest in Monsanto's advanced technologies and the exciting benefits they offer. This Monsanto Technology Agreement covers Roundup Ready® cotton, Bollgard® cotton, Bollgard® with Roundup Ready® cotton, Roundup Ready® soybeans, YieldGard® corn and Roundup Ready® corn.

For your convenience, this Agreement remains in effect until either you or Monsanto choose to terminate the Agreement. Once you enroll, information regarding new and existing technologies and any new terms will be mailed to you each year. Additionally, by completing this Agreement, you are automatically enrolled in the Technology Value Package™, designed to bring increased benefits to you.

### You Receive:

- Opportunity to purchase and plant seed containing these technologies under this long-term Agreement.
- Opportunity to participate in the Technology Value Package for applicable crop(s).

### You Understand:

- These Monsanto gene technologies are protected under U.S. patent law. Monsanto licenses the Grower under applicable patents¹ owned or licensed by Monsanto to use these technologies under the conditions listed below.
- Regulatory approval of grain harvested from seed of Roundup Ready corn is pending in certain export markets and may not be received before the 1998 harvest. As a result, the Grower may be restricted from introducing the grain into channels of trade where the potential for export exists. In such cases, the Grower should be prepared to feed the grain on-farm, or sell it for use in domestic markets only.
- YieldGard and Bollgard gene technologies can only be used in locations where the products have been approved for use by all required governmental agencies.

### You Agree:

- To use the seed containing Monsanto gene technologies for planting a commercial crop only in a single season.
- To not supply any of this seed to any other person or entity for planting, and to not save any crop produced from this seed for replanting, or supply saved seed to anyone for replanting.
- To not use this seed or provide it to anyone for crop breeding, research, generation of herbicide registration data or seed production.
- If a herbicide containing the same active ingredient as Roundup Ultra™ herbicide (or one with a similar mode of action) is used over the top of Roundup Ready crops, you agree to use only Roundup® branded herbicide.
- To pay the applicable Technology Fee for the particular product being purchased.
- To implement an Insect Resistance Management Program specified in the applicable Bollgard cotton and YieldGard corn sections of the Product Use Guide and to cooperate with Insect Resistance Management Programs and research.*

### COTTON ONLY

- To provide, upon request, the locations of all fields planted with Bollgard cotton and to cooperate fully with any inspections.
- To allow Monsanto to inspect all of your fields planted with Bollgard cotton to ensure that you have followed an approved Insect Resistance Management Program. All inspections will be performed at a reasonable time arranged with you in their presence, unless you do not wish to be present. Refer to the Bollgard cotton section of the Product Use Guide for specific instructions regarding refuge requirements.*
- If Monsanto reasonably believes that you have planted saved cottonseed containing a Monsanto genetic trait, Monsanto will request invoices or otherwise confirm that fields in question have been planted with newly purchased seed. If this information is not provided within 30 days, Monsanto may inspect and test all of your cotton fields to determine if saved cottonseed has been replanted. Any inspections will be performed at a reasonable time arranged with you in their presence, unless you do not wish to be present.
- Any technology fees not paid by the net due date will be assessed a late fee of 18% per year (not to exceed the maximum rate allowed by law) on the unpaid principal balance.

### YieldGard ONLY

- See the YieldGard corn section of the Product Use Guide for complete details of the required Insect Resistance Management Program.*

### General Conditions:

The Grower's rights may not be transferred to anyone else without written consent of Monsanto. If the Grower's rights are transferred with Monsanto's consent or by operation of law, this Agreement is binding on the person or entity receiving the transferred rights.

If the Grower violates the terms of this Agreement, in addition to other remedies available to the technology provider(s), the Grower's rights under this Agreement will terminate immediately and the Grower forfeits any right to obtain an Agreement in the future. The Grower agrees that the technology provider(s) are entitled to recover their full amount of legal fees and other costs of enforcing this Agreement. If the Agreement is terminated, the Grower will no longer have a right under this Agreement to purchase seed containing these technologies; however, any obligations that arose before termination will continue in effect. In the event that the Grower saves, supplies, sells or acquires seed for replant in violation of this Agreement and license restriction, in addition to other remedies available to the technology provider(s), the Grower agrees that damages will include a claim for liquidated damages, which will be based on 120 times the applicable Technology Fee.

