IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PULLEN SEEDS AND SOIL, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MONSANTO COMPANY,<br><br>Defendant. | C.A. No. 06-599-SLR |
| WADE FARMS, WHITTINGTON & SUMNER FARMS, CLIFFORD F. DANCE, D/B/A CLIFFORD DANCE FARMS, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MONSANTO COMPANY,<br><br>Defendant. | C.A. No. 06-600-SLR |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT MONSANTO COMPANY'S MOTIONS TO DISMISS

OF COUNSEL:

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
Anthony J. Franze
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800

Dated: January 12, 2007
772322/30803

Richard Horwitz (#2246)
David E. Moore (#3938)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant
Monsanto Company*

## **TABLE OF CONTENTS**

TABLE OF CITATIONS ................................................................................................ ii

INTRODUCTION ............................................................................................................1

ARGUMENT....................................................................................................................3

I.  THE FORUM SELECTION CLAUSE COVERS THESE CASES........................3

II. PLAINTIFFS FAIL TO OVERCOME THE PRESUMPTION THAT
    THE FORUM CLAUSE IS VALID AND ENFORCEABLE...............................10

CONCLUSION...............................................................................................................13

i

# TABLE OF CITATIONS

## CASES

*American Seed Co. v. Monsanto Co.*,
    C.A. No. 05-535-SLR, 2006 WL 3276831 (D. Del. Nov. 13, 2006)..................6, 12

*Armco Inc. v. North Atlantic Ins. Co.*,
    68 F. Supp. 2d 330 (S.D.N.Y. 1999)..................................................................8

*Blades v. Monsanto Co.*,
    No. 00-CV-4034-DRH, 2001 WL 775980 (S.D. Ill. Jan. 3, 2001)....................5, 12

*Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*,
    709 F.2d 190 (3d Cir. 1983)
    *abrogated on other grounds, Lauro Lines S.R.L. v. Chasser*,
    490 U.S. 495 (1989)........................................................................... *passim*

*Cottman Transmission Sys., Inc. v. Martino*,
    36 F.3d 291 (3d Cir. 1994)..............................................................................7

*Crescent Int'l Inc. v. Avatar Cmtys., Inc.*,
    857 F.2d 943 (3d Cir. 1988)............................................................................5

*Farmland Indus. Inc. v. Frazier-Parrot Commodities, Inc.*,
    806 F.2d 848 (8th Cir. 1987) ......................................................................7, 8

*Fleming & Hall, Ltd. v. Cope*,
    30 F. Supp. 2d 459 (D. Del. 1998)................................................................10

*Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    885 F.2d 1149 (3d Cir. 1989)........................................................................12

*Homeware, Inc. v. Kidde, Inc.*,
    No. 86-3914, 1987 WL 5714 (E.D. Pa. Jan. 21, 1987)..................................5

*Howard v. Illinois Cent. R.R. Co.*,
    207 U.S. 463 (1908).....................................................................................11

*Jayson Co. v. Vertical Mkt. Software & Vertical Software Servs., Inc.*,
    No. 05-3883, 2006 U.S. Dist. LEXIS 30638 (D. N.J. May 18, 2006).............7

*Massey v. Monsanto Co.*,
    No. 299CV218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2000)..........5, 12

*McNair v. Monsanto Co.*,
    279 F. Supp. 2d 1290 (M.D. Ga. 2003) .........................................................9

*Monsanto Co. v. McFarling*,
    302 F.3d 1291 (Fed. Cir. 2002) ............................................................................. 12

*Monsanto Co. v. McFarling*,
    363 F.3d 1336 (Fed. Cir. 2004) ............................................................................. 12

*Nascone v. Spudnuts, Inc.*,
    735 F.2d 763 (3d Cir. 1984) .................................................................................... 5

*Palcko v. Airborne Express, Inc.*,
    372 F.3d 588 (3d Cir. 2004) .................................................................................... 9

*Photogen, Inc. v. Wolf*,
    No. 00 C 5481, 2001 WL 477226 (N.D. Ill. May 7, 2001) ..................................... 9

*Smith v. Lucent Techs., Inc.*,
    No. 02-0481, 2004 U.S. Dist. LEXIS 4074 (E.D. La. Mar. 15, 2004) .................... 7

