## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PULLEN SEEDS AND SOIL, on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>MONSANTO COMPANY,<br><br>        Defendant. | C.A. No. 06-599-SLR |
| WADE FARMS, WHITTINGTON & SUMNER FARMS, CLIFFORD F. DANCE, D/B/A CLIFFORD DANCE FARMS, and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>MONSANTO COMPANY,<br><br>        Defendant. | C.A. No. 06-600-SLR |

### MONSANTO'S REPLY TO PLAINTIFFS' OPPOSITION TO MONSANTO'S MOTION TO QUASH

OF COUNSEL:

Peter E. Moll
John J. Rosenthal
Timothy T. Finley
HOWREY LLP
1299 Pennsylvania Ave., N.W.
Washington, DC 20004
(202) 783-0800

Kenneth A. Letzler
Robert N. Weiner
Jonathan I. Gleklen
Anthony J. Franze
ARNOLD & PORTER LLP
555 Twelfth Street, N.W.
Washington, D.C. 20004-1206
(202) 942-5000

Dated: June 7, 2007

Richard Horwitz (#2246)
David E. Moore (#3938)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

*Attorneys for Defendant*
*Monsanto Company*

**TABLE OF CONTENTS**

**PAGE**

I. MONSANTO HAS STANDING TO CHALLENGE A SUBPOENA SEEKING THE PRODUCTION OF MONSANTO'S DOCUMENTS.................. 2

II. PLAINTIFFS IGNORE THE SIGNIFICANT DIFFERENCES BETWEEN THE INSTANT ACTION AND THE DUPONT LITIGATION ....... 4

III. PLAINTIFFS SIDE STEP MONSANTO'S WILLINGNESS TO PRODUCE RECORDS THAT ARE POTENTIALLY RELEVANT TO THE ISSUES IN THE INSTANT ACTION................................................................................ 6

IV. PLAINTIFFS OFFER NO COMPELLING REASON TO ABROGATE THE EXISTING PROTECTIVE ORDERS IN THE DUPONT LITIGATION............. 7

CONCLUSION................................................................................ 8

# TABLE OF AUTHORITIES

## CASES

*Allocco Recycling, Ltd. v. Doherty*,
  220 F.R.D. 407 (S.D.N.Y. 2004) ..................................................................................4

*Brown v. Braddick*,
  595 F.2d 961 (5th Cir. 1979) ......................................................................................3

*Dart Industrial, Inc. v. Liquid Nitrogen Processing Corp.*,
  50 F.R.D. 286 (D.Del. 1970) ...................................................................................2, 4

*EEOC v. Danka Industries, Inc.*,
  990 F. Supp. 1138 (E.D. Mo. 1997)...........................................................................3

*Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers, L.L.C.*,
  2002 U.S. Dist. LEXIS 11389 (E.D. Pa. 2002) .........................................................7

*Jones v. Derosa*,
  238 F.R.D. 157 (D.N.J. 2006)................................................................................2, 3

*Mannington Mills, Inc. v. Armstrong World Industrial, Inc.*,
  206 F.R.D. 525 (D. Del. 2002) ..................................................................................2

*Mines v. City of Philadelphia*,
  158 F.R.D. 337 (D. Pa. 1994) ....................................................................................2

*Payne v. Howard*,
  75 F.R.D. 465 (D.D.C. 1977).....................................................................................3

*Philadelphia National Bank v. Depository Trust Co.*,
  No. 83-3581, 1984 U.S. Dist. LEXIS 18887 (E.D. Pa. March 7, 1984).....................3

*QC Holdings, Inc. v. Diedrich*,
  2002 WL 334281 (D. Kan. 2002) ..............................................................................3

*Shingara v. Skiles*,
  420 F.3d 301 (3d Cir. 2005).......................................................................................2

*Ziner v. Cedar Crest College*,
  2006 U.S. Dist. LEXIS 34858 (D. Pa. 2006) .............................................................2

## RULES

Fed. R. Civ. P. 26(b)(1)..................................................................................................3

Fed. R. Civ. P. 45(c)(3)..................................................................................................4

## OTHER AUTHORITIES

C. WRIGHT & A. MILLER, 9A FEDERAL PRACTICE AND PROCEDURE § 2459
(2D ED. 1995)................................................................................................................3

Plaintiffs are on a fishing expedition. Rather than seeking a "very specific set of highly-relevant documents," plaintiffs' third-party subpoena demands the wholesale production of 1.2 million pages of material from the *DuPont* cases, most of which bears no factual relation to the instant action. Despite plaintiffs' contention otherwise, the wholesale production of the *DuPont* materials will not "significantly advance" the instant case because the materials sought are largely irrelevant to plaintiffs' claims.

