IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PULLEN SEEDS AND SOIL, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MONSANTO COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) Civ. No. 06-599-SLR ) ) ) ) ) |
| WADE FARMS, WHITTINGTON & SUMNER FARMS, CLIFFORD F. DANCE, D/B/A CLIFFORD DANCE FARMS, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MONSANTO COMPANY, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) Civ. No. 06-600-SLR ) ) ) ) ) |

**MEMORANDUM ORDER**

At Wilmington this 18th day of July, 2007, having reviewed defendant's motions to dismiss filed in both of the above-captioned actions, and the papers filed in connection therewith, and having conferred with the parties;

IT IS ORDERED that said motions (Civ. No. 06-599, D.I. 7; Civ. No. 06-600, D.I.

5) are granted, for the reasons that follow:

    1. Plaintiffs in the above-captioned actions have asserted antitrust claims against defendant, Monsanto Company ("Monsanto"). Plaintiffs are "licensed growers" of genetically modified corn, soybean, and other seed containing genetic traits patented by Monsanto. Plaintiffs entered into patent license agreements ("Technology Agreements") with Monsanto in order to grow seed containing Monsanto's seed trait technologies. The Technology Agreements include a forum selection clause which provides, *inter alia*, that

> [t]he parties consent to the sole and exclusive jurisdiction and venue of the U.S. District Court for the Eastern District of Missouri, Eastern Division, and the Circuit Court of the County of St. Louis, Missouri ([i.e.,] any lawsuit must be filed in St. Louis, MO) for all claims and disputes arising out of or **connected in any way with this Agreement and the use of the seed or the Monsanto technologies**, except for cotton-related claims made by grower.

(Civ. No. 06-599, D.I. 8, ex. B; Civ. No. 06-600, D.I. 6, ex. B)(emphasis added) The question before the court is whether plaintiffs' antitrust claims asserted in the complaints filed in the above-captioned litigation are "connected in any way with" the Technology Agreements and the use of the seed or the Monsanto technologies.

    2. Plaintiffs assert in their respective complaints that "Monsanto's ability to charge higher prices for Roundup[, a glyphosate herbicide,] is the result of a comprehensive anticompetitive scheme which Monsanto began implementing in the 1990s. " More specifically, plaintiffs explain that, during the 1990s, Monsanto started developing genetically modified seed that contained patented traits which made the seeds tolerant to glyphosate herbicides. "This permitted Roundup to be sprayed over-the-top of genetically modified crops, killing all unwanted vegetation while leaving the

commercial crop unharmed." Plaintiffs concede that these seed traits "substantially increased farmers' yields and also reduced farmers' costs," thus making Monsanto not only the "dominant manufacturer of numerous genetically modified seed traits marketed under the name 'Roundup Ready,'" but also the dominant manufacturer of glyphosate herbicides. (D.I. 1, ¶¶ 4-5) In their complaints, plaintiffs describe how Monsanto has "maintain[ed] its glyphosate herbicide monopoly . . . through a comprehensive anticompetitive and exclusionary scheme that has involved Monsanto's unlawful leveraging of its monopolies in both the market for glyphosate herbicides and the markets for genetically modified seed traits." (D.I at ¶ 6) Of the specific conduct alleged to be anticompetitive, plaintiffs assert that Monsanto was able to maintain its monopoly profits by pursuing

> a systematic licensing and marketing strategy that leveraged its monopoly power in the seed trait markets (including but not limited to glyphosate-tolerant seed trait market) to (a) coerce and/or pressure dealers and distributors to substantially restrict the amount of generic glyphosate herbicides they carried and sold to growers and (b) require growers that wished to plant seeds that contained Monsanto's biotechnology traits to use Roundup herbicide virtually exclusively rather than a competitor's generic equivalent herbicide product.

(Civ. No. 06-599, D.I. 1, ¶ 82 (see also ¶¶ 83-92); Civ. No. 06-600; D.I. 1, ¶ 84 (see also ¶¶ 85-94))

3. In their complaints, then, plaintiffs clearly assert that Monsanto used the Technology Agreements with "growers" (i.e., farmers) to further the purported scheme to monopolize both the seed trait markets and the glyphosate herbicide market. Under these circumstances, the court concludes that the pending litigation is "connected" with the Technology Agreements at issue and the use of seed or the Monsanto

3

technologies. Therefore, the forum selection clause applies.

IT IS FURTHER ORDERED, consistent with the request of plaintiffs, that the above captioned cases are hereby dismissed without prejudice, so that plaintiffs may refile these cases in the proper forum.[1]  (Civ. No. 06-599, D.I. 35; Civ. No. 06-600, D.I. 33)

                                                                _/s/ Sue L. Robinson_____
                                                                United States District Judge

---

[1] Given the procedural posture of these cases, the court will not address the outstanding discovery disputes between the parties, but will leave the resolution of said disputes to the Missouri court.

4