*Refer to the applicable section of the Product Use Guide, which is part of this Agreement, for specifics relating to these terms.

THIS AGREEMENT IS GOVERNED BY THE LAWS OF THE STATE OF MISSOURI AND THE UNITED STATES (OTHER THAN THE CHOICE OF LAW RULES). THE PARTIES CONSENT TO THE EXCLUSIVE JURISDICTION OF THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION, AND THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS, STATE OF MISSOURI, FOR ALL DISPUTES ARISING UNDER THIS AGREEMENT.

¹The licensed U.S. patents include: for YieldGard® corn – 5,484,956; 5,500,365; 5,352,605; 5,538,877; 5,538,880; 5,359,142; 5,322,938; 5,164,316; 5,196,525; 5,424,412 and 5,424,200; for Roundup Ready® corn – 5,633,448; 5,554,798; 4,535,060; 4,940,835; 5,538,877; 5,538,880; 5,510,471; 5,094,945 and 5,188,642; for Roundup Ready® soybeans – 4,535,060; 4,940,835; 5,188,642; 5,352,605; 5,633,435 and 5,530,196; for Roundup Ready® cotton – 5,633,435; 5,352,605; 5,188,642; 4,940,835 and 4,535,060; for Bollgard® cotton – 5,500,365; 5,424,200; 5,359,142; 5,352,605; 5,322,938; 5,196,525 and 5,164,316; and for Bollgard® with Roundup Ready® cotton – 5,633,435; 5,500,365; 5,424,200; 5,359,142; 5,352,605; 5,322,938; 5,196,525; 5,188,642; 5,164,316; 4,940,835 and 4,535,060.

**Thank you for choosing our advanced technologies. We look forward to working with you in the future.**
**If you have any questions regarding the technologies from Monsanto,**
**please call the Monsanto Customer Relations Center at:**

# 1-800-523-2333

ALWAYS READ AND FOLLOW LABEL DIRECTIONS. Roundup®, Roundup Ultra™, Roundup Ready®, Bollgard®, YieldGard®, and Technology Value Package™ are trademarks of Monsanto Company.
©Monsanto Company 1997  10/97  1998

# EXHIBIT D

# 2001 MONSANTO TECHNOLOGY AGREEMENT

If the information below is not correct, please cross out and clearly print your correct information in the space provided to the right.

## FARM INFORMATION

Please complete this section with your farm business information. The individuals and entities bound by the terms of this Agreement shall include the farm business listed below as well as all individuals or entities affiliated with, related to or having an ownership in such farm business. Your name must be filled in and must match the signature below.

B873678
Dance Farms
Mr Clifford F Dance Jr
201 S Central Ave
Winona
MS 38967-2607
662-283-4859

☐ Dr    ☐ Mr.    ☐ Mrs    ☐ Ms

What is your role on the farm?
*(Check One)*

Farm Business Name

☐ Owner
☐ Owner/Oper.
☐ Operator
☐ Farm Mgr.
☐ Farmer/Dealer
☐ Other

Your Name (First/Middle/Last)

Business Address

Business City        State    Zip

*Describe*

( )                ( )
Business Phone        Fax

E-Mail Address

**FORM NUMBER**
### 020497792

## PRIMARY AG CHEMICAL RETAILER

FARMERS SUPPLY CO-OP
PO BOX ~~1009~~ 7009
GREENWOOD
MS 38930
662-453-6341

Business Name

Business City        State    Zip

( )                ( )
Business Phone        Fax

Retailer Use Only

☑ Provided Signee with a Monsanto Technology Use Guide

*Retailer's Signature*

☐ No Signature Because:
☐ Deceased
☐ Would Not Sign
☐ No Longer Farming
☐ Other

*Describe*

## PRIMARY SEED DEALER

Business Name

Business City        State    Zip

( )                ( )
Business Phone        Fax

## CROP CONSULTANT INFORMATION

Business Name

Contact Name (First/Middle/Last)

State    Zip

( )
Fax

L0310600

## PLEASE SEND ME ADDITIONAL TECHNOLOGY CARDS

Upon completion and submission of this page, you will receive a Technology Card with your name and individual Technology ID number. If more than one individual will be purchasing under this Agreement, you may request additional cards. These cards should be presented when purchasing MONSANTO gene technologies and for redeeming benefits offered under Roundup Rewards

☐ Please send me _____ additional cards.