*Steel Dynamics, Inc. v. Big River Zinc Corp.*,
    No. 1:06-CV-00110, 2006 WL 1660599 (N.D. Ind. June 9, 2006) ......................... 9

## OTHER

*In re LLRice 601 Contamination Litig.*, Docket No. 1811 (J.P.M.L. Dec. 19, 2006),
*available at* http://www.jpml.uscourts.gov/Pending_MDLs/Miscellaneous/MDL-
1811/MDL-1811-TransferOrder.pdf ................................................................................ 13

## INTRODUCTION

Plaintiffs repeatedly accuse Monsanto of trying to "have it both ways." Pls.' Opp'n Br. 2, 18. Yet Plaintiffs' opposition is a study in contradiction.

- Plaintiffs' complaints allege that Monsanto imposed an unlawful tying arrangement by requiring "growers to sign a technology license, Grower's Agreement and Technology Use Agreement ('TUA') that effectively mandates that they use only Roundup herbicides on Roundup Ready crops." Pullen Compl. ¶ 86; Wade Compl. ¶ 88. But Plaintiffs' opposition brief asserts that these lawsuits are not, in the language of the forum selection clause in their Technology Agreements, "disputes arising out of or connected in any way with the agreement and the use of the seed or the Monsanto technologies." Pls.' Opp'n Br. 10; Def.'s Mem. Ex. B.

- Plaintiffs seek to enjoin Monsanto from imposing conditions on "growing or using seed containing Monsanto's glyphosate-tolerant traits (the tying product or products)." Pullen Compl. ¶ 97; Wade Compl. ¶ 99. But they contend in their opposition brief that they "do not assert any claim for relief, contractual or otherwise, concerning their purchases of seed covered by the Technology Agreements." Pls.' Opp'n Br. 9.

Plaintiffs agreed by contract to bring these suits in St. Louis, and they cannot extinguish that obligation by ignoring the allegations in their own complaints.

Nor can Plaintiffs evade their contractual commitment by creating artificial limitations on the scope of the forum clause. That their claims seek damages based on alleged overcharges for glyphosate and not seed, for instance, does not foreclose

application of the forum selection clause. On the contrary, the centerpiece of their glyphosate claims and the target of their injunctive relief is the agreement by which Monsanto licensed use of its seed traits. Moreover, even if Plaintiffs were correct – which they are not – that the Third Circuit enforces forum clauses only when the claims are completely "dependent on the contractual relationship between the parties," Pls.' Opp'n Br. 13, the fact is that the claims here *do* depend on the contract. Their Technology Agreement is the vehicle through which the alleged anticompetitive scheme was achieved, and courts repeatedly have applied the forum clause to antitrust conspiracy claims similar to those here.

Plaintiffs' arguments that the forum selection clause is unenforceable as a matter of law likewise fail. The well-established law in this Circuit enforces such contractual commitments absent compelling reasons to forbear. Here, there are no reasons, compelling or otherwise, to override the contract. Court after court has held that the very forum selection clause at issue here is valid. Court after court has found that it is reasonable. Court after court has required growers challenging Monsanto's marketing of genetic traits to proceed in St. Louis.

Plaintiffs cannot escape these holdings by asserting that if the forum clause applies to these claims, so too must another provision of the Technology Agreement that limits remedies for losses "*resulting from the use or handling of seeds* containing Monsanto technology." Def.'s Mem. Ex. B (emphasis added). This result as to the separate remedies clause, Plaintiffs contend, would be unconscionable, invalidating the entire Agreement. This claim is contrived. The remedies clause is not at issue here. On its face, it is narrower than the forum selection clause, which covers "*all claims and*

2

*disputes arising out of or connected in any way* with the agreement and the use of the seed *or the Monsanto technologies.*" Def.'s Mem. Ex. B (emphasis added). Monsanto has not contended that the remedies clause limits the damages available under the antitrust laws, and it does not do so here.

Finally, Plaintiffs' argument concerning the supposed comparative convenience of this forum is irrelevant. In the Third Circuit, a forum selection clause should be enforced unless it would "result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *E.g., Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983), *abrogated on other grounds, Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495 (1989). Moreover, Plaintiffs are from Iowa and Mississippi and have no connection to Delaware. They cannot convincingly tout this jurisdiction as more convenient and economical compared with St. Louis,[1] where Monsanto is located and multiple federal antitrust cases, all putative class actions involving genetically modified seed issues, are pending.