Plaintiffs gloss over the fact that Monsanto offered to produce certain materials from the *DuPont* materials that were potentially relevant to the issues in this case. Monsanto sought an agreement on search terms, custodians, and date ranges that could then be applied to the materials produced in the *DuPont* litigation. However, rather than negotiate the scope of that production, plaintiffs made an end-run on the meet and confer process by issuing the instant third-party subpoena to Faegre. Plaintiffs are not seeking Monsanto's documents from Faegre out of necessity; they simply want discovery conducted on their terms.

The arguments raised by plaintiffs in opposition to the motion to quash are supported by neither the facts nor the law. Monsanto has standing to object to the production of its own documents, which are improperly in Faegre's possession and are governed by Protective Orders in the prior *DuPont* litigation against Monsanto. Plaintiffs have failed to establish the relevancy of the overwhelming majority of records sought by the subpoena to the instant action. To support their claim that the materials sought are relevant, plaintiffs attached an affidavit from John Hinderaker, an attorney at Faegre who was DuPont's counsel in the *Delaware* and *South Carolina* cases but who does not represent a party in this litigation,. However, this self-serving affidavit by an uninformed attorney does not satisfy the test for relevance under the Federal Rules.

Plaintiffs cannot justify circumventing the Federal Rules by arguing that this will somehow promote efficiency in this case. The parties could have expeditiously reached an agreement on date ranges, custodians and search terms, which would have obviated

the need for Monsanto's motion to quash. Even now, if the Court modifies the scope of the Faegre subpoena, Monsanto could produce the relevant records without any substantive delay and without jeopardizing the document production deadline set by the Court's Scheduling Order.

The nature of this fishing expedition is highlighted by the extent of discovery being sought by plaintiffs in other closed or pending litigations and investigations. Plaintiffs are seeking the discovery of production documents, pleadings, depositions, exhibits and expert reports in not only the two *DuPont* actions, but also the *Syngenta* case, two actions relating to Monsanto's lawn and garden business, and a 2003 Department of Justice investigation into the glyphosate industry. Plaintiffs are not interested in pursing discovery relevant to their claims here, but rather to re-litigate issues from prior cases, to which they were not a party, and which fall well beyond the statute of limitations of the Sherman Act.

### I.  MONSANTO HAS STANDING TO CHALLENGE A SUBPOENA SEEKING THE PRODUCTION OF MONSANTO'S DOCUMENTS

Plaintiffs' argument that Monsanto cannot object to the relevancy of the Monsanto materials in the possession of Faegre is absurd. Federal Rules 26(c) and 45(c) allow a party to challenge subpoenas served upon a non-party for "good cause shown." *Shingara v. Skiles*, 420 F.3d 301, 305-06 (3d Cir. 2005); *Ziner v. Cedar Crest College*, 2006 U.S. Dist. LEXIS 34858 (D. Pa. 2006); *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J. 2006); *Mines v. City of Philadelphia*, 158 F.R.D. 337 (D. Pa. 1994).[1] The courts have ruled that "good cause" includes issues regarding whether discovery sought from

---

[1] *See also Dart Indus., Inc. v. Liquid Nitrogen Processing Corp.*, 50 F.R.D. 286, 291 (D. Del. 1970) (refusing to hold that a party did not have standing under Rule 45 to challenge a subpoena served on a non-party); *Mannington Mills, Inc. v. Armstrong World Indus., Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (holding that a nonparty may seek protection under either Rule 26 or 45).