## SIGNATURE & DATE REQUIRED

I acknowledge that I have read and understand the terms and conditions of this Agreement, including the Monsanto Technology Use Guide and the provisions related to the Disclaimer of Warranties and Exclusive Remedy. If you do not agree to these terms, you should return the unopened bags of seed to your dealer. The undersigned acknowledges that he/she has the authority to bind the individuals and/or entities subject to this Agreement.

*Clifford F Dance Jr*        3-30-01

Must be signed by the customer listed above.        Date

**MONSANTO COPY**

04/17/98  13:42    ☎ 6014551619    TRI STATE DELTA    P.04

# MONSANTO TECHNOLOGY AGREEMENT

## FARM INFORMATION

Please complete this section with your farm business information. Your name must be listed in and must match the signature below. If you have questions, please call Monsanto at 1-800-ROUNDUP.

☐ Dr.   ☑ Mr.   ☐ Mrs.   ☐ Ms.

What is your role on the farm? (Check One)
☐ Owner
☑ Owner/Oper.
☐ Operator
☐ Farm Mgr.
☐ Other:

Your Name (First/Middle/Last)
CHARKES MARC WADE

Farm Business Name
WADE FARMS

Mailing Address
325 CLARKSVILLE RD.

City  TSWILLIAMS    State MS    Zip 39169

Area Code 601    Business Phone 235-5206

FAX

E-Mail Address

1849845

## CROP INFORMATION FOR THE 1998 GROWING SEASON

Please check (✓) each type of seed you are interested in for the 1998 growing season, and fill in the planned acres. This section is NOT a purchase commitment or contract.

| | acres | TOTAL Crop Acres Planned for 1998 (All Varieties) | Con Till Acres |
|---|---|---|---|
| ☑ Roundup Ready® Soybeans | 0 acres | Soybeans 5,000 acres | 5,000 |
| ☑ Bollgard® Cotton | 210 acres | Corn 3,110 acres | 3,110 |
| ☐ Roundup Ready Cotton | acres | Cotton 21,010 acres none acres | 21,010 |
| ☐ Bollgard with Roundup Ready Cotton | acres | | |
| ☐ YieldGard® Insect Protected Corn | acres | | |
| ☐ Roundup Ready Corn | acres | | |

## MONSANTO TECHNOLOGY CENTER PRIMARY AG CHEMICAL DEALER

Business Name
TRI STATE DELTA

Area Code 601    Phone 235-5331    City JACKVILLE    State MS

## CROP CONSULTANT INFORMATION

Business Name

Contact Name

Mailing Address

City    State    Zip

Area Code    Business Phone    FAX

☐ Please send me ___ additional cards.

## TECHNOLOGY CARDS

Upon completion and submission of this page, you will be mailed a Technology Card with your name and individual Technology ID number. This card should be presented when purchasing additional MONSANTO gene technologies, and for receiving benefits offered under the Technology Value Package.

## SIGNATURE & DATE REQUIRED

I acknowledge that I have read and understand the terms and conditions of this Agreement and that I agree to them.

Charles Mac Wade    Date 4-17-98

Signature must match customer name listed above.

01058

04/17/98  FRI 13:45  [TX/RX NO 5663]  ☑004

# 2001 MONSANTO TECHNOLOGY AGREEMENT

If the information below is not correct, please cross out and clearly enter your correct information in the space provided at the right.

Please complete this section with your farm business information. The individuals and entities bound by the terms of this Agreement shall include the farm business listed below as well as all individuals or entities affiliated with, related to or having an ownership in such farm business. Your name must be filled in and must match the signature below.

☐ Dr. ☑ Mr. ☐ Mrs. ☐ Ms.