This Court therefore should enforce the forum selection clause and dismiss Plaintiffs' complaints.

## ARGUMENT

### I. THE FORUM SELECTION CLAUSE COVERS THESE CASES

The forum selection clause in the Technology Agreement specifies the federal or state court in St. Louis, Missouri as the "sole and exclusive jurisdiction" for "*all* claims and disputes *arising out of or connected in any way* with this Agreement and the use of the seed or the Monsanto technologies . . . ." Def.'s Mem. Ex. B (emphasis added). The

---

[1] Des Moines, Iowa and Jackson, Mississippi are 273 and 437 miles, respectively, from St. Louis, compared with 954 miles and 964 miles, respectively, from Wilmington.

3

complaints here charge that provisions of the Technology Agreement furthered the alleged anticompetitive scheme. Pullen Compl. ¶ 86; Wade Compl. ¶ 88 (Monsanto requires "growers to sign a technology license, Grower's Agreement and Technology Use Agreement ('TUA') that effectively mandates that they use only Roundup herbicides on Roundup Ready crops."); Pullen Compl. ¶ 92; Wade Compl. ¶ 94 (Monsanto's "anticompetitive conduct including its exclusionary licensing agreements with . . . growers . . . has unlawfully restrained trade and maintained its monopoly in the market for glyphosate herbicides."). The Technology Agreement, Plaintiffs allege, effects a tying arrangement and sustains a monopoly, which Plaintiffs seek to enjoin. Pullen Comp. ¶¶ 90, 97; Wade Compl. ¶¶ 92, 99. Indeed, the complaints make clear that the obligations imposed and benefits conferred by the Technology Agreement are "critical" to growers and central to their claims:

> [T]o induce growers to buy the significantly more expensive biotechnology seeds, Monsanto *included as an inherent component of the Tech Fee and patent/technology license the grower pays*, a crop protection program pursuant to which Monsanto agreed to waive the Tech Fee for replacement seeds if the crop fails within the first 60 days of planting. Because, as alleged earlier, the Tech Fee constitutes a substantial component of the grower's seed costs (up to 70%), *the crop protection program was and still is a critical factor in a grower's decision to use seed with biotechnology seed traits*. Significantly, Monsanto's crop protection program is not otherwise available and cannot be purchased independently by any grower, in large part because *Monsanto has exclusive control over its patented seed trait technology, and thus Monsanto has the sole ability to reward or punish growers for their herbicide choices by altering how much, if any, the growers have to pay for Monsanto's seed licenses.* Thus, Monsanto is using its monopoly control over various biotechnology *seed* traits to reward or punish growers depending on whether they use Roundup or a competing manufacturer's glyphosate herbicide.

4

Pullen Compl. ¶88; Wade Compl. ¶ 90 (emphasis added). By its terms, then, the forum selection clause applies to Plaintiffs' claims.

That Plaintiffs bring antitrust, rather than contract claims does not remove these cases from the purview of "all claims" or somehow sever their connection to the Agreements they attack. Courts in the Third Circuit have applied similar forum selection clauses to federal antitrust claims. In *Nascone v. Spudnuts, Inc.*, for example, the Third Circuit dismissed a plaintiff's appeal of a district court's decision to transfer an antitrust action, relying on a forum selection clause in the franchise agreement that the district court found reasonable in scope and content. 735 F.2d 763 (3d Cir. 1984). Similarly, in *Homeware, Inc. v. Kidde, Inc.*, the Court found that antitrust claims fell within the relevant forum selection clause because the antitrust "dispute arises from or is related to the terms of the distributorship agreement or the relationship of the parties to the agreement and, thus, is the kind of dispute which plaintiff undertook to submit to a Michigan court." No. 86-3914, 1987 WL 5714, at *2 (E.D. Pa. Jan. 21, 1987); *see also Crescent Int'l, Inc. v. Avatar Cmtys., Inc.*, 857 F.2d 943, 944-45 (3d Cir. 1988) (if the factual basis of a non-contractual claim lies in the contractual business relationship between the parties, then the claim may be deemed to relate to the parties' contract).