2

the third-parties is relevant to the case before the court. *See, e.g., Philadelphia Nat'l Bank v. Depository Trust Co.*, No. 83-3581, 1984 U.S. Dist. LEXIS 18887 at *11-12 (E.D. Pa. March 7, 1984) (citing *Payne v. Howard*, 75 F.R.D. 465 (D.D.C. 1977)); *Jones*, 238 F.R.D. at 163.

The Federal Rules limit discovery to materials that are "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Plaintiffs would have the Court believe that they could subpoena a third party for the IQ, shoe size, and high school mascot of every Monsanto employee, and Monsanto would not have any basis to object on the grounds that the discovery sought is irrelevant to plaintiffs' case. Such a position is in contravention to principles of discovery and common sense. Here, plaintiffs seek production of a massive amount of material, most of which is completely irrelevant to this case. *See infra*, Section II.

The cases cited by plaintiffs — holding that a party or a third party has no standing to object to a subpoena requesting a ***third-party's*** documents — are inapposite. Monsanto does not object to Faegre producing his own documents; it objects to Faegre producing ***Monsanto's*** documents. Plaintiffs ignore that a party has standing to object to a third party subpoena if ***"the party claims some personal right or privilege with regard to the documents sought."*** C. Wright & A. Miller, 9A FEDERAL PRACTICE AND PROCEDURE § 2459 (2d ed. 1995) (emphasis added). Here, the documents in question are ***Monsanto's*** documents – not those of DuPont or Faegre. Thus, Monsanto has every right to seek protection regarding whether and how those documents are produced. *See EEOC v. Danka Industries, Inc.*, 990 F. Supp. 1138, 1141 (E.D. Mo. 1997); *Brown v. Braddick*, 595 F. 2d 961, 967 (5th Cir. 1979); *QC Holdings, Inc. v. Diedrich*, 2002 WL 334281 (D. Kan. 2002); *see e.g., Allocco Recycling, Ltd. v. Doherty*, 220 F.R.D. 407, 414-411 (S.D.N.Y. 2004) (holding that because the generation of the documents resulted from the third party's obligations under its contract with the defendant, this provided a further basis for according defendant standing to raise the privilege). Moreover, under Plaintiff's

3

theory, a party could never challenge a subpoena directed at a third party that is in possession of that party's documents. Again, that cannot be and is not the law.

Plaintiffs also misread the standard to quash a subpoena under Rule 45(c)(3). Rule 45 allows the Court to quash or modify a subpoena if it "requires disclosure of privileged or ***other protected matter***." Fed. R. Civ. P. 45(c)(3) (emphasis added). The materials sought are subject to protective orders entered in the *DuPont* cases. Thus, these materials are "protected matter" and Monsanto is properly before the Court. *See Dart Indus., Inc.*, 50 F.R.D. 286 at 291.

## II. PLAINTIFFS IGNORE THE SIGNIFICANT DIFFERENCES BETWEEN THE INSTANT ACTION AND THE DUPONT LITIGATION

Plaintiffs mischaracterize the *DuPont* cases as antitrust cases. In those actions, the majority of the claims, and discovery, were contract claims arising from the parties' soured business relationship. For example, over half of the eleven causes of action in the *DuPont Delaware* case were contract claims relating to a series of development agreements concerning genetically-modified soybean seeds among Monsanto, Asgrow, and DuPont. D.I. 29 (Rosenthal Decl., ¶4 - *DuPont Delaware* Compl ¶¶67-109). Similarly, the *DuPont South Carolina* case involved the relationship between Monsanto and DuPont under the terms of a 1999 supply contract for finished glyphosate. D.I. 29 (Rosenthal Decl., ¶5 - *DuPont South Carolina* Compl ¶36). Plaintiffs also ignore that the antitrust claims in the *Delaware* and *South Carolina* cases are factually distinct from plaintiffs' claims. The instant case involves claims by indirect purchasers as opposed to a direct competitor, and different alleged markets.

Moreover, plaintiffs contend that they are entitled to materials that were created entirely prior to the statute of limitations, alleging that the conduct at issue caused damages during the statute of limitations period. However, the *DuPont* litigation covers a time period stretching back a more than a decade before the filing of this complaint.