**Wade Farms**
Farm Business Name

**Charles D Wade**
Your Name (First/Middle/Last)

**511 Lakeview Drive**
Business Address

**Tchula    MS   29149**
Business City                State          Zip

**(60) 235-5206 (  )**
Business Phone                Fax

E-Mail Address

**What is your role on the farm?**
(Check One)
☐ Owner
☑ Of Owner/Oper
☐ Operator
☐ Farm Mgr
☐ Partner/Dealer
☐ Other

_____
Describe

FORM NUMBER
**02590272**

**UAP - Midsouth**
Business Name

**Tchula, MS       39169**
Business City              State    Zip

**(   )                      Ext**
Business Phone

Retailer Use Only
☑ Provided Signor with Monsanto Technology Use Guide

☐ No Signature Because:
☐ Deceased
☐ Would Not Sign
☐ No Longer Farming
☐ Other

L 0 0 2 8 5 4 9

**UAP - Midsouth**
Business Name

_____
Business City              State    Zip

**(   )                     Fax**
Business Phone

Business Name

Contact Name (First/Middle/Last)

Mailing Address

City                                State    Zip

Business Phone                        Fax

Upon completion and submission of this page, you will receive a Technology Card with your name and individual Technology ID number. If more than one individual will be purchasing under this Agreement, you may request additional cards. These cards should be presented when purchasing MONSANTO gene technologies and for redeeming benefits offered under Roundup Rewards.

☐ Please send me _____ additional cards.

I acknowledge that I have read and understand the terms and conditions of this Agreement, including the Monsanto Technology Use Guide and the provisions related to the Disclaimer of Warranties and Exclusive Remedy. If you do not agree to these terms, you should return the unopened bags of seed to your dealer. The undersigned acknowledges that he/she has the authority to bind the individuals and/or entities subject to this Agreement.

**C D Wade**                     **7-28-01**
Must be signed by the person(s) listed above.          Date

MONSANTO COPY

3017483

# MONSANTO TECHNOLOGY AGREEMENT

## FARM INFORMATION

If blank, or if changes are required, please complete this section with your farm business information. Your name must be filed in and match the signature below. If you have questions, please call Monsanto at 1-800-523-2333.

Area Code | Business Phone | Area Code | FAX

What is your role on the farm? (Check One)
- ☐ Owner
- ☐ Owner/Oper.
- ☐ Operator
- ☐ Farm Mgr.
- ☐ Other:

E-Mail Address

## CROP INFORMATION FOR THE 1998 GROWING SEASON

Please check (✓) each type of seed you are interested in for the 1999 growing season, and fill in the planned acres. This section is NOT a purchase commitment or contract.

| | | TOTAL Crop Acres Planned for 1998 (All Varieties) | Con/Till Acres |
|---|---|---|---|
| ☐ Roundup Ready® Soybeans | |1|3|0|0| acres | Soybeans |1|1|2|,|0|0| acres | |1|,|0|1|0| |
| ☐ Bollgard® Cotton | |1|,|6|2|0| acres | Corn | |1|,|1|0| acres | |1|,|0| |
| ☐ Roundup Ready Cotton | | acres | Cotton |1|1|,|6|2|0| acres | |1|,|0|2| |
| ☐ Bollgard with Roundup Ready Cotton | | acres | | | |
| ☐ YieldGard® Insect Protected Corn | | acres | | | |
| ☐ Roundup Ready Corn | | acres | | | |

## MONSANTO TECHNOLOGY CENTER / PRIMARY AG CHEMICAL RETAILER

Business Name  | F|A|R|M|E|R|S| |S|U|P|P|L|Y| |C|O|O|P|E|R|A|T|I|V|E|

Area Code | Phone
|6|1|0| | |6|5|1|3|-|6|3|4|7|

City | G|A|E|L|A|W|D|G|d| | State |A|L|

## CROP CONSULTANT INFORMATION

Business Name  | B|O|U|C|H|A|R|D| |A|G|

Contact Name | O|U|E|R|M|A|N|S| |O|O|O|C|K|

Mailing Address | V|A|L|L|K|A|T|I|E|T|A|C|H| |C|I|T|Y|

City | | State |A|L| Zip |3|8|4|4|

Area Code | Business Phone

L010947/8

## SIGNATURE & DATE REQUIRED

I acknowledge that I have read and understand the terms and conditions of this Agreement and that I agree to them.