Moreover, as explained in Monsanto's opening brief, courts repeatedly have applied the forum selection clause at issue here in antitrust actions advancing allegations similar to Plaintiffs' claims. *See* Def.'s Mem. 8-9 n.5; *Blades v. Monsanto Co.*, No. 00-CV-4034-DRH, 2001 WL 775980, at *4 (S.D. Ill. Jan. 3, 2001) (enforcing forum selection clause in antitrust case and transferring case to Missouri); *Massey v. Monsanto*

5

*Co.*, No. 299CV218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2000) (holding forum selection clause valid, binding and enforceable in antitrust case).

Nor does it matter that Plaintiffs address the alleged impact of Monsanto's conduct in the purported market for glyphosate. Their claims are still "connected in any way with" the grower's licenses to use Monsanto's seed trait technologies.[2] In fact, they are more than just "connected." Plaintiffs allege that the terms of those licenses are illegal, that Monsanto imposes improper conditions on its licensees, and that these points are "critical." Pullen Compl. ¶ 88; Wade Compl. ¶ 90. Plaintiffs admit as much when, in arguing about judicial economies, they assert that their allegations are "substantially identical" to the allegations in the *American Seed* case. Pls.' Opp'n Br. 19. That case seeks damages relating to ***genetically modified seed***. *American Seed Co. v. Monsanto Co.*, C.A. No. 05-535-SLR, 2006 WL 3276831, at *1-5 (D. Del. Nov. 13, 2006).[3]

---

[2]  Plaintiffs' argument that the forum clause applies only to claims that are connected in any way to the Agreement ***and the use of seed*** misreads the contract. *See* Pls.' Opp'n Br. 10. Plaintiffs' premise is that the Agreement defines "Monsanto technologies" as "seed," and thus when the forum clause refers to use of the seed "or Monsanto technologies," it really covers only use of seed. In fact, the Agreement indicates that the word "seed" will refer to "*seeds containing* Monsanto technologies." Under no plausible manipulation of English can it be argued that the Agreement equates "Monsanto technologies," genetic traits, with the seeds in which they are contained. Indeed, if the word "seed" were interchangeable in the Agreement with "Monsanto technologies," many sections would be nonsensical. The phrase "seed containing Monsanto technologies" would translate to "seed containing seed." The reference in the forum clause to the "use of seed or Monsanto technologies," would translate to the "use of seed or seed." That Plaintiffs resort to such a strained interpretation of clear contractual language signals the weakness of their argument.

[3]  Plaintiffs cannot dispute that the language of the forum selection clause here is mandatory, and unlike the permissive clause this Court found did not require transfer of *American Seed*. *See* Def.'s Mem. Ex. G, *American Seed Co. v. Monsanto Co.*, C.A. No. 05-535-SLR, Order (D. Del. Dec. 5, 2005); Def.'s Mem. Ex. B (designating St. Louis as "the sole and exclusive" jurisdiction and stating that "Any lawsuit *must* be filed in St. Louis, Mo.").

6

Plaintiffs also argue that their claims "extend beyond" the Technology Agreement and therefore fall outside the Agreement's scope. Pls.' Opp'n Br. 13-14. To begin with, the Third Circuit, in *Coastal Steel*, did not hold that a forum selection clause could only cover claims dependent on the contract in which it appeared. Rather, the Court held that this connection was required *by the forum clause there*, which said that, "These conditions," that is, the ones in the contract, "shall be determined by the English Courts of Law." *Coastal Steel*, 709 F.2d at 193. By contrast, the forum clause here applies to "*all* claims and disputes *arising out of or connected in any way* with this Agreement and the use of the seed or the Monsanto technologies . . . ." Def.'s Mem. Ex. B (emphasis added).