4

Here, plaintiffs seek damages for allegedly exclusionary practices which were not put in place until after the September 2000 expiration of Monsanto's patent on Roundup - not decades ago. Plaintiffs' entire case rises and falls on what happened after Roundup went off-patent, as there was little if any price competition for Roundup until after the patent expired. Therefore, any damages that the plaintiffs have allegedly suffered could not have been caused by any conduct that occurred prior to Roundup going off-patent, and they are not entitled to those materials. Even if the Court were inclined to grant plaintiffs discovery prior to the September 26, 2002 statute of limitations cut-off, plaintiffs' own allegations suggest that there is no need for discovery prior to September 2000. Thus, a substantial amount of Monsanto's documents produced in the *DuPont* cases, which relate to a contractual dispute in the mid-1990s, bear little relevance to plaintiffs' claims here. Monsanto has expressed its willingness to give Plaintiffs' discovery for the time after the expiration of the patent, which is more than sufficient to satisfy the plaintiffs' discovery needs.

Also, many of the alleged restraints that plaintiffs complain of have long since been eliminated or modified. For example, Monsanto has not charged a technology fee to growers using Monsanto's traits since 2002 and has not required growers to use Monsanto's Roundup glyphosate on their glyphosate-tolerant crops since 2000. Thus, the materials collected and produced in the *DuPont* litigation, are largely irrelevant to the plaintiffs' claims.

Plaintiffs waive the affidavit of DuPont's former counsel, John Hinderaker, as irrefutable proof that the *DuPont* materials are relevant to the instant action. However, this is hardly evidence that the Monsanto materials produced in the *DuPont* litigation are relevant to the issues in the instant action. First, Hinderaker's affidavit is a self-serving statement made by counsel of record for one of Monsanto's primary competitors. Moreover, Mr. Hinderaker's affidavit does not contradict Monsanto's argument.

Monsanto has already stated that some portion of the 1.2 million pages of Monsanto's documents produced in the *DuPont* litigation may be relevant to the instant case.

### III. PLAINTIFFS SIDE STEP MONSANTO'S WILLINGNESS TO PRODUCE RECORDS THAT ARE POTENTIALLY RELEVANT TO THE ISSUES IN THE INSTANT ACTION

Monsanto has repeatedly offered to produce potentially relevant documents that were produced by Monsanto in the *DuPont* litigation. Although plaintiffs malign Monsanto's intentions, the truth is far simpler. Monsanto is not trying to filter out "smoking gun" documents; Monsanto is trying to protect the hundreds of thousands of pages of documents that are both highly confidential and wholly irrelevant to this suit.

To achieve that end, Monsanto has offered to identify and produce relevant documents by applying search terms and date ranges, negotiated with plaintiffs' counsel, to the documents produced in the *DuPont* litigation. Plaintiffs certainly cannot complain about the "filtering" process when Monsanto has invited them to participate in designing the filter. In fact, for the last several weeks the parties have been negotiating to apply a similar filtering process for Monsanto's document production. Plaintiffs have not and cannot explain why that approach to discovery should not also apply to this older set of legacy materials. The only answer is that plaintiffs want to go fishing.

Plaintiffs inappropriately cite the discovery process in *Syngenta* as a justification to compel the production of the Monsanto's documents from a third party. Plaintiffs have neither standing nor any basis to cite issues regarding discovery that transpired in the *Syngenta* case. If plaintiffs simply negotiated with Monsanto to narrow the subpoena's scope to include only relevant documents, Monsanto could identify and produce those materials well in advance of the October 18, 2007, the deadline. D.I. 24 at 2 (Scheduling Order).

6

Plaintiffs argue that Faegre's production of the Monsanto's documents from the *DuPont* cases is "potentially critical" because the materials include older strategy documents that may no longer separately exist in Monsanto's files. D.I. 30 at 14 (Opp. Br.). Here, Monsanto possesses *all* of the materials sought from Faegre – a fact that was relayed to the plaintiffs before they stopped negotiating and insisted that Faegre proceed with its production. Plaintiffs cannot possibly be concerned that the documents no longer exist; plaintiffs simply refuse to negotiate with Monsanto for their production.