_(signature)_ Date |2-22-98|

Signature must match customer name listed above.

## TECHNOLOGY CARDS

Upon completion and submission of this page, you will be mailed a Technology Card with your name and individual Technology ID number. This card should be presented when purchasing additional MONSANTO gene technologies, and for redeeming benefits offered under the Technology Value Package.
☐ Please send me _____ additional cards.

FEB 11 1998

MONSANTO COPY

## MONSANTO TECHNOLOGY AGREEMENT

5574828

### FARM INFORMATION

Please complete this section with your farm business information. Your name must be filled in and must match the signature below. If you have questions, please call Monsanto at 1-800-768-6387.

❑ Dr.    ❑ Mr.    ❑ Mrs.    ❑ Ms.

Your Name (First/Middle/Last): NEIL WILLIAM PULLEN

Farm Business Name: PULLEN SEEDS SOIL

Mailing Address: 2971 180TH STREET

City: SAC CITY    State: VA    Zip: 50583

Area Code: 712    Business Phone: 662-4663    Area Code: ___    FAX: ___

E-Mail Address: ___

What is your role on the farm? (Check One)
☑ Owner
☑ Owner/Oper.
☑ Operator
☑ Farm Mgr.
❑ Other: ___

### CROP INFORMATION FOR THE 1998 GROWING SEASON

Please enter your total planned acres for 1998.
This section is NOT a purchase commitment or contract.

**TOTAL Crop Acres Planned for 1998** *(All Varieties)*

Soybeans ___,___    Corn ___,___    Cotton ___,___

### MONSANTO TECHNOLOGY CENTER PRIMARY AG CHEMICAL RETAILER

Business Name: FC

Area Code: 712    Phone: 273-5469    City: EARLY    State: VA

### SIGNATURE & DATE REQUIRED

I acknowledge that I have read and understand the terms and conditions of this Agreement and that I agree to them.

Signature: _[signature]_    Date: 3/10/98

Signature must match customer name listed above

### TECHNOLOGY CARDS

Upon completion and submission of this page, you will be mailed a Technology Card with your name and individual Technology ID number. This card should be presented when purchasing additional MONSANTO gene technologies, and for redeeming benefits offered under the Technology Value Package.

❑ Please send me ___ additional cards.

L0192281

JUL 9 1998

MONSANTO COPY

# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONSANTO CO. et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| E.I. DUPONT DE NEMOURS & CO., et al. | ) |
| | ) |
| Intervenor Plaintiffs, | ) Case No. 4:04CV00708 ERW |
| | ) |
| vs. | ) |
| | ) |
| BAUMGARDNER, ET AL., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon Plaintiffs Monsanto Company and Monsanto

Technology, LLC's Motion for Partial Summary Judgment [doc. #31],[1] Defendant Farmers' Cross

Motion for Summary Judgment Against Plaintiff Monsanto [doc. #63], and Defendant Farmers' Cross

Motion for Summary Judgment Against Intervenors [doc. #66]. A hearing was held on February 9,

2005, and the Court heard arguments from all parties on the Motions.

---

[1] Intervenors E.I. DuPont de Nemours and Company and Pioneer Hi-Bred International
adopted Monsanto's Complaint, and have joined Monsanto's Motion for Partial Summary
Judgment.