The other cases cited by Plaintiffs are facially inapplicable here. *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 293 (3d Cir. 1994) (agreement with forum clause had been rescinded, and operative agreement did not have one); *Jayson Co. v. Vertical Mkt. Software & Vertical Software Servs.*, No. 05-3883, 2006 U.S. Dist. LEXIS 30638, at *17 (D. N.J. May 18, 2006) (parties entered multiple contracts, and dispute did not arise from the contract containing the forum clause); *Smith v. Lucent Techs., Inc.*, No. 02-0481, 2004 U.S. Dist. LEXIS 4074, at *39, *50 (E.D. La. Mar. 15, 2004) (recognizing that dispute need not arise from contract at issue, but finding that all misrepresentations alleged related to purchase agreement, not finance agreement with forum clause).[4]

---

[4] Plaintiffs' remaining cases do not reflect the approach of the Third Circuit in favor of enforcing forum agreements, and are inapposite for other reasons as well. *Farmland* followed the policy then applicable in Missouri disfavoring forum clauses, and dealt with fraud relating to the formulation of a fiduciary contract. *Farmland Indus., Inc. v. Frazier-Parrot Commodities, Inc.*, 806 F.2d 848, 851 (8th Cir. 1986) (when a "contract
Footnote continued on next page

As a matter of law, policy and logic, there is no reason parties to a contract should be barred from agreeing on a forum for "any disputes," as opposed to only those disputes dependent on the contract in which the clause appears. Indeed, to hold otherwise would allow plaintiffs to evade contractual obligations by artful pleading. *Coastal Steel*, 709 F.2d at 203. ("If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading."). In any event, as noted, all the Plaintiffs' claims funnel through the Technology Agreement. For example, Plaintiffs attack conduct by Monsanto purportedly designed to achieve a monopoly in genetically modified seeds. Pullen Compl. ¶¶ 58-76; Wade Compl. ¶¶ 60-78. But the alleged impact of that conduct in this case was to enable Monsanto to impose restrictions on growers through the Technology Agreement. But-for the alleged restrictions in that Agreement, they say, Plaintiffs could have avoided overcharges on Roundup herbicide.

Finally, Plaintiffs seek to evade the forum clause by pointing out that two of the Mississippi plaintiffs grow cotton – along with soybeans and corn – and that the forum selection clause contains an exception for cotton claims. Therefore, Plaintiffs reason, no claims advanced by *any* of the Plaintiffs could be subject to the forum clause. Plaintiffs are wrong.

---

Footnote continued from previous page
[is] tainted by fraud, the person defrauded cannot be held to the contractual forum selection clause"); *see also Armco Inc. v. North Atlantic Ins. Co.*, 68 F. Supp. 2d 330, 339 (S.D.N.Y. 1999) ("This cause of action does not arise out of the Sales Contract itself, but rather out of the . . . negotiation of the contract."). Moreover, the court in *Farmland* found the alleged scheme outside the scope of the forum clause principally because it involved parties not signatories to the agreement containing the forum clause. *Farmland*, 806 F.2d at 852; *see also Armco*, 68 F. Supp. 2d at 338-39 (noting that dispute involved individuals not signatories to agreement containing forum clause). Here, Plaintiffs all entered the subject contracts, and they do not allege fraud in the inducement.

None of the Plaintiffs grow only cotton, and two of the four Plaintiffs – including the only Plaintiff in *Pullen Seeds* – do not claim to grow cotton at all. The cotton exception is irrelevant to the two Plaintiffs who do not grow that crop. As for the other two, the forum clause excepts cotton claims because they may be subject to arbitration. Plaintiffs who grow soybean and corn cannot defeat a valid forum selection clause by adding other claims that may be subject to an exception – in particular, claims that may not proceed in court at all.[5]

Beyond that, courts repeatedly have enforced forum selection clauses, even against non-parties to the contract, where claims not subject to the clause are intertwined with claims that are. *Steel Dynamics, Inc. v. Big River Zinc Corp.*, No. 1:06-CV-00110, 2006 WL 1660599, at *8 (N.D. Ind. June 9, 2006) (despite the lack of a forum selection clause with respect to one contract, "the circumstances here warrant that the disputes arising under the two agreements be heard in the same forum, because the agreements are 'largely intertwined.'"); *Photogen, Inc. v. Wolf*, No. 00 C 5841, 2001 WL 477226, at *2-4 (N.D. Ill. May 7, 2001) (disputes arising from employment agreement and confidential disclosure agreement, which were silent as to forum selection, had to be heard in the forum the parties selected in a research agreement, because "the claims are largely intertwined."); *see also McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1303 (M.D. Ga. 2003) (forum selection clause applied even to a non-party because it was "foreseeable" that claims of non party would relate to other claims subject to the clause). The argument for enforcing the clause is far stronger here, where all the Plaintiffs not only are parties to

---

[5]   *See Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597-98 (3d Cir. 2004) (defendant that moved to dismiss on threshold forum issues did not waive right later to move to dismiss for failure to state a claim based on arbitration or other grounds not expressly waived under Fed. R. Civ. P. 12(h)(1)).