### IV. PLAINTIFFS OFFER NO COMPELLING REASON TO ABROGATE THE EXISTING PROTECTIVE ORDERS IN THE DUPONT LITIGATION

Despite plaintiffs' suggestion to the contrary, Monsanto is not attempting to use the protective orders in the *DuPont* litigation to shield relevant materials from discovery. To the contrary, Monsanto is merely seeking to enforce its rights under those Protective Orders to ensure: (i) all parties and their counsel abide by the express terms of those Orders; and (ii) plaintiffs do not use a Rule 45 subpoena to end-run the party discovery process set forth in Federal Rules 26 and 34.

As plaintiffs recognize in their brief, the purpose of a protective order is to protect parties from inappropriate disclosure of their confidential information. D.I. 30 at 15 (Opp. Br.). Indeed, protective orders promote fairness and efficiency among litigants *specifically because* the parties understand that their information will only be disclosed to those individuals identified in the protective order. *See Greene, Tweed of Del., Inc. v. DuPont Dow Elastomers*, L.L.C., 2002 U.S. Dist. LEXIS 11389 at *7 (E.D. Pa. 2002).

Plaintiffs do not dispute that the materials in Faegre's possession are subject to the Protective Orders entered in the *Delaware* and *South Carolina* cases. Plaintiffs do not dispute the validity of those Protective Orders. Under those Protective Orders, after the *DuPont* cases settled, Faegre had the responsibility to return or destroy Monsanto's confidential information and documents. While Mr. Hinderaker maintains that he

maintained a copy of Monsanto's confidential material because he was told to do so by the Department of Justice, the fact remains that that investigation was closed in August 2004. Thus, Monsanto's documents should have been destroyed or returned three years ago. The enforcement of those Protective Orders should stand. If the Court deems the documents should be produced, either partially or in their entirety, the documents should be produced from Monsanto. Plaintiffs' end-run on the discovery process should not be rewarded, nor should Faegre's disregard of the two Protective Orders be condoned. Allowing the abrogation of the Protective Orders would improperly create incentives for parties to ignore their obligations under express terms of District Courts' orders.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Monsanto's Motion to Quash, Monsanto respectfully requests that the Court quash plaintiffs' subpoena to Faegre & Benson, LLP.

| | |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| Peter E. Moll<br>John J. Rosenthal<br>Timothy T. Finley<br>HOWREY LLP<br>1299 Pennsylvania Ave., N.W.<br>Washington, DC 20004<br>(202) 783-0800 | By: /s/ Richard L. Horwitz<br>Richard Horwitz (#2246)<br>David E. Moore (#3938)<br>Hercules Plaza, 6th Floor<br>P.O. Box 951<br>Wilmington, DE 19801<br>(302) 984-6000<br>rhorwitz@potteranderson.com<br>dmoore@potteranderson.com |
| Kenneth A. Letzler<br>Robert N. Weiner<br>Jonathan I. Gleklen<br>Anthony J. Franze<br>ARNOLD & PORTER LLP<br>555 Twelfth Street, N.W.<br>Washington, D.C. 20004-1206<br>(202) 942-5000 | *Attorneys for Defendant<br>Monsanto Company* |

Dated: June 7, 2007

800302 / 30803

8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**CERTIFICATE OF SERVICE**

I, Richard L. Horwitz, hereby certify that on June 7, 2007, the attached document was hand delivered to the following persons and was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading:

Jeffrey S. Goddess
Rosenthal, Monhait & Goddess, P.A.
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899

I hereby certify that on June 7, 2007, I have sent by Electronically Mailed the foregoing document to the following:

Noah H. Silverman
Bruce E. Gerstein
Joseph Opper
Garwin Gerstein & Fisher LLP
1501 Broadway, Suite 1416
New York, NY 10036
nsilverman@garwingerstein.com
bgerstein@garwingerstein.com
jopper@garwingerstein.com

Adam M. Moskowitz
Tucker Ronzetti
David M. Buckner
Kozyak Torpin & Throckmorton, P.A.
2525 Ponce de Leon, 9th floor
Miami, FL 33134
amm@kttlaw.com
tr@kttlaw.com
dmb@kttlaw.com

/s/ Richard L. Horwitz
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Potter Anderson & Corroon LLP
Hercules Plaza
Wilmington, DE 19899
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com

763267 / 30803