1

> If Grower violates the terms of this Agreement, in addition to other remedies, Grower's rights pursuant to this Agreement will terminate immediately, and Grower and any entity receiving Seed from Grower are precluded from obtaining an Agreement or otherwise aquiring [sic] Seed of any brand in the future, and Grower's violation may result in infringement of one or more of the patents. Grower agrees to pay Monsanto and the licensed Monsanto Technology provider(s) their attorneys' fees and costs of enforcing this Agreement. If the Agreement is terminated, Grower will no longer have a right to purchase or use Seed containing Monsanto Technologies. Any obligations that arose before termination will continue in effect. In the event that Grower saves and uses, supplies, sells or acquires Seed for planting in violation of this Agreement, Grower will be liable to Monsanto for patent infringement.[10]

Pl. Ex. 8 at 4. According to the Complaint, "[b]y filing the State Court Actions, the Patent Defendants violated the Patent License Agreement, thereby terminating their licenses to use Monsanto's Roundup Ready and YieldGard seed technology," which in turn took away the Patent Defendant Farmers' right to use the technology. Compl. ¶ 61. Thus, assuming *arguendo* that the

---

[10] Exhibits 2 through 8, consisting of form contracts for the year 1998 through the year 2004, each contain the following clause, or a clause substantially similar: "For your convenience, this Agreement remains in effect until either you or Monsanto choose to terminate the Agreement. Once you enroll, information regarding new and existing technologies and any new terms will be mailed to you each year." The general subject matter of each form contract is the same; however, the specific language and placement of the terms vary and appear to grow more detailed with each successive year.

When each of the Farmers signed its respective Technology Agreement, each agreed that it would be annually re-enrolled in the licensing program unless it or Monsanto chose otherwise. In the Complaint, Monsanto provides an example of how this works: "By their terms, the Patent License Agreements for the years 1998 through 2004 remain in force and effect until terminated either by the purchaser or by Monsanto. Therefore, unless terminated by one of the parties, a 1998 Patent License Agreement between a Defendant and Monsanto, for example, would remain operative today." Compl. ¶ 42. Moreover, by re-enrolling in the licensing program, each Farmer agreed to be bound by any new terms subsequently mailed to it. At the time that they filed the State Court Actions, each Farmer had signed an Agreement that, according to the face of the Agreement itself, would remain in effect until terminated by either the Farmer or Monsanto. The State Court Actions were filed in 2004, and this is the year of the alleged breach of contract by the Farmers. Therefore, the Court's breach of contract analysis is properly focused on the text of the 2004 Agreement, the terms of which were the ones applicable to all of the Farmers at the time of the alleged breach. In any event, a substantially similar version of the Remedies Clause appears in each year's form contract.

9

# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

FILED

00 SEP 14 PM 4:04

U.S. DISTRICT COURT
SOUTHERN DISTRICT COURT CLERK
SOUTHERN DISTRICT IL
BENTON OFFICE

**RANDY BLADES**
17704 Old Frankfort Rd.
West Frankfort, IL 62896                               :

**COLLIN CAIN**                                         :   Civil No. _OO-4034 JL_
8355 State Route 146
Jonesboro, IL 62952                                     :

                                                        :   **ORIGINAL CLASS ACTION**
**FREDRICK L. SAMPLES**                                 **COMPLAINT**
11326 Lincoln Road
Benton, IL 62812                                        :   **(JURY TRIAL DEMANDED)**

**MARK A. JENT**                                        :
16330 Dean Road
Johnston City, IL 62951                                 :

**ROGER RIVEST**                                        :
d/b/a RIVEST FARMS (ESSEX), LTD.
RR #1, 4280 Hwy. 77                                     :
Staples, Ontario
N0P 2J0                                                 :
Canada
                                                        :
on behalf of themselves and
all others similarly situated,                          :

            **Plaintiffs,**                             :

        v.                                              :

**MONSANTO COMPANY**                                    :
800 North Lindbergh Boulevard
St. Louis, Missouri 63617                               :

            **Defendant.**                              :
_____:

seed, thus assuring the cartel members a virtually limitless stream of excessive "technology fees" will be extracted from farmers.

79.    Moreover, the Technology User Agreement mandates that "if a [sic] herbicide containing the same active ingredient as Roundup Ultra herbicide (or one with a similar mode of action) is used over the top of Roundup Ready crops, you [the farmer] agree to use only Roundup branded herbicide." Thus, a farmer who buys Roundup Ready seeds must purchase Roundup from Monsanto at whatever price Monsanto decides to charge.