9

the contract but assert claims as part of the same cause of actions that are subject to the forum selection clause.

The Technology Agreement is in plain English. "All claims" includes the ones Plaintiffs advance here. "Any lawsuit" includes these cases.

## II. PLAINTIFFS FAIL TO OVERCOME THE PRESUMPTION THAT THE FORUM CLAUSE IS VALID AND ENFORCEABLE

A party challenging a forum selection clause "has a particularly high burden." *Fleming & Hall, Ltd. v. Cope*, 30 F. Supp. 2d 459, 463 (D. Del. 1998). The Third Circuit has held that "a forum selection clause is presumptively valid and will be enforced by the forum unless the party objecting to its enforcement established (1) that it is the result of fraud or overreaching; (2) that enforcement would violate a strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in litigation so seriously inconvenient as to be unreasonable." *E.g., Coastal Steel*, 709 F.2d at 202. Plaintiffs do not carry this burden.

First, Plaintiffs do not allege that the Technology Agreement was the result of fraud or overreaching.

Second, Plaintiffs fail in their attempt to contrive some public policy argument based on a separate remedies provision in the Technology Agreement. In particular, Plaintiffs assert that the remedies provision of the Agreement would preclude them from recovering antitrust damages and is therefore unconscionable and against public policy. Contrary to Plaintiffs' straw man argument, the provision limiting damages by its terms relates to the "use or handling of seed" and does not apply to Plaintiffs' antitrust claims. Thus, the "unconscionable" outcome that Plaintiffs warn against is not called for by the

10

contract, has not happened in other antitrust cases enforcing the forum clause, and will not happen here.

It is black letter law that courts seek to avoid a reading of a contract that would render it illegal. Here, if this Court reads both the forum selection and the use/handling limitation of remedies as written, no public policy issue arises. But if this Court were to read the forum clause literally while inflating the plain language of the remedies clause, as Plaintiffs urge, a public policy issue might arise. As the Supreme Court stated in the *Howard v. Illinois Cent. R.R. Co.*, 207 U.S. 463, 502 (1908), "To state the proposition is to refute it."

By its terms, the forum selection clause is broader than the remedies clause. The remedies clause is a standard contract provision that limits "any and all losses, injury or damages resulting from the use or handling of seed containing Monsanto technology." Def.'s Mem. Ex. B. Thus, while the forum clause applies to "all claims and disputes," the remedies clause only covers losses, injury or damages. While the forum clause encompasses such disputes if they are "connected in any way" with the Technology Agreement and "use of Monsanto technologies," the remedies clause requires a causal link with the "use or handling of seed" containing Monsanto technologies. While the forum clause extends to "any lawsuit," the remedies clause provides a list, not exclusive but illustrative, of the types of claims it covers, "claims based in contract, negligence, product liability, strict liability, tort otherwise." Plaintiffs thus ignore the plain language of both provisions. It simply does not follow that if the forum clause applies in antitrust cases, the remedies clause, specifically limited to losses resulting from the use or handling of seeds, must apply as well. Indeed, Monsanto has successfully enforced the

11

forum clause in antitrust litigation, but has not argued, ***and does not argue here***, that the remedies clause limits antitrust damages. *See Blades v. Monsanto*, No. 00-CV-4034-DRH, 2001 WL 775980 (S.D. Ill. Jan. 3, 2001); *Massey v. Monsanto Co.*, No. 299CV218-P-B, 2000 WL 1146705 (N.D. Miss. June 13, 2000).[6]

Third, Plaintiffs have not met their burden of showing that enforcement of the forum selection clause would "result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable." *E.g.*, *Coastal Steel*, 709 F.2d at 202. Indeed, Plaintiffs do not even attempt to meet this standard. Instead, they allege that litigation in this Court would be more convenient and further judicial economy because this Court heard the *American Seed* case. Even if these Iowa and Mississippi Plaintiffs had some connection with this District – which they do not – comparative convenience is not sufficient to override the parties' contract. *See id.*; *Hays and Company v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1162 (3d Cir. 1989) ("concerns about delay and cost in the enforcement of a forum selection clause are not alone sufficient to overcome the policy favoring enforcement of such clauses.").