80.    With its Roundup patents about to expire, Monsanto has recently licensed to other members of the cartel the right to sell generic versions of Roundup for use with Roundup Ready seeds. The other cartel members so licensed thus have both the incentive and the ability to extract supra-competitive herbicide profits from farmers as they have already done for GM seeds.

iv.    OTHER ANTI-COMPETITIVE CONDUCT IN FURTHERANCE OF MONSANTO'S SCHEME.

a.    INTERFERENCE WITH THE NON-GM CORN AND SOYBEAN SEED MARKETS.

81.    Upon information and belief, Monsanto's cartel has manipulated the non-GM seed market in furtherance of its scheme to monopolize the GM corn and soybean seed markets. Monsanto and its co-conspirators have jointly manipulated the non-GM market at least by: 1) restricting research and development into improved non-GM seeds, both internally and by exercising control over research at the land grant universities; and 2) restricting the availability of non-GM seeds in the marketplace, including but not limited to purchasing non-GM seed companies for the purpose of limiting their activity in the marketplace.

1.    INFLUENCE OVER LAND GRANT UNIVERSITIES.

25

# EXHIBIT G

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
AMERICAN SEED COMPANY, INC.,    )
et al.,                         )
                                )
         Plaintiffs,            )
                                )
    v.                          )  Civ. No. 05-535-SLR
                                )
MONSANTO COMPANY,               )
                                )
         Defendant.             )
```

O R D E R

At Wilmington this 5th day of December, 2005, having reviewed defendant's motion to transfer and the papers filed in connection therewith;

IT IS ORDERED that said motion (D.I. 25) is denied, for the reasons that follow:

1. **Background.** In April 2005, defendant Monsanto Company filed a complaint against plaintiff American Seed Co., Inc. in the United States District Court for the Eastern District of Missouri. Monsanto Company and Monsanto Technology LLC v. American Seed Company, Inc., Cause No. 4:05CV00554ERW ("the Missouri action"). In the Missouri action, Monsanto asserted that American Seed: (a) failed to submit timely sales reports to Monsanto under certain license agreements (breach of contract claim); and (b) sold seed including Monsanto traits after termination of the license agreements (patent, trademark, Lanham

Act, and unjust enrichment claims).  In May 2005, American Seed
answered and counterclaimed, asserting, inter alia, that the
agreements at issue were unconscionable.

2.   In July 2005, American Seed initiated the instant
litigation by filing a class action antitrust complaint against
Monsanto.  In its complaint, American Seed generally alleges that
Monsanto has unlawfully maintained monopolies "to deny Monsanto's
actual and potential competitors (a) access to foundation seed
companies and others needed for the creation or manufacture of
competitive corn seed with the competitors' biotechnological
traits; and (b) the distribution these Monsanto competitors
require to market their biotechnological corn seed. [Monsanto's]
agreements impose massive financial penalties on seed companies
unless a very high percentage of seeds they sell contain Monsanto
traits."  (D.I. 1, ¶ 3)  More specifically, American Seed asserts
that Monsanto has used exclusive dealing contracts and bundling
agreements to exclude competitors, particularly Syngenta Seeds,
Inc.  (D.I. 1, ¶¶ 80-95)

3.   Pending in this court as of July 2004 was a suit filed
by Syngenta Seeds against Monsanto.  Syngenta Seeds, Inc. v.
Monsanto Co., Civ. No. 04-908-SLR (the "Syngenta action").
Syngenta is Monsanto's leading competitor in biotechnology corn
seed.  In its suit, Syngenta alleges that Monsanto has
monopolized (and attempted to monopolize) markets for particular

2

biotechnology traits in corn.  Like American Seed, Syngenta
alleges that Monsanto has used exclusive dealing contracts and
bundling agreements to exclude competitors.  Both Syngenta and
American Seed have asserted that Monsanto has pressured customers
(e.g., foundation seed companies) not to deal with Syngenta.

    4.    **Standard of Review.**  Under 28 U.S.C. § 1404(a), a
district court may transfer any civil action to any other
district where the action might have been brought for the