In any event, dismissing the cases and allowing Plaintiffs, should they choose, to refile them in St. Louis would not hinder judicial economy. The Eastern District of Missouri has substantial experience with the issues and technologies in this case. Aside from presiding over the 13 putative antitrust class actions upon which the present cases

---

[6] Even assuming that the remedies clause applied to antitrust damages and were found unconscionable, that would not affect the enforceability of the forum clause. The Technology Agreement clearly states, "If any provision of this Agreement is determined to be void or unenforceable, the remaining provisions shall remain in full force and effect." Def.'s Mem. Ex. B. Indeed, in *Monsanto Co. v. McFarling*, the Court found a separate liquidated damages clause in the Technology Agreement unenforceable, 363 F.3d 1336 (Fed. Cir. 2004), after finding the forum selection clause enforceable. *Monsanto Co. v. McFarling*, 302 F.3d 1291 (Fed. Cir. 2002).

were based (*see* chart attached to Monsanto's opening brief as Ex. A), the Eastern District of Missouri repeatedly has considered the Technology Agreement. In addition, that District recently was designated as the forum for multidistrict litigation on cases involving genetically modified rice. *See In re LLRice 601 Contamination Litigation*, Docket No. 1811 (J.P.M.L. Dec. 19, 2006), *available at* http://www.jpml.uscourts.gov/Pending_MDLs/Miscellaneous/MDL-1811/MDL-1811-TransferOrder.pdf. Plainly, this Court has such experience and expertise as well. But the contracts here designate Missouri. Far from making the parties' choice of forum unreasonable, factors of convenience and judicial economy point toward Missouri.

## CONCLUSION

Plaintiffs agreed to bring suits like these in St. Louis. Those agreements are valid and enforceable. The Court should hold Plaintiffs to their contractual commitments and dismiss the Complaints.

| | |
|---|---|
| OF COUNSEL: | Respectfully submitted, |
| Kenneth A. Letzler<br>Robert N. Weiner<br>Jonathan I. Gleklen<br>Anthony J. Franze<br>ARNOLD & PORTER LLP<br>555 Twelfth Street, N.W.<br>Washington, D.C. 20004-1206<br>(202) 942-5000 | POTTER ANDERSON & CORROON LLP<br><br>By: */s/ David E. Moore*<br>    Richard Horwitz (#2246)<br>    David E. Moore (#3938)<br>    Hercules Plaza, 6th Floor<br>    P.O. Box 951<br>    Wilmington, DE 19801<br>    (302) 984-6000<br>    rhorwitz@potteranderson.com<br>    dmoore@potteranderson.com |
| Peter E. Moll<br>John J. Rosenthal<br>Timothy T. Finley<br>HOWREY LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004<br>(202) 783-0800<br>(202) 383-6610 facsimile | |

Dated: January 12, 2007
772322 / 30803

13

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, David E. Moore, hereby certify that on January 12, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jeffrey S. Goddess
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899

I hereby certify that on January 12, 2007, I have sent by Electronically Mailed the foregoing document to the following:

| | |
|---|---|
| Noah H. Silverman<br>Bruce E. Gerstein<br>Joseph Opper<br>Garwin Gerstein & Fisher LLP<br>1501 Broadway, Suite 1416<br>New York, NY 10036<br>nsilverman@garwingerstein.com<br>bgerstein@garwingerstein.com<br>jopper@garwingerstein.com | Adam M. Moskowitz<br>Tucker Ronzetti<br>David M. Buckner<br>Kozyak Torpin & Throckmorton, P.A.<br>2525 Ponce de Leon, 9th floor<br>Miami, FL 33134<br>AMM@KTTLAW.COM<br>TR@KTTLAW.COM<br>DMB@KTTLAW.COM |

/s/ David E. Moore
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
Hercules Plaza
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

763267 / 30803