convenience of parties and witnesses and in the interests of
justice.  Congress intended through § 1404 to place discretion in
the district court to adjudicate motions to transfer according to
an individualized, case-by-case consideration of convenience and
the interests of justice.  Stewart Org., Inc. v. Ricoh Corp., 487
U.S. 22, 29 (1988);  Affymetrix, Inc. v. Synteni, Inc., 28 F.
Supp.2d 192, 208 (D. Del. 1998).

    5.    The burden of establishing the need to transfer rests
with the movant "to establish that the balance of convenience of
the parties and witnesses strongly favors the defendants."
Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981) (citing
Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970).
"Unless the balance is strongly in favor of a transfer, the
plaintiff's choice of forum should prevail".  ADE Corp. v. KLA-
Tencor Corp., 138 F. Supp.2d 565, 567 (D. Del. 2001); Shutte, 431
F.2d at 25.

6.   **Discussion.**  Monsanto moves to transfer this lawsuit to the United States District Court for the Eastern District of Missouri, arguing that American Seed has waived any objections to such a transfer by virtue of a forum selection clause contained in the now terminated Monsanto license agreements.  Monsanto further argues that American Seed's antitrust allegations constitute compulsory counterclaims in the Missouri action.

7.   **Forum selection clause.**  The forum selection clause at issue provides as follows:

> IT IS THE INTENTION OF THE PARTIES HERETO THAT ALL QUESTIONS WITH RESPECT TO THE CONSTRUCTION OF THIS AGREEMENT AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF MISSOURI APPLICABLE TO BUSINESS ARRANGEMENTS ENTERED INTO AND PERFORMED ENTIRELY WITHIN THE STATE OF MISSOURI.  THE PARTIES HERETO IRREVOCABLY (A) SUBMIT TO THE EXCLUSIVE PERSONAL JURISDICTION OF ANY STATE OR FEDERAL COURT IN THE STATE OF MISSOURI IN ANY SUIT, ACTION OR OTHER LEGAL PROCEEDING RELATING TO THIS AGREEMENT; (B) AGREE THAT ALL CLAIMS IN RESPECT OF ANY SUCH SUIT, ACTION OR OTHER LEGAL PROCEEDING MAY BE HEARD AND DETERMINED IN, AND ENFORCED IN AND BY, ANY SUCH COURT; AND C)WAIVE ANY OBJECTION THAT THEY MAY NOW OR HEREAFTER HAVE TO VENUE IN ANY SUCH COURT OR THAT SUCH COURT IS AN INCONVENIENT FORUM.

(D.I. 27, exs. A-C at ¶ 11.08; ex. D at ¶ 8.08)(capitalization in originals)

8.   I conclude that the above recited forum selection clause does not mandate that American Seeds' antitrust claims must be heard in Missouri.  My understanding of the language is simply that all claims raised in any suit, action or other legal

4

proceeding relating to a Monsanto agreement[1] **may** be heard and determined by a state or federal court in Missouri; if such a suit is brought in a Missouri court, the parties may not object to such suit based on lack of personal jurisdiction or move to transfer based on forum non conveniens.

9.   **Compulsory counterclaim.**  A counterclaim is considered to be compulsory if "it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a).  "For a claim to qualify as a compulsory counterclaim, there need not be precise identity of issues and facts between the claim and the counterclaim; rather, the relevant inquiry is whether the counterclaim 'bears a logical relationship to an opposing party's claim.'" Transamerica Occidental Life Ins. Co. v. Aviation Office of America, Inc., 292 F.3d 384, 389 (3d Cir. 2002).  Put another way, "a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts." Great Lakes Rubber Corp. V. Herbert Cooper Co., 286 F.2d 631, 634 (3d Cir. 1961).

---

[1] Of course, there is the further question of whether American Seed's antitrust claims "relate" to a Monsanto agreement.

5

10.   The question, as framed by the papers, is whether the interests of justice are best served by trying American Seed's antitrust claims with the license dispute being litigated in the Missouri action or in conjunction with the antitrust claims being litigated in the Syngenta action.  I conclude that the broad issues at stake in the instant antitrust case are more akin to the Syngenta action than the Missouri action.  Therefore, Monsanto's motion to transfer is denied, without prejudice to renew if it becomes apparent through further discovery and other pretrial proceedings that the interests of justice warrant a transfer to Missouri.

United States District Judge

6